UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN M. BEAIRD and ROBERT MIHAILOVICH, ) | |
| ) | |
| Plaintiffs, *pro se*  ) | Civil Action No.  06-2268 (JDB) |
| ) | |
| v.  ) | |
| ) | |
| ALBERTO GONZALES, *et al.*,  ) | |
| ) | |
| Defendants.  ) | |
| ) | |

**DEFENDANTS' COMBINED MEMORANDUM (1) IN OPPOSITION TO TEMPORARY
RESTRAINING ORDER AND (2) IN SUPPORT OF MOTION TO DISMISS
AND/OR SUMMARY JUDGMENT OR IN THE ALTERNATIVE TO TRANSFER**

Federal Defendants, the Federal Bureau of Prisons ("BOP"), the United States of

America, Alberto Gonzales, U.S. Attorney General, and Harley Lappin, Director, BOP,

respectfully oppose Plaintiffs' motion for a temporary restraining order and move to dismiss

and/or for summary judgment, or in the alternative to transfer this case to the Northern District of

Texas.  Plaintiffs, two federal prisoners appearing *pro se*, allege prison overcrowding in the

federal prison in Seagoville, Texas, as well as destruction of documents from the files of this

Court in early 2006.  Plaintiffs seek damages and injunctive relief.  Plaintiffs also moved for a

temporary restraining order ("TRO") regarding Building Nine at the Seagoville facility, which

they dub the "Hole."  Defendants oppose the TRO and move to dismiss on several grounds.

First and foremost, one of these same Plaintiffs has brought these same allegations of

prison conditions and overcrowding--including the same TRO motion regarding the "Hole"--in a

currently pending civil action in Texas, a case originally filed and transferred to Texas.

Therefore, Plaintiffs' repetitive filing of the same overcrowding claims again here should be

dismissed as malicious on the basis of the pending Texas action.

In addition, (1) Plaintiffs' complaint suffers numerous other defects in personal and subject matter jurisdiction, and venue; (2) their claims cannot overcome sovereign and qualified immunity; and (3) even if they were properly before the Court, their document destruction claims should be disposed of on summary judgment because PACER demonstrates that there is no factual support for the necessary premise that this Court's files have been affected in any way, much less on the lines alleged by Plaintiffs. For these reasons, all of Plaintiffs' claims should be rejected outright.

Moreover, even if the Court decides against dismissal at this juncture, Plaintiffs cannot establish the necessary likelihood of success on the merits or other required factors necessary to support a TRO.

Alternatively, the Court has the option of transferring the case instead of addressing any of the jurisdictional or merits issues and, in that event, the Court should transfer the matter to the Northern District of Texas.

## **BACKGROUND**

Last April, Plaintiff Beaird (along with a dozen other prisoners, all *pro se*) filed a 131-page complaint (with 114 pages of attachments) in this Court, No. 06-776 (UNA), in which they alleged prison overcrowding at the BOP facility in Seagoville, Texas, where they were incarcerated, in violation of the Eighth Amendment and the FTCA. The complaint was received by the Court on March 23, 2006, and officially filed April 27, 2006, according to the date stamps on page one of the complaint. See Ex. 1A-1E (complaint); see also Ex. 2 (docket sheet for No. 06-776). The month-long gap between receipt and filing presumably reflects the Court's *pro se*

screening mandated by the Prison Litigation Reform Act, per 28 U.S.C. 1915A, but it bears noting that the docket sheet does not note the screening or otherwise explain the time gap.   The Court, *sua sponte*, ordered case No. 06-776 transferred to the Northern District of Texas, see Ex. 3, the same district containing the Seagoville facility, on April 27, 2006.  The Northern District of Texas received the case on May 31, 2006, and assigned it case No. 06-967L.  See Ex. 1A (showing date stamps for N.D. Tex. and D.D.C.).

The Northern District of Texas dismissed No. 06-967 without prejudice on July 24, 2006, finding it improper and unwieldy for the several plaintiffs to bring what amounted to a class action suit.  See Ex. 4 (also providing description of claims in the case).  The dismissal order specifically permitted the plaintiffs to re-file, albeit as individual plaintiffs, and Beaird (and perhaps others) did so, although it does not appear that Mihailovich has done so.

Beaird's case was assigned case No. 06-1312.  See Exs. 5 (docket sheet) and 6 (complaint).  It appears the Northern District set up case files the same day as the dismissal order, July 24, 2006, and effectively continued Beaird's case, even though he did not file an amended complaint until December 1, 2006.  See id.

Among the dozen prisoners who joined Beaird in his first case filed here and transferred, i.e. No. 06-967, was Lynn Mooring, and his re-filed case, No. 06-1321-L, raises similar claims as Beaird's re-filed Texas case regarding prison overcrowding and conditions at Seagoville, though he styles his case a petition for *habeas corpus*.  See Exs. 7 (petition) and 8 (docket, indicating July 24, 2006 filed date).  The government's motion to dismiss is still pending.  See Ex. 8.

The instant complaint in this case is almost entirely a repeat of the claims Beaird, *et al.*, filed in his first attempt to bring suit here in D.C., with only two material differences.  First,

instead of claiming limiting his prison overcrowding and conditions claims to the Seagoville

facility, he seeks relief for all BOP prisons nationwide.  He does not, however, add any specific

allegations regarding any facility other than the one at Seagoville.  Instead, he simply indicates

BOP's prisons nationwide in the places where, in his Texas case, he refers to the one at

Seagoville.  Thus, there are no factual allegations or exhibits that relate to any prison other than

the one in Seagoville in the complaint in this case.

Second, Plaintiffs here add an allegation here that does not appear to have been raised in

the Texas litigation.  Specifically, Plaintiffs here allege that unidentified agents of the federal

government improperly removed and tampered with official records of this Court.  See

Complaint at 31.  According to the complaint,

> The Defendants in this action, including "Several Unknown Agents of the Federal
> Government" . . . unlawfully remov[ed] . . . original filed documents from inside the U.S.
> District Court Clerk's Office, District of Columbia, on or about February - March 2006. .
> . . Such . . . documents were an Original set of . . . Pleadings . . . filed . . . by the Plaintiff
> in the instant action.  These documents had been reported missing from within the U.S.
> District Court Clerk's Office, and had not been sent or served upon the defendants of that
> cause of action, and such documents went missing for almost 45 days, th[u]s delaying and
> inhibiting the Plaintiff.  . . .  Defendants then admitted to illegally obtaining, possessing,
> concealing said documents[.]  . . .  Then, on or about March 22, 2006, employees of the
> Defendants then gave these Court Documents not back to the U.S. District Clerk, from
> where they had been taken, but rather, gave such Time-Stamped Original documents of
> the Court to the Plaintiff.  Upon receipt of such documents, the Plaintiff examined such to
> discover that the Defendants had altered and inserted additional unauthorized, and
> falsified, pages to such court-filed documents.

Complaint at 31-32.  It does not appear that Plaintiffs anywhere identify the lawsuit referenced

above, but according to PACER, the only lawsuit involving either of the Plaintiffs and filed in

this Court is the one described above, No. 06-776.  See Exs. 9 & 10 (PACER search results).  As

noted above, that case was subject to pro se screening between March 23 and April 27, 2006,

4

which was 35 days.  Note that Plaintiffs allege that the documents "went missing for almost 45 days" "on or about February - March 2006."

## Legal Standards

The standard for review under Rule 12(b)(6) is well established.  See, for example, Mitchell v. Yates, 402 F. Supp. 2d 222, 228 (D.D.C. 2005), from which the following recitation is taken: A motion to dismiss pursuant to Rule 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, (1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir.1987).  A complaint need only contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley, 355 U.S. at 47.  Accord Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact, Scheuer v. Rhodes, 416 U.S. 232, 236, (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000), but conclusory legal allegations need not be considered by the court, Domen v. Nat'l Rehabilitation Hosp., 925 F. Supp. 830, 837 (D.D.C.1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 56, summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477

5

U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986);

Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  In determining whether a genuine issue of

material fact exists, the trier of fact must view all facts and reasonable inferences drawn

therefrom in the light most favorable to the non-moving party.  Matsushita, 475 U.S. at 587.  The

mere existence of any factual dispute, however, will not defeat summary judgment.  The non-

moving party must show that the dispute is genuine and material to the case.  That is, the factual

dispute must be capable of affecting the substantive outcome of the case and supported by

sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving

party.  Anderson, 477 U.S. at 247-48; Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C.

Cir. 1987).  If the evidence favoring the non-moving party is "merely colorable, or is not

significantly probative, summary judgment may be granted."  Id. (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249-50 (1986).  "[A] complete failure of proof concerning an essential

element of the non-moving party's case necessarily renders all other facts immaterial[,] [and]

[t]he moving party is 'entitled to judgment as a matter of law.'"  Celotex Corp., 477 U.S. at 323

(citations omitted).

       Similarly, mere conclusory allegations are not enough to survive a motion for summary

judgment.  Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993);  Thrash v. Library of Congress,

2006 U.S. Dist. LEXIS 9988 at *20 (D.D.C. Feb. 24, 2006); Rowland v. Riley, 5 F. Supp. 2d 1,3

(D.D.C. 1998); Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997).  Likewise, an affidavit which

merely recites conclusory allegations will not defeat summary judgment.  See Lujan v. National

Wildlife Federation, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace

conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.")

6

As the Supreme Court has instructed: "the plain language of Rule 56(c) mandates the entry of

summary judgment . . . against a party who fails to make a showing sufficient to establish the

existence of an element essential to the party's case, and on which that party will bear the burden

of proof at trial." Celotex, 477 U.S. at 322.

The standards for preliminary injunctive relief, in the form of either a preliminary

injunction or a temporary restraining order, are well established:

> [T]he moving party must show (1) a substantial likelihood of success on the merits, (2)
> that it would suffer irreparable injury if the injunction were not granted, (3) that an
> injunction would not substantially injure other interested parties, and (4) that the public
> interest would be furthered by the injunction. *E.g., Mova Pharm. Corp.*, 140 F.3d 1060,
> 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58
> F.3d 738, 746 (D.C. Cir. 1995)) (internal quotation marks omitted). A district court must
> "balance the strengths of the requesting party's arguments in each of the four required
> areas." *CityFed*, 58 F.3d at 747. If the showing in one area is particularly strong, an
> injunction may issue even if the showings in other areas are rather weak. *Id.*

Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006).

**Argument**

Defendants' arguments are organized below to follow the standards for preliminary

injunctive relief. Because the first element thereunder is likelihood of success on the merits,

these arguments also support Defendants' motion to dismiss and/or for summary judgment.

**I.     Plaintiffs Claims Are Likely to Fail, and Should Fail, on the Merits.**

**A.     Plaintiffs Have Raised the Overcrowding and Prison Conditions Claims in
Other Civil Actions and these Claims are Maliciously Repetitive Here.**

Plaintiffs' prison overcrowding and conditions claims appear duplicative of Beaird's

claims in the Northern District of Texas. See Exs. 1A-1E & 6. The United States Court of

Appeals for the District of Columbia Circuit recently noted that: "separate parallel proceedings

have been long recognized as a judicial inconvenience." Handy v. Shaw, Bransford, Veilleux &

Roth, 325 F.3d 346, 349 (D.C. Cir. 2003) (quoting Columbia Plaza Corp. v. Sec. Nat'l Bank, 525

F.2d 620, 626 (D.C. Cir. 1975) ("sound judicial administration counsels against separate

proceedings, and the wasteful expenditure of energy and money incidental to separate litigation

of identical issues should be avoided")).  Where two actions involving the same parties and

identical issues are pending in different federal district courts, the United States Supreme Court

has stated that the "general principle is to avoid duplicative litigation." Colorado River Water

Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (citations omitted).  That is the

situation here.  The only arguable distinction is the apparent substitution of references to the

Seagoville facility for references to BOP prisons nationwide.  The complaint is notably devoid of

any factual allegations specific to any other BOP facility and it is not even apparent that Plaintiffs

have ever been housed in another BOP facility.[1]  The Court should dismiss the prison

overcrowding and conditions claims in this case in order to avoid the unnecessary time and

expense of litigating the same claim between the same parties in two different districts.  In

addition, dismissal would prevent the potential for inconsistent results if the claims proceed in

two separate cases.

Moreover, these claims should be dismissed as malicious because Plaintiffs do not even

attempt to make factual allegations justifying expanding their claims to include every BOP

facility in the country.  See Pittman v. Moore, 980 F.2d 994, 995 (5th Cir. 1993).  Indeed, their

complaint, just like the Texas action, makes specific factual allegations only about the Seagoville

---

[1] Plaintiffs would not have standing to sue on behalf of prisoners in other BOP facilities anyway.

8

facility.  The Court would be well justified in finding that the prison conditions and

overcrowding claims in this case were filed for the sole purpose of harassing the federal

Defendants.  Indeed, it bears noting that Plaintiffs have even sought a TRO in the Texas suit,

again focusing on the conditions in Seagoville's Building Nine.  <u>See</u> Exs. 8 (No. 06-1312 docket

sheet) & 11 (Beaird's declaration in support of TRO in the Texas case).

### B.    Document Destruction Claims Cannot Survive Summary Judgment.

Even at this stage of the litigation, it is apparent that Plaintiff's claims regarding

destruction of Court records are factually groundless.  This Court's PACER records show that

Beaird has filed only two actions here, this one and the prior case transferred to Texas.  <u>See</u> Ex. 9

(PACER search results for "Beaird").  In this Court, Mihailovich has filed only the instant case.

<u>See</u> Ex. 10 (PACER search results for "Mihailovich").  Hence, the only possible "Original

Pleadings" that might possibly have been Court records as alleged in the complaint are those in

civil action No. 06-776.

At the same time, there is no indication that any records "went missing" at any time, as

alleged by Plaintiffs, and to the extent that Plaintiffs' claims allege harm to this Court's records,

that should be traceable to the official records for the particular case.  Moreover, the Court's

official "Received" stamp indicates that the Court first received the complaint in No. 06-776 on

March 23, 2006.  <u>See</u> Ex. 1A at 1.  This is the day before Plaintiff alleges that he first became

aware of the tampering.  <u>See</u> attachment D, at 4 (Inmate Request to Staff, alleging receipt of

tampered mail on March 22, 2006), to Decl. Bruce Plumley, attached as Ex. 12 hereto. The

mismatch of dates, therefore, rules out any possibility that Plaintiffs' claims have any factual

basis, at least with respect to any records of this Court.  For this reason alone, summary judgment

is appropriate on the document tampering allegations.  In light of the fact that the Court's docket sheet also indicates nothing untoward, and Plaintiffs themselves have yet to produce any evidence of other records of this Court which they allegedly received, summary judgment is appropriate on these claims.

### C.    Plaintiffs Have Failed to Exhaust Administrative Remedies.

#### 1.    Prison Litigation Reform Act

There are two separate exhaustion requirements applicable in this case.  First, the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. §1997e(a).  In Booth v. Churner, 531 U.S. 731, 741 (2001), a unanimous Supreme Court held that Congress mandated completion of any prison administrative remedy process capable of addressing the inmate's complaint and providing some form of relief, "irrespective of the forms of relief sought and offered through administrative avenues."  See also Jackson v. District of Columbia, 254 F.3d 262, 270-271 (D.C. Cir. 2001); Smith v. Zachary, 255 F.3d 446, 451 (7th Cir. 2001); Yousef v. Reno, 254 F.3d 1214 (10th Cir. 2001).  The Supreme Court's decision in Porter v. Nussle, 534 U.S. 516 (2002) followed Booth and, in Porter, the Court reiterated this requirement stating ". . .exhaustion in cases covered by § 1997e(a) is. . .mandatory. . ."  Id.  The Supreme Court, in Porter, explained the purposes behind the exhaustion requirement:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal

case.  In some instances, corrective action taken in response to an inmate's grievance
might improve prison administration and satisfy the inmate, thereby obviating the need
for litigation.  In other instances, the internal review might filter out some frivolous
claims.  And for cases ultimately brought to court, adjudication could be facilitated by an
administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. 524-525.

Relevant here, the three-level administrative remedy process used in the federal prison

system and applicable to this matter is nearly identical to that at issue in Booth.  Compare Booth,

532 U.S. at 734 with 28 C.F.R. §542.10 *et seq*.  BOP's regulations require inmates first to

attempt resolution of their complaints informally by discussing the matter with a member of their

Unit Team.  28 C.F.R. § 542.13.  If informal resolution is insufficient to resolve the matter, the

inmate may file a formal complaint with the Warden within fifteen days of the date on which the

basis of the complaint occurred.  28 C.F.R. §542.13.  If the inmate is not satisfied with the

Warden's response, he may appeal the response to the Regional Director.  28 C.F.R. §542.15.  If

the inmate is dissatisfied with the regional response, he may file a national appeal with the Office

of General Counsel in Washington, D.C.  28 C.F.R. §542.15.  Appeal to the Office of General

Counsel is the final administrative appeal in the BOP.

In the instant case, Plaintiffs have failed to exhaust their administrative remedies with

respect to the claims of prison conditions and overcrowding at Seagoville (including Building

Nine) and document destruction.  First, Beaird has filed nearly two dozen administrative claims,

but only two have been exhausted.  See Plumley Decl., Ex. 12A ¶ 4.  One of these two exhausted

claims does relate to overcrowding at the Seagoville facility, thus, Defendant concedes PLRA

exhaustion for the overcrowding claim, at least by Beaird.  See id. ¶ 5.  However, Beaird does not

appear to have exhausted with respect to the claims specific to Building Nine.  See id. ¶ 5 &

attachments A-C thereto.

Beaird appears to have exhausted his administrative remedies with respect to his claims of document tampering, though it bears noting that his claims never allege any action by any particular personnel in D.C., and simply assert misconduct here and request that a criminal investigation be conducted.  See id. ¶ 7 & attachments D-F thereto.

As for Mihailovich, he has also filed numerous administrative claims, but none of the claims in the instant complaint have been exhausted.  See Decl. Bruce Plumley, Ex. 13 (regarding Mihailovich) ¶ 4.  Notably, the only claims even remotely traceable to document destruction involve allegations of misconduct by BOP personnel at the Seagoville facility, not here in D.C., and even those claims were not exhausted.  See id. ¶ 10.  Thus, Plaintiff's claims specific to Building Nine and all of Mihailovich's claims should be dismissed for failure to exhaust administrative remedies under the PLRA.

## 2.     Federal Tort Claims Act

Second, the FTCA separately requires administrative exhaustion of any tort claims and the courts have uniformly held that the filing of an administrative claim with an agency, pursuant to 28 U.S.C. 2675(a), is a jurisdictional prerequisite to suing under the FTCA.  See McNeil v. U.S., 508 U.S. 106, 111 (1993) ("The command that an 'action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail' is unambiguous."); see also GAF Corp. v. United States, 818 F.2d 901; Bowden v. United States, 106 F.3d 433 (D.C. Cir. 1997); Simpkins v. District of Columbia Gov't, 108 F.3d 366, 370 (D.C. Cir. 1997); Johnson v. DiMario, 14 F. Supp. 2d 107, 111 (D.D.C. 1998).

Absent full compliance with the conditions placed upon waiver of sovereign immunity courts lack jurisdiction to entertain tort claims against the United States.  GAF, 818 F.2d at 904 and n.86 (D.C. Cir. 1987).  One such condition is contained in 28 U.S.C. 2675(a) which states in part, "an action shall not be instituted upon a claim against the United States for damages . . . or personal injury . . . caused by . . . any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency . . . and [been] denied."

It is well established that a claimant bears the burden of alleging and demonstrating compliance with the requirements of the FTCA before a district court can exercise jurisdiction over an FTCA claim.  See In re Agent Orange Products, 818 F.2d 210, 214 (2d Cir. 1987) ("The burden is on the plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements.  In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim.").

In this civil action, Plaintiffs seeks damages, at least in part, under the FTCA.  See Complaint at 11.  The BOP regulations applicable to administrative claims asserted under the FTCA require claims to be "submitted first to the Regional Office in the region where the basis for the claim occurred."  28 C.F.R. § 543.31(c).  FCI Seagoville is a facility within the South Central Region of BOP.  Thus, any administrative tort claim arising out of any incident which occurred at FCI Seagoville would be processed by BOP's South Central Regional Office.  See 28 C.F.R. §§ 543.31-.32.

Under the applicable regulations, the denial of an administrative tort claim by either the Regional Counsel or Office of the General Counsel constitutes a final administrative action, and

13

if dissatisfied, a claimant may file a civil action against the United States in an appropriate

United States District Court.  28 C.F.R. § 543.32.

Plaintiff fails to assert that he has presented any tort claim to the Government.  See

Compl *passim*.  This suffices to dismiss the FTCA claims because Plaintiffs failed to carry their

burden of establishing jurisdiction.

Moreover, a review of the computerized FTCA database indicates Plaintiffs have failed to

file any administrative tort claims on any issue raised in this civil action with the South Central

Regional Office of the Federal Bureau of Prisons.  See Decl. Josie Wilches, Ex. 14 ¶ 6.

Therefore, in accordance with the provisions of the FTCA, Plaintiffs' failure to seek any

administrative recovery by filing administrative tort claims with the South Central Regional

Office precludes their FTCA claims in this case.

### D.    Defendants are Immune from Suit.

#### 1.    BOP and Individual Defendants Sued in their Official Capacities Are Immune from Bivens Claims.

To the extent that Plaintiff seeks damages against federal agencies or individual

Defendants in their official capacities, his claims are generally dismissible for the lack of a

waiver of sovereign immunity, because the inherent sovereign immunity of the United States

protects it and its agencies and employees from suit absent such a waiver.  See FDIC v. Meyer,

510 U.S. 471, 484-86 (1994); see also United States v. Nordic Village, 503 U.S. 30 (1992);

United States v. Mitchell, 445 U.S. 535 (1980); Clark v. Library of Congress, 750 F.2d 89, 101-

02 (D.C. Cir. 1984).  Plaintiff's complaint invokes Bivens and the FTCA as the basis for

jurisdiction.

14

##### 2.    Gonzales and Lappin Are Not Subject to Injunctive Relief in Their Individual Capacities.

Injunctive relief against Gonzales and Lappin in their individual capacities cannot succeed for the simple reason that, in their personal capacities, they lack authority to exercise their governmental powers.

##### 3.    Qualified Immunity Shields Gonzales and Lappin from Suit.

Federal Defendants Gonzales and Lappin are entitled to qualified immunity.  See, e.g., Anderson v. Creighton, 483 U.S. 635, 638 (1987); Davis v. Scherer, 468 U.S. 183, 191 (1984); Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982).  Under the doctrine of qualified immunity, individually-named federal Defendants sued for money damages for violations of constitutional rights are immune from suit if, *inter alia*, the complaint fails to allege facts that give rise to the violation of a clearly-established constitutional or statutory right of which a reasonable person would have known.  See, e.g., Saucier v. Katz, 533 U.S. 194, 196 (2001); Harlow, 457 U.S. at 818; Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998); see also Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."); Zweibon v. Mitchell, 720 F.2d 162, 168 (D.C. Cir. 1983) ("once the trial judge determines the law was not clearly established at the time the contested conduct occurred, the inquiry ceases."), cert. denied, 469 U.S. 880 (1984).

Once the individual Defendant raises qualified immunity, courts must resolve two issues: (1) whether a constitutional right would have been violated on the facts alleged; and if the violation is established, then (2) whether the right alleged to have been violated was clearly

15

established such that a reasonable person would have known.  Saucier, 533 U.S. at 196.

Plaintiff's complaint does not allege the violation of constitutional or statutory rights that are

clearly established under law and was properly dismissed below.

Although the Eighth Amendment does not tolerate inhumane prison conditions, neither

does it "mandate comfortable prisons."  Farmer v. Brennan, 511 U.S. 825, 832 (1994).

Nevertheless, deprivations suffered by inmates as a result of their incarceration only become

violations of the Eighth Amendment when they deny "the minimal civilized measure of life's

necessities."  Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes v. Chapman, 452

U.S.337, 347 (1981)).  As interpreted by Rhodes, prison conditions constitute cruel and unusual

punishment if they involve the "wanton and unnecessary infliction of pain" or if they are "grossly

disproportionate to the severity of the crime warranting imprisonment."  452 U.S. at 346-47.  The

Eighth Amendment must "draw its meaning from the evolving standards of decency that mark

the progress of a maturing society.  Id. at 346.

Importantly, the Eighth Amendment gives the courts no license "to manage prisons . . . or

. . . to second-guess prison administrators."  Ruiz v. Estelle, 679 F.2d 1115, 1125 (5th Cir. 1982).

When measured by these standards, the plaintiff's factual allegations fall short of stating an

arguable claim of constitutional dimension.  To the extent that "[prison] conditions are restrictive

and even harsh, they are part of the penalty that criminal offenders pay for their offenses against

society."  Rhodes, 452 U.S. at 347.  Furthermore, the Supreme Court has held that federal courts

should not become "enmeshed in the minutiae of prison operations," Bell v. Wolfish, 441 U.S.

520, 562 (1979).

It is also well established that "overcrowding in prisons does not *per se* violate the

16

Constitution." Rhodes, 452 U.S. at 347. Regarding Plaintiff's complaints of inadequate inmate

quarters, specifically double-celling, at FCI Seagoville, the Supreme Court in Rhodes considered

the inmate plaintiffs' argument that double-celling creates a dangerous potential for tension and

leads to deprivations of essential food, medical care and sanitation. The Supreme Court noted

that the Rhodes plaintiffs were housed in doubled-celled rooms most of the time, but this

condition did not inflict unnecessary or wanton pain in violation of the Eighth Amendment.

Rhodes, 452 U.S. at 348-49.

Furthermore, courts have regularly held that prison facility limits may provide guidance

for prison administrators or other branches of the government, but do not establish constitutional

standards for overcrowding. See Rhodes, 452 U.S. at 348-49 (noting facility was 38% over

capacity); Bell, 441 U.S. at 543-44; Hoptowit v. Ray, 682 F.2d 1237, 1249 (9th Cir. 1982); Miles

v. Bell, 621 F. Supp.51, 59 (D. Conn. 1985).

Regarding Plaintiff's claim of inadequate air conditioning and ventilation in FCI

Seagoville buildings, the Fifth Circuit addressed this issue in Woods v. Edwards, 51 F.3d 577

(5th Cir. 1995). The Woods plaintiff, a Louisiana prisoner, claimed among other things "that his

cell was inadequately cooled and that the high temperature, while uncomfortable in itself, also

contributed to [his] health problems," including a "sinus condition." Id. at 581. The Woods

court affirmed the district court's grant of summary judgment for the prison officials, holding:

> Woods . . . has failed to present medical evidence of any significance nor has he
> identified  a basic human need that the prison has failed to meet. While the temperature
> in extended lockdown may be uncomfortable, that alone cannot support a finding that the
> plaintiff was subjected to cruel and unusual punishment in violation of the Eighth
> Amendment.

Id. Applying Woods to the instant case, Plaintiffs have failed to present any claim, much less

any medical evidence, that FCI Seagoville buildings have caused him any medical problems.  See Complaint at 24-25 (alleging only deprivation of "health needs").

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Id. at 104-05.  Delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith,' that violates the Eighth Amendment in 'supplying medical needs."  Whitley v. Albers, 475 U.S. 312, 319 (1986). The government's conduct must be "so grossly contrary to accepted medical practices as to amount to deliberate indifference."  Plaintiffs here have failed to allege that they suffered substantial harm due to any delay in receiving dental or vision treatment and, accordingly, they have failed to state a claim upon which relief may be granted under the Eighth Amendment.

**4.    Gonzales and Lappin May Not be Sued via *Respondeat Superior*.**

Plaintiffs do not allege that they had any personal contact with federal Defendants Gonzales or Lappin or that these officials took any particular action or decision that affected Plaintiffs.  It seems clear that Gonzales and Lappin are being sued based solely upon their respective executive roles, as heads of DOJ and BOP, respectively.  Such allegations will not stand under Bivens and should be dismissed.  See Cameron, 983 F.2d at 258 (claims against defendants were "based upon the bare assumption that policy decisions made in Washington

might have affected [Plaintiff's] treatment . . . .  In the absence of any allegations specifying involvement of [the defendant] in this case, the claims against them are based upon nothing more than a theory of *respondeat superior*, which of course cannot be used in a <u>Bivens</u> action").

     **5.**     **Gonzales and Lappin Must be Dismissed and Replaced by the United States as Defendants for any FTCA Claims.**

The FTCA expressly provides that any common law tort suit brought against federal employees must be treated as a suit against the United States once the Attorney General (or his delegate) certifies that the employees acted within the scope of their employment:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).  In this case, the certification is being filed herewith.  <u>See</u> Ex. 15.  The substitution works as a matter of law, and the United States is now the sole federal party defendant for any common law tort claims.  <u>See</u> <u>Kimbro v. Velten</u>, 30 F.3d 1501, 1509 n.4 (D.C. Cir. 1994).  The individual Defendants, therefore, are entitled to immunity under section 2679. <u>See</u> <u>Smith</u>, 499 U.S. at 165-69;  <u>Sami v. United States</u>, 617 F.2d 755, 768 (D.C. Cir. 1979) (federal employees immune from defamation suit when acting "within the ambit of his discretion"); <u>Trifax v. District of Columbia</u>, 53 F. Supp. 2d 20 (D.D.C. 1999) ("acting within the outer perimeter of the duties"), <u>aff'd</u>, 314 F.3d 641 (D.C. Cir. 2003).  Therefore, the tort claims against Gonzales and Lappin must be dismissed from the case.

**E.    Venue is Improper in the District of Columbia.**

Venue in Bivens cases is governed by the general venue provision set forth at 28 U.S.C.

§ 1391(b).  See Stafford v. Briggs, 444 U.S. 527, 544 (1980); Cameron v. Thornburgh, 983 F.2d

253, 257 (D.C. Cir. 1993).  A Bivens cause of action may be brought only in a judicial district

where: (1) any defendant resides if all defendants reside in the same state; (2) a substantial part of

the events or omissions giving rise to the claim occurred; or (3) any defendant may be found if

there is no district in which the action may otherwise be brought.  See 28 U.S.C. § 1391(b);

Cameron, 983 F.2d at 257 ("Appellant's complaint did not allege a single rule or policy

emanating from Washington that had affected his case.  It seems abundantly clear that the 'events

and omissions' relevant to this case took place predominantly at Terre Haute, and that the proper

venue for this case under § 1391(b) was the Southern District of Indiana where the prison is

located.").

In the instant case, venue is not proper in the District of Columbia under 28 U.S.C.

§ 1391(b).  First of all, it is clear that all of Defendant's alleged actions or decisions regarding

prison conditions and overcrowding took place in Texas and not in the District of Columbia.

Further, there is a district in which the action might otherwise be brought, i.e. the Northern

District of Texas.  Therefore, the terms of Section 1391(b) foreclose the possibility of venue here

in D.C.  As this Circuit cautioned: "Courts in this circuit must examine the challenges to personal

jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture

venue in the District of Columbia."  Cameron, 983 F.2d at 256.  Because venue is improper,

Plaintiff's Bivens claims may be dismissed under Rule 12(b)(3).

Second, even Plaintiff's claims regarding destruction of documents, to the extent they

might conceivably have any merit at all, appear more likely to involve handling of Beaird's

prisoner mail at the Seagoville prison and not in D.C. This is evident from the affirmative and

compelling evidence that nothing untoward ever occurred to this Court's records, see Ex. 2

(D.D.C. docket sheet), and the descriptions and timing of his allegations, see attachments D-F to

Ex. 12.

To the extent that the Court might analyze venue under the FTCA, the result would be the

same. Venue for FTCA claims is governed by 28 U.S.C. § 1402(b), which provides only two

bases for venue: (1) "where the plaintiff resides," or (2) "wherein the act or omission complained

of occurred," and both these bases point to Texas and not D.C. Therefore, their FTCA claims

should also be dismissed for improper venue.

Furthermore, the federal venue provisions require dismissal of cases brought in the wrong

district or division, unless it is "in the interest of justice [to] transfer such case to any district or

division in which it could have been brought." 28 U.S.C. § 1406(a); accord 28 U.S.C. § 1404(a)

("For the convenience of the parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought."); cf.

28 U.S.C. § 1391 (transfer to cure want of jurisdiction). Thus, if this case had sufficient merit

that the "interest of justice" weighed against dismissal, the Court should transfer it to the

Northern District of Texas. See Starnes v. McGuire, 512 F.2d 918 (D.C. Cir. 1974) (en banc)

(setting forth standards on where to transfer prisoner cases). Here, however, the repetitive nature

of Plaintiffs' prison conditions claims relative to those being litigated in Texas, and Plaintiffs'

failure to support their document destruction allegations with any colorable evidence of

wrongdoing here in D.C., strongly suggest that it serves no interest in justice to transfer the case.

See Simpkins v. District of Columbia Government, 108 F.3d 366, 370 (D.C. Cir. 1997) (favoring dismissal over transfer of meritless cases brought in improper venue).  Instead, outright dismissal is the preferred disposition here, in order to further judicial economy, avoid the risk of inconsistent results with the Texas litigation, and cut off Plaintiffs' abusive repetition of their already pending claims against Defendants.

Finally, it bears noting that the Court is permitted to address the venue issue prior to addressing any other issues, including personal jurisdiction and subject matter jurisdiction, and thus it may dismiss or transfer the case without deciding any other issue other than venue.  See Sinochem Internat'l Co., Ltd. v. Malaysia Internat'l Shipping Corp., --- U.S. ---, 2007 WL 632763, *7-8 (Mar. 5, 2007) (finding that *forum non conveniens* doctrine has been codified into Sections 1404 and 1406 and explaining that "there is no mandatory 'sequencing of jurisdictional issues'" that must be addressed or decided prior to venue).  Accordingly, if the Court transfers the case, Defendants reserve their other Rule 12 defenses--service of process, personal jurisdiction, and qualified immunity--and respectfully request that the Court note this reservation in its transfer order.

### F.     Plaintiffs have Failed to Properly Serve Gonzales.

It is well-established that, in an action against a federal employee in his or her individual capacity, the individually-sued defendant must also be served with process in accordance with Rule 4(e) of the Federal Rules of Civil Procedure.  Rule 4(e) requires that a copy of a summons and complaint be delivered to the defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there.

22

Here, there is no evidence Attorney General Gonzales was served pursuant to Rule 4(e). Actual notice, including service at work, will not substitute for technically proper service under Rule 4 and will not permit the District Court to render a personal judgment against an individually-named defendant. Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982); see also Stafford v. Briggs, 444 U.S. 527 (1980). With defective service of process as to Gonzales in his individual capacity, this action may not proceed against him personally. Accordingly, any Bivens or other individual capacity claims against Gonzales should be dismissed on this basis as well as the others enumerated herein. See Micklaus v. Carlson, 632 F.2d 227, 240 (3rd Cir. 1980); Griffith v. Nixon, 518 F.2d 1195, 1196 (2d Cir. 1985), cert. denied, 423 U.S. 995 (1975).

It is similarly well settled that unless an unnamed/unidentified defendant voluntarily makes an appearance or otherwise waives the lack of personal jurisdiction defense, the Court lacks personal jurisdiction over that individual. State law determines whether constructive service may be made upon John Doe defendants in tort cases. See Fed. R. Civ. P. 4(c)(2)(C)(i). Because the District of Columbia Code does not provide for such constructive service, Plaintiffs' claims against the "Several Unknown Agents of the Federal Government" must be dismissed for lack of personal jurisdiction. See Thompson v. Tanner, 287 F. 980, 989 (D.C. Cir. 1923).

### G.    Injunctive Relief is Moot Regarding Building Nine.

As the Supreme Court has stated, "federal courts are without power to decide questions that cannot effect the rights of litigants in the case before them." DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)). This inability of the federal judiciary "'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or

controversy.'" Id. (quoting Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964)); see also Arizonans for Official English v. Arizona, 520 U.S. 43, 64 (1997); City of Houston v. Department of Housing and Urban Development, 24 F.3d 1421, 1426 (D.C. Cir. 1994) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies"); Florida Wildlife Federation v. Goldschmidt, 611 F.2d 547, 548 (5th Cir. 1980).

      "Article III, Section 2 of the Constitution permits federal courts to adjudicate only 'actual, ongoing controversies.' If events outrun the controversy such that the court can grant no meaningful relief, the case should be dismissed as moot." McBryde v. Committee to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the United States, 264 F.3d 52, 55 (D.C. Cir. 2001) (citations omitted); see also Fraternal Order of Police v. Rubin, 134 F. Supp. 2d 39, 41 (D.D.C. 2001). Article III limits the federal courts to deciding "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." Flast v. Cohen, 392 U.S. 83, 95 (1968). The controversy must exist at the outset of the litigation and continue throughout the existence of the suit. See SEC v. Medical Comm. for Human Rights, 404 U.S. 403, 406-07 (1972); Meltzer v. Board of Public Instruction, 548 F.2d 559, 571 (5th Cir. 1977). "When effective relief cannot be granted because of later events, the appeal must be dismissed as moot." Westmoreland v. National Transportation Safety Board, 833 F.2d 1461, 1462 (11th Cir. 1987) (citing Murphy v. Hunt, 455 U.S. 478, 481 (1982)).

      Plaintiffs' claims regarding Building Nine appear to have been mooted out by their release from that building back into the general population at Seagoville. Plaintiffs may argue

that their transfer to Building Nine is an action that is capable of repetition yet evading review, and thus the claim should be heard even though moot. The Supreme Court has outlined the boundaries of this exception with some frequency and it is not broad. For example, in Spencer v. Kemna, 523 U.S. 1 (1998), the Court held:

> [T]he capable-of-repetition doctrine applies only in exceptional situations, where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.

Id. at 17 (internal quotes and citations omitted). See also Los Angeles v. Lyons, 461 U.S. 95, 109 (1983).

It does not appear on this record that Plaintiffs meet the second condition because they have done nothing to show that they are likely to be sent back to Building Nine. Even if they were to show this, however, the repetitive nature of that action (if that were established) would highlight the importance of the Court enforcing the PLRA's and FTCA's exhaustion requirements. Plaintiffs have not exhausted their administrative remedies with respect to Building Nine. But if the Building Nine problem is widespread and/or frequently repeating, there is all the more reason for the administrative remedy process to be given a chance to work.

## II.    Plaintiffs Failed to Satisfy Other Elements for TRO.

Plaintiffs' motion for a TRO is limited to the conditions alleged to exist within Seagoville's Building Nine. For this TRO request, Plaintiffs have failed to establish any of the other three necessary elements for preliminary injunctive relief.

**A.    No Irreparable Injury Because Plaintiffs Have Left Building Nine.**

The record submitted by Plaintiffs themselves does not indicate that either one of them is currently confined in Building Nine. <u>See</u> Ex. 1 at 1 (Mihailovich was sent to Building Nine for "twenty four (24) hour urine sample"), <u>id.</u> at 2-3 (describing one overnight stay). There is no evidence in the record in this case that Plaintiff Beaird was housed in Building Nine. This means that Plaintiffs cannot establish irreparable harm in being detained in Building Nine, regardless of whether the conditions therein are as they allege. Moreover, the PLRA's narrow-tailoring requirement governing preliminary injunctive relief forecloses any relief whatsoever precisely because neither Plaintiff is currently housed in Building Nine and thus no injunction is needed to correct the harm allegedly inflicted upon them due to being there. <u>See</u> 18 U.S.C. § 3626(a)(2) ("Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm.").

**B.    An Injunction Would Substantially Injure BOP's Ability to Run its Prisons.**

An injunction would substantially impair BOP's ability to run its prisons. As the courts have consistently recognized, BOP must be accorded wide discretion in how to run the nation's federal prisons. <u>See, e.g.</u>, <u>Pitts v. Thornburgh</u>, 866 F.2d 1450, 1454 (D.C. Cir. 1989) ("the Court in <u>Turner</u> stressed the discretion to be accorded prison officials in 'mak[ing] the difficult judgments concerning institutional operations,' <u>Turner</u>, 107 S. Ct. 2261 (quoting <u>Jones</u>, 433 U.S. at 128, 97 S. Ct. at 2539), and warned that '[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison

26

administration.' Id. 107 S. Ct. at 2262.").  The TRO sought by Plaintiffs here would bar BOP

from using Building Nine to house any prisoners at all.  See Plf. Emer. Mot. at 10.  This is a far

cry from maintaining the *status quo* and it would seriously impair BOP's ability to perform the

various functions that necessarily entail segregation or other special housing arrangements.  See

also 18 U.S.C. § 3626(a)(2) ("The court shall give substantial with to any adverse impact on . . .

the operation of a criminal justice system caused by the preliminary relief").  This factor also

weighs against the TRO.

> ### C.    The Public Interest Would be Hurt by the TRO.

Finally, the precipitous action requested by Plaintiffs is not in the public interest, even if

their allegations were true.  Even if the Court were to find the conditions of Building Nine

constitutionally deficient, the better course would be to require correction on a reasonable time-

table.  Here, the nature and severity of the alleged conditions do not rise to the level of a

constitutional violation or one that seriously threatens the life, health, or safety of Building Nine

prisoners.  Finally, the public interest cannot be served by entertaining litigation effectively

duplicative with that ongoing in Texas.  The risk of inconsistent results in these two actions, both

of which involve requests for preliminary relief by Plaintiff Beaird regarding Building Nine, is

sufficient by itself to weight this factor against the TRO.  In sum, all four factors weigh heavily

against the requested TRO and the Court should deny it.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request dismissal of this action. To the extent that the Court may reject the numerous procedural and jurisdictional arguments made above, Defendants request summary judgment on the document destruction claims. Finally, Defendants request transfer, in the alternative, to the Northern District of Texas.

March 8, 2007                              Respectfully submitted,


_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204
alan.burch@usdoj.gov