IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

RECEIVED

APR 6 2007

NAN                    INGTON, CLERK
                    ...CT COURT

| | | |
|---|---|---|
| JOHN M. BEAIRD, ROBERT MIHAILOVICH and JOHN M. BEAIRD and ROBERT MIHAILOVICH on behalf of All Similarly Situated Individuals. Plaintiffs (FILED AS A CLASS ACTION) | § § § § § § § § | |
| vs. | § § § § | No. 06-2268-JDB |
| ALBERTO GONZALES (Individually), HARLEY G. LAPPIN (Individually), Federal Bureau of Prisons, UNITED STATES of AMERICA, and Several Unknown Agents of the Federal Government, Defendants | § § § § § § § § § | |

---

RESPONSE TO "DEFENDANTS' COMBINED OPPOSITION TO (1) PLAINTIFFS' MOTION FOR RECONSIDERATION AND SANCTIONS, AND (2) PLAINTIFFS' MOTION FOR TRO"

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JOHN BEAIRD AND ROBERT MIHAILOVICH, Plaintiffs, in the above-styled and numbered cause of action and MAKES A CORRECTION IN THE RECORD TO AN IMPROPER FILING IN THIS CASE, filed in this case instead of as it should have been filed as a new complaint, and FURTHER the Defendants filing as ennumerated above necessitates that the Plaintiffs point out substantive points and issues to which this Court should take notice prior to ruling on Plaintiffs' pending Motion for Reconsideration and for sanctions. Plaintiffs submit the following:

Plaintiffs inform this Court that what the record reflects as [23] of which the Defendants refer to as a "request for a TRO" **has been incorrectly attached to this case by the Clerk of the Court in error**. This filing was a newly filed Complaint by Mr. JOHN BEAIRD which should have been entered by the Clerk of the Court as a new complaint pursuant to the instructions therewith enclosed. The filing was filed "without a case number" with a blank for a **newly assigned case number** just as a new complaint should be. Mr. BEAIRD had recently inquired with the Clerk's Office regarding this **separate** filing as to "where it had gone?". Plaintiffs, repectfully ask this Honorable Court to separate (reverse out from this case) this separate filing by Mr. Beaird and to have it correctly assigned a separate case number and filing status.

Although the Defendants **imply** that Plaintiffs are "not subject to being housed within **Building 9**" and that removes the "need" for a TRO on Building 9 to be granted, the Defendants fail to realize, or at least point out to the Court, that they are **constantly being** subjected to housing in Building 9 (see attached Affidavit). This is not a situation of a "mooted issue" for the Supreme Court has specifically provided for just this type of exception. The Court held, in **Spencer v. Kemna**, 523 U.S. 1 (1998) "the **capable-of-repetition** doctrine applies only where the following two circumstances [are] simultaneously present: (1) the **challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration**, and (2) there [is] a **reasonable expectation that the same complaining party [will] be subject to the same action again**." Id at 17. The Plaintiffs have

already provided documentation to this Court in both the Motion
for TRO of Mihailovich's recent "short duration" visit to Building
9 housing, and in the Supplemental Filing regarding the TRO Mr.
Beaird has already provided documentation to the Court of his
recent "short duration" time at Building 9 housing.   Thus, as
stated in the attached affidavit, the Plaintiffs are on a daily
basis informed that they will be sent to Building 9 housing for
(1) even a minor infraction of any rules (such duration time for 3
to 10 days even prior to any kind of hearing or release) and (2)
just as in the case of Mihailovich, any "medical condition" which
requires either "isolation" from population or "observation" will
instantly place such Plaintiff in Building 9 **without any notice
what-so-ever**, similarly for a short duration as discussed, ante.
Because housing within Building 9 ("the challenged action") is a
duration too short to fully litigate, let alone litigate at all
for the most part, and that for the reasons indicated, ante, there
is a reasonable expectation that Plaintiffs will be housed within
Building 9 for either a minor rules infraction or, even more
possibly a no-notice move there for a medical test or observation,
the **"capable of repetition doctrine" explicitly applies in this
case to subjecting Plaintiffs to this request for a TRO to enjoin
the Defendants from such imposition, or threat of imposition, of
CORPORAL PUNISHMENT as inflicted by being housed in Building 9.**
See also <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 109 (1983).
Plaintiffs also point out to the Court that although the
Defendants cite <u>Woods v. Edwards</u>, 51 F3d 577 (5th Cir. 1995) for
support of the Corporal Punishment inflicted within Building 9 by

the Defendants, <u>Woods</u> dealt with, as that court found, a cell that was **adequately ventilated with fresh air and had** fans as well! As Plaintiffs show in their Complaint, and numerous Sworn Affidavits, the conditions of Building 9 are such that THERE ARE NO FANS IN THE CELLS, THE WINDOWS ARE SEALED OVER, THERE IS NO AIR CIRCULATION WHAT-SO-EVER WITHIN THE ROOMS, and TEMPERATURES WITHIN SUCH CELLS ROUTINELY (unlike <u>Woods</u>) REACH TEMPERATURES IN EXCESS OF 115 DEGREES FREQUENTLY, **as well as** OTHER UNSANITARY AND EGGREGIOUS CONDITIONS EXIST WITHIN SUCH CELLS (see TRO Affidavits: **Inmate having testicals burnt from severely hot water in toilet and no cold water provided either for drinking, etc. within such cells, no toilet paper, no panic buttons present, inter alia**). Certainly, the conditions as put before this Honorable Court in the filings to date show "wanton and unnecessary infliction of pain", <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991), that deny even 'the minimal civilized measures of life's necessities", Id at 346, which are a far cry of what can in any way be called the "evolv[ed] standards of decency that mark the progress of a maturing society". Id at 346. The Plaintiffs renew their request for the relief requested regarding Building 9.

Note to the Court. Although the Defendants claim that Plaintiffs a "parallel action" pending in the Texas courts -- such is not the case as will be addressed when Plaintiffs file their response to Defendants' transfer, inter alia, motion. Any other actions were dismissed as of March 27, 2007, and that prior action did not name Mssrs. GONZALES or LAPPIN as amended. Finally, the Defendants    incorrectly    state    Plaintiffs    did    not    exhaust

administrative remedies concerning Building 9. Plaintiffs **DID EXHAUST ADMINISTRATIVE REMEDIES ON BUILDING 9.** **See Plaintiffs Complaint at Appendix 3** (@ Request for Administrative Remedies BP-9 at detailed Footnotes as well as in the BP-11 (Central Office Administrative Remedy Appeal) "Attachment sheet" detailing Building 9).

Regarding Defendant's Legal Mail Response, for motion no.
[21], id @ page 2 of respondents brief dated March 29, 2007 and
delivered to Plaintiffs on April 2, 2007.    Defendant in
opposition for reconsideration incorrectly states, "BOP does not
keep records of delivery of all mail to prisoners and so no
record exist to show whether Plaintiffs received the earlier
service copies mailed to them by undersigned counsel in this
case."    The defendant then correctly states that the "BOP
regulations do create special procedures for 'legal mail'", but
then goes on to incorrectly state, "but these are intended
primarily for attorneys to communicate with their incarcerated
clients."

Federal Statute, CFR §540.2(c), creates a protected
classification of legal mail and identifies also as "Special
Mail".    Special mail under this statute refers to identifiable
and/or specially marked inbound and outbound mail.    The statute
also provides that certain addressees and addressers are, by
statute, special legal mail.    28 CFR §540.10(c) says in part,
"Special mail also includes correspondences received from the
following: President and Vice President of the United States,
attorneys, Members of Congress, the **Department of U.S. Justice**,
including **U.S. Attorneys**, ... U.S. Courts and State Courts."
(emphasis added).    The statute is conclusive that certain
addressees and addressers are, by statute, protected special
legal mail and requires **special handling** and management.
According to statute, the address alone identifies it is special
legal mail and no other markings are required for clasification

purposes.    28 CFR §540.19 labeled "Legal Correspondence" again identifies any inbound mailing from "courts or attorneys" as protected special legal mail and §540.19(a) mandates, "Staff shall mark each envelope of incoming legal mail (mail from **courts** and **attorneys**) to show the date and time of receipt, the date and time the letter is delivered to an inmate, and opened in the inmate's presence, and the name of the staff member who delivered the letter.    The inmate may be asked to sign as receiving the incoming legal mail."

It is impossible for any mailing from the court or an attorney to become transparent if the statute is followed since the special handling requires the hand-offs to be documented. The Seagoville FCI, as permitted by the statute, **"does require"** the inmate, in all cases, to sign off on the delivery of all processed legal mail.

Respondent provided a copy of a "declaration of Jeannine Milton" discussing the logging and distribution of inbound certified mail to inmates.    It is interesting to note that there is no statute requiring the special handling, logging, and distribution of certified mail; nevertheless, it is handled and managed in accordance with the statute mandated by the Special/Legal Mail subsections.    It should be expected that the Seagoville FCI also exercises this same practice in the management of all legal mail, especially since it is mandated by statute and BOP policy.    Seagoville FCI should have a policy and practice that parallels, exactly, the certified mail process in accordance with statute except it is logged into a separate hard

bound book labeled "legal mail".  The practice requires that a staff member log the receipt date of the mailing, the inmate addressed to, the inmates Fed. id number, the sender, the sender's return address, and the date and the time the inmate picked up the mail.  The log entry is then concluded by requiring both the inmate and the staff member delivering the legal mail to sign off on the log entry.

Cleverly, defendant's provides a declaration by a staff member, Ms. Milton, who neither confirms nor denies the log book specific to legal mail.  Ms. Milton, if asked would find it impossible to deny the existence and administration of this process since she is often a direct participant in the process as represented by her many entries and signatures in the log book.  The failure to honestly and correctly address the existence of the log book, and the existence of the process, and the proof of the plaintiff's allegations can not be construed as a mistake but as a deliberate effort to deceive and/or confuse, and/or misdirect this court through omissions and the filtering of the truth.

There is a log book at the Seagoville FCI Camp, whereby all processed legal mail is logged and signed for as mentioned, ante, which will conclusively show that the log is void of any receipt or distribution of legal mail to either Beaird or Mihailovich in this instant case as alleged by both plaintiffs.

Respectfully Submitted,

_JOHN BEAIRD_

_ROBERT MIHAILOVICH_

## VERIFICATION

I, JOHN BEAIRD and ROBERT MIHAILOVICH do certify, attest, and affirm that the foregoing facts are true and correct on this the 2nd Day of April, 2007.

_JOHN BEAIRD_

_ROBERT MIHAILOVICH_

## CERTIFICATE OF SERVICE

Mssrs. BEAIRD and MIHAILOVICH request the court serve the other parties in this case as they do not have availability to copies and ability to make unencumbered access to the courts by way of copies needed for this litigation.

_JOHN BEAIRD_

_ROBERT MIHAILOVICH_

AFFIDAVIT OF JOHN BEAIRD AND ROBERT MIHAILOVICH

I, JOHN BEAIRD and ROBERT MIHAILOVICH, certify, attest, and affirm under penalty of perjury that the following facts are true and correct and that I (we) have personal knowledge in order to attest to these facts and are further competent to make such attestation. **THAT:**

BEAIRD and MIHAILOVICH ("the parties") are both subject to housing within Building 9 without notice for medical evaluation, tests, or infractions of the rules. We have each been told this, but moreover, Seagoville institution policy explicitly provides for such. Such infliction of corporal punishment which Building 9 housing subjects one to is of short duration, such that its duration is too short to even contest it or to be fully litigated prior to cessation of being housed within such Building 9. Further, the parties are subject according to policy and procedure to being housed there as discussed, ante, and that there is a reasonable expectation that the parties will be subject to the same housing again at any time for medical reasons or rules infractions and have been informed as much both by staff and by operating policy (recently and ongoingly).

AFFIANTS SAITH FURTHER NOT.

EXECUTED ON THIS 2nd DAY OF APRIL, 2007:


JOHN BEAIRD                               ROBERT MIHAILOVICH