UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

JOHN M. BEAIRD, ROBERT MIHAILOVICH and     §
JOHN M. BEAIRD and ROBERT MIHAILOVICH      §
on behalf of                               §
ALL SIMILARLY SITUATED INDIVIDUALS         §
(FILED AS A CLASS ACTION COMPLAINT)        §
                 Plaintiffs                §
        vs.                                §        No. 06-2268-JDB
                                           §
ALBERTO GONZALES (Individually), et. al.   §
                 Defendants                §

**RECEIVED**

APR 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

---

PLAINTIFFS' REPLY IN OPPOSITION TO
"DEFENDANTS' MOTION TO DISMISS AND/OR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE TO TRANSFER"

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JOHN BEAIRD, and ROBERT MIHAILOVICH, and JOHN BEAIRD and RROBERT MIHAILOVICH On Behalf of All Similarly Situated Individuals, "Plaintiffs", and files (see "Inmate-Mailbox Rule) with this Honorable Court the PLAINTIFFS' REPLY IN OPPOSITION TO "DEFENDANTS' MOTION TO DISMISS AND/OR SUMMARY JUDGMENT OR IN THE ALTERNATIVE TO TRANSFER".

Attached herewith as a part of this Reply are (1) Memorandum in Support of this Reply; (2) Exhibits and Appendixes supporting the Memorandum & Reply; (3) A statement of Issues of Material Facts In Dispute; (4) An accompanying "Motion to Strike" portions of Defendants' Motion; and (5) A proposed Order.

Respectfully Submitted,

JOHN BEAIRD

ROBERT MIHAILOVICH

## CERTIFICATE OF MAILING

I (we), JOHN BEAIRD and ROBERT MIHAILOVICH, certify and attest under penalty of perjury that this filing was deposited into the institutional mail system, first class postage pre-paid, addressed to the clerk of the court, on this the _13th_ Day of _April_, 2007, and is, thereby, considered "FILED" On Same Date (see "Inmate Mailbox, Rule").

JOHN BEAIRD

ROBERT MIHAILOVICH

## CERTIFICATE OF SERVICE

I (we), JOHN BEAIRD and ROBERT MIHAILVOCH certify that a copy of this filing was attempted to be sent to the parties of this action on this _13th_ Day of _April_, 2007, however, due to the inability of the Plaintiffs to obtain copies Plaintiffs request this court serve said filing on all parties. Plaintiffs have made a good faith attempt, but Defendants' conduct continues to deny access to the courts as needed.

JOHN BEAIRD

ROBERT MIHAILOVICH

## VERIFICATION

I, JOHN BEAIRD and ROBERT MIHAILOVICH hereby attest that this filing was filed in good faith and the facts contained herein are true and correct on this the _13th_ Day of _April_, 2007.

JOHN BEAIRD

ROBERT MIHAILOVICH

CERTIFICATE OF RECEIPT

I, JOHN BEAIRD, and ROBERT MIHAILOVICH, hereby attest under penalty of perjury that the filing to which this filing is responding to was received on this, the _26th_ Day of _march_ , 2007.

Date: _April 13_ , 2007

JOHN BEAIRD

ROBERT MIHAILOVICH

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN M. BEAIRD, ROBERT MIHAILOVICH and JOHN M. BEAIRD and ROBERT MIHAILOVICH on behalf of ALL SIMILARLY SITUATED INDIVIDUALS (FILED AS A CLASS ACTION COMPLAINT) Plaintiffs | § § § § § § § | |
| vs. | § § | No. 06-2268-JDB |
| ALBERTO GONZALES (Individually), et. al. Defendants | § § § | |

**RECEIVED**

APR **2 0** 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

---

PLAINTIFFS' MEMORANDUM (Combined Memorandum) IN SUPPORT OF "PLAINTIFFS' REPLY IN OPPOSITION TO "DEFENDANTS' MOTION TO DISMISS AND/OR SUMMARY JUDGMENT OR IN THE ALTERNATIVE TO TRANSFER" "

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, JOHN BEAIRD, and ROBERT MIHAILOVICH, and JOHN BEAIRD and ROBERT MIHAILOVICH On Behalf of All Similarly Situated Individuals, "Plaintiffs", and files with this Honorable Court this Memorandum in Support of Plaintiffs' Reply to Defendants Motion referenced, ante, and incorporates by reference the attached Exhibits and Appendixes.

The Plaintiffs submit to this Honorable Court the following:

The Defendants have filed with this court a "Motion To dismiss and/or Summary Judgment [Motion] or In The Alternative [a Motion] To Transfer", such combined Motion, hereinafter, referred to as "the Motion" or "Defendants' Motion", and Defendants attached Memorandum, hereinafter, referred to as Defendants' Memorandum ("DM"). The Defendants allege that there exists a "repetitive filing" pending as well as 1) Plaintiffs' Complaint suffers numerous "other" defects in personal and subject matter jurisdiction and venue; 2) Plaintiffs' claims cannot overcome sovereign and qualified immunity; and 3) there is no "factual support" for the necessary premise that the District of Columbia "files" had previously been "affected" as alleged by Plaintiffs in Plaintiffs' Complaint Count #7. See DM at pgs 1 & 2. Defendants request a Motion to Dismiss on their grounds alleged, ante, on the issues except that the "document destruction claims" and for **solely** on that specific issue ("document 'destruction' claim") the Defendants Move for, and proceed in their combined motion as a Motion for Summary Judgment (see DM at pg. 25, "Conclusion"; requesting Summary Judgment only "on the document destruction claims").

For the reasons the Plaintiffs show, infra, **all of these must fail,** and moreover, for the specified conduct of the Defendants' counsel as detailed, infra, the Court would be justified in imposing sanctions for filing a frivolous and malicious motion for the reasons discussed, infra, such motion also to harass Plaintiffs.

2

I.

    A.

VENUE IS PROPER <u>ONLY</u> IN THE DISTRICT OF COLUMBIA and PLAINTIFFS HAVE NO OTHER PENDING "PARALLEL PROCEEDINGS"

    1).  <u>NO OTHER FEDERAL CLAIM OR LITIGATION EXISTS</u>:

Although the Defendants alleged "parallel proceedings" involving **"the same parties"** (see DM at pg. 8) is currently pending, <u>such is factually incorrect</u> (See BEAIRD Affidavit #1 & MIHAILOVICH Affidavit #1) and, moreover, the Defendants knew such was incorrect at the time of their filing of their Motion. The Defendants' **total argument and reasons** to Transfer Venue, or to dismiss, the "prison overcrowding and conditions claims" is **"in order to avoid the unnecessary time and expense of litigating the same claim between the 'same' parties in two different districts".** DM at pg 8. THIS IS A MOOT ISSUE as there <u>does not exist</u> a separate claim or litigation in any other district, including Texas or otherwise.

.Plaintiff JOHN BEAIRD had brought an action against two of the defendants in this case, inter alia, Mssrs. Lappin & Gonzales, however, because personal jurisdiction of the Northern District of Texas Court upon these two "individually" named defendants for their specific conduct "which occurred within the District of Columbia's jurisdictional boundry" could not be obtained or realized in any other district court other than the District of Columbia District Court, Plaintiff JOHN BEAIRD had to amend that Complaint that had existed in Texas to <u>remove</u> these particular parties from that Complaint. Thus, on December 4, 2006, the date of such Amended Complaint filing, the parties LAPPIN and GONZALES <u>were not parties</u> to any other federal complaint by either Plaintiff as so alleged by Defendants' counsel; such fact being <u>clearly known</u> by said

3

Defendants' counsel at the time of their submission of the Defendants' Motion.

Moreover, on **March 27, 2007,** Mr. BEAIRD filed a NOTICE OF DISMISSAL **as a matter of right,** pursuant to FRCP R. 41(a)(1)(i); such litigation there-up-on being so completely "dismissed" upon said filing date, March 27, 2007, as a matter of law. Although the Texas court had received that Complaint on April 27, 2006, the Texas court had failed to process the Complaint pursuant to the dictates of Jones v. Bock, 549 U.S. ___ (Jan. 22, 2007), and of Leatherman v. Tarrant County, Texas Intel. and Coord. Unit, 507 U.S. 163 (1993), and such Complaint, the filing fee having been fully paid, "languished" for almost a year without such court ordering service upon defendants or summons prepared.

The Defendants' <u>sole reason</u> argued to Transfer Venue is because of the existence of another federal complaint and for such "judicial economy" in handling such. The Defendants make no other argument to transfer venue other than that one. See Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F2d 1509, 1515 (10th Cir. 1991)("[t]he party moving to transfer a case pursuant to § 1404(a) **bears the burden** of establishing that the existing forum is inconvenient"). The Defendants have made no such allegations or argument, let alone have they even met this burden in their <u>sole reason</u> put forth to transfer venue -- the Defendants' sole reason and argument is itself **now MOOT** for the reasons discussed, ante. For these reasons alone, the Defendants' Motion to transfer venue or dismiss certain claims for such transfer must be DENIED.


2). <u>VENUE IS ONLY POSSIBLE IN THE DISTRICT OF COLUMBIA:</u>

Plaintiffs bring a Complaint as, inter alia, a "Bivens" action against Mssrs. LAPPIN and GONZALES. There is no evidence that any of Mssrs. LAPPIN's or GONZALES's conduct occurred anywhere else other than within the Washington, D.C. jurisdiction. Such **"conduct"** as alleged in the Counts of Plaintiffs' Complaint

4

being their "implementing", "allowing", "causing to be allowed", "causing to be implemented", "causing to be executed", "approving", "failing to act", "failing to act to prevent", and/or "initiating" "official" common customs, practices, and policies that were a "moving force" and set in motion a series of events, to which such "conduct" was a causation and proximate cause to Constitutional violations being effected upon Plaintiffs, inter alia.   Moreover, these Defendants have existing "concurrent liability" for their "conduct" that occurred in the District of Columbia while they were acting under color of law.   See Lippoldt v. Cole, 468 F3d 1204, 1219 (10th Cir. 2006)("Where multiple forces are actively operating ... plaintiffs may demonstrate that each defendant is a concurrent cause by showing that his or her conduct was a 'substantial factor' in bringing the injury about").

The Plaintiffs have specifically alleged that the Defendants' (LAPPIN & GONZALES, inter alia) conduct occurred within the District of Columbia and have not specified any other specific location.   See Plaintiffs' Complaint at pg. 7 ("Nearly all, if not all, of the conduct of the Defendants occurred **within this [Dist. of Columbia] district**").   Neither have the Defendants provided any facts, or even allegations for that matter, that dispute this statement and allegation of Plaintiffs.

The Plaintiffs could not have brought this Complaint in Texas because the Texas district courts could not have exercised **personal jurisdiction** upon Mssrs. LAPPIN and GONZALES.   See Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960)("Sec 1401(a) **does not allow** a court to transfer a suit to a district which lacks personal jurisdiction over the defendants, even if they consent to suit there"); Morris v. Peterson, 759 F2d 809, 812 (10th Cir. 1985)(same); Chrysler Credit Corp. v. Country Chrysler, Inc., supra at 1515 (same).   As the Plaintiffs have alleged (undisputed by the Defendants) that the Defendants' conduct occurred

5

within the District of Columbia, and have not alleged any other specific location other than Washington, D.C. where such specific "conduct" of the Defendants has occurred, **only the District of Columbia** District Courts have authority in this Complaint to assert **Personal Jurisdiction** upon Defendants LAPPIN and GONZALES. Because of such lack of personal jurisdiction of any other district court, let alone the Texas court, § 1404(a) does not **permit a transfer of venue from this Court.** For this reason alone the Defendants' Motion to transfer or dismiss certain claims Must be **DENIED.**

Title 28 U.S.C. § 1404(a) permits transfer of venue **only** to another district court "where it might have been brought". 28 U.S.C. § 1404(a). In Hoffman v. Blaski, 363 U.S. 335, 342-344 (1960), the Supreme Court held that the phrase "where an action might have been brought" refers **only** to those districts and divisions where the Plaintiffs had a right to bring the suit originally, not to those to which the defendant has consented. See also Shutte v. Armco Steel Corp., 431 F2d 22, 24 (3rd Cir.); Hayman Cash Register Company v. Sarokin, 669 F2d 162, 165 (3rd. Cir.)(same); Van Dusen v. Barrack, 376 U.S. 612, 623 (same). Because the conduct of the Defendants was only alleged to have occurred within the District of Columbia jurisdictional area, and that neither have the Defendants disputed these allegations, or even asserted another location other than the District of Columbia for a premise of where such specific "conduct" of these Defendants has occurred, the Plaintiffs **could not have brought this Complaint in any other district** other than the District of Columbia, and similarly neither would any other district court have had personal jurisdiction upon said defendants LAPPIN and GONZALES. Under 28 U.S.C. § 1391(b), venue in a federal-question case is proper where "a substantial part of the events or **omissions** giving rise to the claim occurred. Accordingly, because the Plaintiffs could not have brought this Complaint against Mssrs. LAPPIN and GONZALES in any

6

other district other than the District of Columbia for the "conduct" alleged §
1404(a) does not permit transfer of venue to any other district.  As such, for
this reason alone the Defendants Motion to transfer venue or to dismiss certain
claims Must be DENIED.

Additionally, the final resolution of the disposition of Plaintiffs'
**Administrative Remedies** (BP-11) occurred in the Central Office of the Federal
Bureau of Prisons which is located within the District of Columbia and in the
jurisdiction of this District Court.  Moreover, the records of such final
dispositions are located within this Courts' jurisdiction as does the Custodian
of Records for said records and recordings.  As such, this District Court is the
only proper venue for this Complaint.  See  In Re Chatman-Bey, 718 F2d 484 (D.C.
Cir.  1983)(District of Columbia is the proper jurisdiction because Final
Administrative Decision was made in the district and records of such are in such
district).  For this reason also, the Defendants Motion to transfer venue or
dismiss certain claims Must be DENIED.

The conduct of Defendants LAPPIN, GONZALES, and Several Unknown Agents of
the Federal Government, inter alia, as alleged in Plaintiffs' Complaint at Count
#7 (see Plaintiffs' Complaint at pgs 30-32) occurred "in" the District of
Columbia ("conspired with, aided and abetted, and otherwise assisted in **illegally
and unlawfully removing and obtaining** original filed  documents from **inside** the
U.S. District Court Clerk's Office, District of Columbia").  These acts (and such
conduct) clearly is alleged to have been conducted by these Defendants **only**
within the jurisdiction of the District of Columbia, this District Court's
jurisdiction.  For this reason jurisdiction is only proper in this District Court
and, accordingly, the Defendants' Motion to transfer venue or to dismiss certain
claims Must be DENIED.

Insofar as Plaintiffs' Complaint relates to the Defendants UNITED STATES and

7

FBOP, venue is proper at the seat of government in this District Court.  See Nester v. Hershey, 425 F2d 504 (D.C. Cir. 1969)(finding that when an individual is affected and aggrieved by an unwarranted interpretation of an applicable statute by the director of an agency he may properly seek relief at the seat of government).  See also 28 U.S.C. § 1391(e).

Finally, the **choice of venue** has always been a perogative of a Plaintiff which is not to be disturbed lightly.  Transfers "are generally reserved for exceptional circumstances and are strongly disfavored".  In Re Chatman-Bey, 718 F2d 484, 487 (D.C. Cir. 1983); see also Robinson v. Giamarco & Bill, P.C., 74 F3d 252, 260 (11th Cir. 1996)(Plaintiff's choice of venue is given great weight and generally should not be disturbed); Scheidt v. Klien, 956 F2d 963, 965 (10th Cir. 1992)(same); Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1947)(unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed); Time, inc. v. Manning, 366 F2d 690, 698 (5th Cir. 1966)(the plaintiff's privilege to choose, **or not to be ousted from**, his chosen forum is highly esteemed); see also 15 Wright, Miller & Cooper § 3848 (discussing varying emphasis courts place on plaintiff's choice of forum); see also U.S. Const. Amend. 5.

For this reason, and for the reasons stated, supra, the Plaintiffs' choice of forum and venue of this District Court is not only proper, but also the only permitted venue for the claimed conduct of Mssrs. LAPPIN and GONZALES as alleged in this Complaint, and as such, the Defendants' Motion to transfer venue or to dismiss certain claims Must be DENIED.

B.

CONTRARY TO DEFENDANTS' MOTION, PLAINTIFFS HAVE ALLEGED FACTUAL ALLEGATIONS
OF OTHER BOP FACILITIES:

The Plaintiffs, in reading the Defendants' Motion, are hard-pressed to
understand just what complaint the Defendants actually read and are responding
to, as surely it is certainly not the Complaint filed in this case; for the
Defendants and their counsel falsely represent that Plaintiffs "does not, however
add any specific allegations regarding any facility other than the one at
Seagoville". See DM at pg 4. And similarly Defendants falsely state "there are
no factual allegations or exhibits [in Plaintiffs' Complaint] that relate to any
prison other than the one at Seagoville in the Complaint in this case." DM at pg
8.

Perhaps the Defendants, respectfully, would be well advised to re-read the
Plaintiffs' Complaint in this case, with particular attention to be paid at the
very beginning of the Facts Section at pages A2-4 thru A2-7 and Exhibits
(Appendixes) A-46 and A-3 at pg 3. Plaintiffs clearly allege system-wide
allegations and also specifically detail allegations regarding, for example, ADX
Supermax at Folorence, Colorado. i.e.: regarding the Florence BOP facility:
Federal Arbitrator found on October, 2006, that because of the high population
level to staff that units there had been left unattended for entire eight-hour
shifts, posts for the "terrorist housing unit" were routinely left vacant,
inmates weren't properly getting their legal mail, meals, exercise, or calls
properly, that there had been two inmate deaths (for the first time) at the hands
of other prisoners, among other issues, all from such overcrowding issues; also
the DOJ Inspector General's Office Report (Oct., 2006) also confirmed that
several of the 1993 World Trade Center bombers wrote over 90 letters that were

9

published internationally in Arabic newspapers praising Osama Bin Laden's 2001 World Trade Center attack, as well as numerous other international terrorist suspects do to the overcrowding to staff ratios for the facility. Ibid.  See also Exhibit (Appendix) #46 (Florence ADX Facility); and see Exhibit (Appendix) A3 at pg 3, Request for Administrative Remedy (BP-9) ("The 'effects' of massive overcrowding are present at Seagoville as well as throughout the BOP system. Hence this BP-9 utilizes Seagoville as representative ... without waiving the scope of the complaint").

Accordingly, it is hard to believe the Defendants, or Defendants' counsel, even investigated Plaintiffs' Claims, much less thoroughly read the pleadings. As such, this Court would be well justified to find, and to impose, sanctions upon either, or both, the Defendants, and the Defendants' counsel, for filing a frivolous filing which is malicious and meant to harass Plaintiffs.  See Ortho Pharm. Corp. v. Sona Distribs,., 847 F2d 1512, 1518 (11th Cir. 1988)(counsel sanctioned for filing motion to dismiss almost immediately after action was filed without first investigating claim).  As officers of the Court, and as employees of the Department of Justice, Defendants' counsel not only owed a duty to read Plaintiffs' Complaint, but also to properly investigate the claims before filing such a frivolous and malicious motion.  "The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; and that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument ... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include ... a reasonable attorney's fees." FRCP Rule 11. "This rule incorporates an objective

standard by stressing the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule." Ortho Pharm. Corp. v. Sona, supra at 1518. Accordingly, such statements contained in Defendants' Motion regarding these matters have no basis of fact or of reasonable inquiry[1] or diligent adherence to Rule 11 and should, therefore, given no weight by this Court in regards to the Defendants' Motion, and furthermore, should, and is SO REQUESTED HEREWITH BY PLAINTIFFS, be STRICKEN from the Defendants' Motion.

---

[1]

Although the Defendants (at DM pg. 11) recite a regulation contained in Title 28 of the Code of Federal Regulations as authority for a position, not only is the recitation of such procedure completely factually incorrect, but the wrong section is also referenced. Defendants state: "the inmate may file a formal complaint with the Warden with fifteen days of the date on which the basis of the complaint occurred. 28 C.F.R. § 542.13." This is completely inaccurate and factually incorrect. Title 28 C.F.R. § 542.14(a) is the portion of the Code of Regulations dealing with this issue and such explicitly states: "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form, is 20 days following the date on which the basis for the Request occurred." Title 28 C.F.R. § 542.13, which is erroneously cited by the Defendants states: "Except as provided in § 542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before the inmate submits a Request for Administrative Remedy...". Properly cited, 28 C.F.R. allows an individual 20 days and not 15 to submit a Remedy Request.

## C.

## DEFENDANTS' SUMMARY JUDGMENT REQUEST MUST FAIL

### 1). DEFENDANTS FAIL TO EVEN MEET THEIR INITIAL BURDEN

Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. See Liberty Lobby v. Anderson, 477 U.S. 242, 277 (1986). The Defendants first **misquote** and **mis-characterize** Plaintiffs' claims of Count #7 as "document destruction" claim. Nowhere in such Count #7 does Plaintiffs allege document "destruction". Moreover, the Defendants have not even met their "initial responsibility by demonstrating the absence of sufficient evidence necessary to establish all the essential elements of the Plaintiffs' claims", Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The Plaintiffs' Count #7 "conduct" alleges that Defendants conpired to, interferred with, caused to interfer with, aided and abetted others to deny Plaintiffs access to the Courts, concealed documents and information; and conspired with, aided & abetted, and otherwise assisted in **illegally and unlawfully removing and obtaining** original filed documents from inside the U.S. District Court Clerk's Office, District of Columbia, on or about **February -March, 2006**. See Plaintiffs' Complaint at pgs 30-31. Specifically, Plaintiffs allege the period regarding this conduct in relation to the "stolen documents" occurred and transpired **prior to March, 2006**, Plaintiffs' Complaint at pg 31, not as the Defendants challenge a lack of elements on the dates on, and after, March 23, 2006.

Mistakenly, the Defendants, in their Motion, attempt to demonstrate the absence of a genuine issue of material fact on a complaint filed on **March 23, 2006**. Because the Defendants attempt to demonstrate the absence of a genuine issue of material fact in **the wrong time period** (than that alleged by

Plaintiffs), and more importantly **after** the dates on which the alleged conduct **had already occurred** with regards to the stolen and missing documents, the Defendants **have not even met their initial burden to demonstrate** that Plaintiffs have not presented evidence on an essential element with regards to the documents which were stolen **prior to** March 23, 2006.  Only if Defendants meet their burden are Plaintiffs required to respond by summary judgment proof to show a genuine issue of material fact.  Summary judgment is improper in this case for this reason and, thus, Defendants' Motion must be DENIED.

2).    THERE ARE GENUINE ISSUES REAGARDING DEFENDANTS' MATERIAL FACTS
STATED THAT ARE CONTROVERTED[2] BY PLAINTIFFS WHICH DEMONSTRATE THERE ARE GENUINE
ISSUES ABOUT MATERIAL FACTS TO ONE OR MORE ELEMENTS OF PLAINTIFFS' CLAIM WHICH
PRECLUDES SUMMARY JUDGMENT

FACT #3 (of "Defendants' Statement Of Material Facts")

Date the <u>subject</u> documents in Case No. 06-776 were received by D.C.
Court was February 27, 2006, <u>not</u> March 23, 2006;

FACT #4 (of Defendants' Statement, supra)

The Clerk(s) of the D.C. Court <u>did</u> indicate documents <u>were missing</u> in
Case No. 06-776.

On February 14, 2006, BEAIRD, inter alia, "filed" an Original Pleading
(Complaint; or "documents") in the U.S. District Court, District of Columbia
("D.C. Court"), in a Complaint which was filed as a "Class Action" pursuant to
FRCP R. 23, and which would later become USDC District of Columbia Case No.
1:06-CV-0076-UNA.  Plaintiffs (in the instant case) use the term "filed" because
that is when BEAIRD's Complaint was received and Time-Stamped by the D.C. Court.
See attached Exhibits 1, 2, 3, & 4.  Exhibit 1 represents the cover letter which
BEAIRD created and was included in the "filing" of February 14, 2006.  The
subject and contents are self-explanatory.  Exhibit 2 represents the reverse
side of this letter by BEAIRD (which was returned to BEAIRD as discussed,
infra), which has a "red" Date-Stamp of "Nancy Mayer Whittington, Clerk, U.S.
District Court for the District of Columbia" affixed in three places.  The D.C.
Court placed "X's" over said stamps for reasons discussed below.  Exhibit 3
represents the "Summons" BEAIRD had prepared and also included in such February

---

[2] See "BEAIRD Affidavit #2" attached.

14, 2006 filing as referenced in the letter of Exhibit 1, ante; such also being returned to BEAIRD as discussed, infra.  Exhibit 4 represents the reverse side of Exhibit 3 also with the D.C. Court's Date-Stamped red seal affixed.  Numerous other pages of this filing were also date-stamped February 14, 2006 by the D.C. Clerk.

On or about February 22, 2006, BEAIRD received legal mail from the D.C. Court regarding the above "filing" which was an "Order" from the Honorable Thomas F. Hogan, Chief Judge, D.C. Court, (Exhibit 5), which indicated that BEAIRD needed to have enclosed an in forma pauperis motion with the original filing that had been filed, and instructed BEAIRD to do so as well as make some other minor corrections before returning the Complaint to the D.C. Court. Additionally, the Complaint was also enclosed within such correspondence received by BEAIRD.

BEAIRD promptly complied with said Order, completed same, and then shipped via "Legal Mail/Special" the Original Complaint/Pleading ("documents") back to the D.C. Court on February 23, 2006 via Certified Mail # 7000-1670-0004-8743-2461.  See Exhibit 6 which is the Certified Mail Receipt # 7000-1670-0004-8743-2461 evidencing entry into the USPS system at Seagoville Post Office on same date.  On FEBRUARY 27, 2006, the D.C. Court received these "documents" - the Original pleadings (Complaint) and Appendixes and associated motions from BEAIRD.  See Exhibit 7 which is the green Return Receipt USPS Card returned to BEAIRD in Certified Mail # 7000-1670-0004-8743-2461 evidencing receipt of these "documents" ("filing") by the District of Columbia Clerk's Office on "FEBRUARY 27, 2006", such being signed for by "Renee Trammell" of the Court.

Therefore, on FEBRUARY 27, 2006, the D.C. Court now had possession, custody, and control of the Original Pleadings & Complaint ("documents" or "stolen documents") in that Class Action as it had been so "filed" on February

27, 2006. BEAIRD, via legal call, confirmed with the court clerk receipt of said pleadings and complaint in the first week of March, 2006, and thereby, understood a case number and filing was imminent. In the beginning of the following week BEAIRD again contacted the D.C. Court to obtain the case number and understood that the filing and case number would be forthcoming probably toward the end of that week and BEAIRD should call back to then obtain it.

BEAIRD, via a legal call, contacted the D.C. Court later that week of March, 2006, as instructed, and after speaking with the Clerk's office of the D.C. Court, obtained a "present sense impression" and had a "then existing mental state of mind and impression" based exclusively on that conversation with the D.C. Court Clerk (see Fed. R. Evid. Rule 803) that the "documents" were "missing -- but that they had not been shipped out and showed as being 'logged-in' and were being actively searched for within the courthouse and the clerk's office and that BEAIRD should recontact the Clerk's Office in a few days". See BEAIRD Affidavit #2 for detail account. Later that same week BEAIRD again obtained another legal call and contacted the D.C. Court Clerk's Office and spoke with a clerk and, again, received the same "impression" and "understanding" exclusively from that conversation which was the same as BEAIRD's previous understanding described, supra.

On or about March 13 - 17, BEAIRD again contacted the D.C. Court Clerk's Office and spoke to a couple of clerks, including a Ms. "Maurine [sic] Higgens", and exclusively from these two conversations with the clerks spoken to by BEAIRD, BEAIRD had a "present sense impression" and a "then existing mental state of mind and impression" (see FRE R. 803) from such conversations, that "the documents had not been sent out in any fashion, were supposedly still in the court as nothing showed them being logged out or otherwise released to anyone -- but, the Clerk's Office and clerks had **no idea where the missing**

documents were and they had somehow 'walked out of the clerk's office' apparently, although the clerks remembered seeing them originally, and could not explain how the documents 'vanished out of the case-file' especially in view of the significant size of the pleadings of over 300 pages" Moreover, a party outside the institution (civilian world) also contacted the D.C. Court Clerk's office and spoke a number of times with clerks during these periods and also from such conversations with the clerks transmitted to BEAIRD, and BEAIRD received, an understanding and impression identical to that with which BEAIRD received, as so described, ante.

BEAIRD, on March 20, 2006, suspicious of that many documents "coming up completely missing", then dispatches through outside institution assistance another Complaint (set of Pleadings) to the D.C. Court.  See Exhibit 8 which is a copy of the March 20, 2006, letter created by BEAIRD and shipped with this new shipment of documents, as a cover letter which was included with the now new filing of documents sent on March 20, 2006.  This letter specifically references in paragraph #3 that "[A]pparently, the previous filing (documents) ... was lost (emphasis added) by your office".  This pleading & complaint were received by the Clerk's Office, D.C. Court, on March 23, 2006, and are the pleadings and complaint to which the Defendants in the instant case, mistakenly refer to when they make the statement in their Motion that "the Court's official 'Received' stamp indicates that the Court first received the complaint in No. 06-776 on March 23, 2006".  Such, in view of the facts, supra, is a genuine material element which is now in factual dispute by the Plaintiffs in this instant case.

The Plaintiffs', in the instant case, partial cause of action in Count #7, concerns the previously filed documents (documents "filed" and received by the D.C. Court Clerk's Office on February 27, 2006) which were subsequently "spirited out of the District Courthouse" by the alleged conduct of the

Defendants in the instant case and to which then ended up (admittedly) in their possession, custody, and control at the same time the documents should have been secure and safe within the U.S. District Court, Office of the Clerk's Office secured files -- not the documents "re-filed" on March 23, 2006, to which the Defendants in the instant case point to. Thus, the Defendants have not raised any contention or claim in their Summary Judgment Motion that the documents received by the D.C. Court on February 27, 2006, were not obtained, tampered with, or otherwise illegally possessed. As such, the Defendants have not even met their initial burden to demonstrate (or even challenge) that the Plaintiffs in the instant case have not presented on an essential element with regards to the documents (February 27 filed documents) were not interfered with by the Defendants.

Subsequently, on April 5, 2006, BEAIRD filed with the D.C. Court a "Motion to Take Judicial Notice" (in case No. 1:06-CV-00776-UNA) of the above-stated events that had transpired with regards to the "stolen documents" in order to make an official preservation in the official record of the court. See Exhibit 9 (Motion to the Court) filed by BEAIRD. The content of this "Motion" is self-explanatory, and detailed with regards to such stolen documents, and parallels this account, herewith.

On March 22, 2006, at 12:45 P.M., Mr. [Robert] Tony Stafford, BEAIRD's counselor, called BEAIRD to his office and indicated to BEAIRD he was suppose to give "these" papers to BEAIRD. Mr. Stafford handed BEAIRD a stack of "dishoveled", "unwrapped", "unaddressed" and bundle of legal papers held together by a "single rubber band". Upon inspection, BEAIRD realized these were the documents that were "missing" from the D.C. Court, the ones that had been filed by BEAIRD and received by the D.C. Court on February 27, 2006; such documents displaying the red Date-Stamped Seal of the D.C. Court Clerk's Office,

as are described, ante.   By request by BEAIRD on how he came to possess these
"stolen documents" Mr. Stafford provided a written explanation (chain of
custody) of these 403 pages of BEAIRD's **legal documents**.   See Exhibit 10
evidencing the written response given to BEAIRD.   Mr. Stafford indicated he had
received these documents from Ms. Richard, the Unit Secretary, the previous day
(the afternoon of Tuesday, March 21, 2006).   Ms. Richard, subsequently, provided
BEAIRD a written explanation on April 11, 2006, (see Exhibit 11 & 12),
indicating she had received them "from the Warden's Office" on March 21, 2006.
BEAIRD, inquired and received from Warden DAN JOSLIN's secretary, Ms. LORI
VANDERSLICE, (having learned verbally the origin of said documents), whom
indicated in a writing responding to BEAIRD's written inquiry, (see Exhibits 13
& 14), which indicated the "stolen documents" had been received "in the Warden's
office from the Central Office" of the Bureau of Prisons which is located in
Washington, D.C. .   BEAIRD followed up this directly with DAN JOSLIN, Warden, in
a written request (see Exhibit 15) dated March 29, 2006.   DAN JOSLIN responded
in writing to BEAIRD's written request on April 4, 2006, (see Exhibit 16),
stating that "[t]hese documents were received in batch mail from the Central
[Washington, D.C. Headquarters] Office with 'no indication as to who the sender
was'."   Thus, these stolen pleadings (documents) which **should have been inside**
**the U.S. District Court Clerk's Office, District of Columbia between FEBRUARY**
**27, 2006, and MARCH 22, 2006** were instead obtained and in the possession of the
**Defendants** due to Defendants' conduct, and then subsequently, sent via "batch
mail" by some "unknown sender" within the Central B.O.P. Washington, D.C. Office
to the Warden's Office at Seagoville, Texas.

On April 9, 2006, BEAIRD filed a "Request for Administrative Remedy (BP-
9)(File No. 410313-F1)(see Exhibit 17 & 18) alleging said cumulative conduct
known to BEAIRD at that time.   The Warden's "Response" to said BP-9 (see Exhibit

19) confirmed the previous information provided by Warden JOSLIN, and specifically stated that such documents <u>were</u> <u>not</u> <u>Special</u> <u>or</u> <u>Legal</u> <u>Mail</u>. Thus, it was conclusive that such documents <u>were not, nor did they, enter the U.S.</u> <u>Postal Mail System or any other delivery service as any sort of mail to BEAIRD.</u> BEAIRD followed up on a "Regional Administrative Remedy Appeal (BP-10), (see Exhibit 20 & 21) on May 17, 2006. On July 11, 2006, Mr. G. MALDONADO, Regional Director, now "craftily" attempts to "mis-characterize" BEAIRD's complaint as an "issue of your incoming mail" (see Exhibit 22). All mail is picked up or received by R&D and then sorted for delivery as regular, special, or legal mail. No inmate ever receives mail through the "batch mail" (inter-office) system other than internally generated correspondence -- not these type of "documents"! Further, the Warden had already established through his investigation that this was <u>not</u> an "issue [relating to] [BEAIRD's] incoming mail"!

On July 24, 2006, BEAIRD transmits and files a Central Office Administrative Remedy Appeal (BP-11) (see Exhibit 23 & 24). On November 22, 2006, BEAIRD received a response "dated" November 1, 2006, issued by HARREL WATTS, National Administrator for the B.O.P. in Washington, D.C. (see Exhibit 25), which admitted the B.O.P. Central Office in Washington, D.C. **originated** the shipment of the "stolen documents" to the Seagoville Warden's Office, but, "conveniently", stated that "[w]e simply do not know how **this material came to be at the Bureau of Prisons' Central Office**" in Washington, D.C. . Res Ipsa Loquitur.

3).    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR TO DISMISS CERTAIN CLAIMS AS RELEVANT TO COUNT 7 IN PLAINTIFFS' COMPLAINT, AS A MATTER OF LAW, MUST BE DENIED

The Plaintiffs have invoked the doctrine of Res Ipsa Loquitur on their claims.  See Plaintiffs' Complaint at pg. 36.  The phrase "res ipsa loquitur" is a symbol for the rule that the fact of occurrence of an injury (i.e. stolen documents; Fifth Amendment, First Amendment, Fourth Amendment injury) taken with surrounding circumstances make out a Plaintiff's prima facia case and presents an issue of fact for a jury to infer that such injury was probably the result of Defendant's conduct, in the absence of explanation or other evidence the jury believes, especially in light of the Doctrine of Concurrent liability as Plaintiffs also advance in this instant case.

"[T]he inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the opponent of the summary judgment motion", United States v. Diebold, 369 U.S. 654, 655 (1962), and "where a party opposing summary judgment motion introduced evidence which would permit a jury to 'infer from the circumstances' that an actionable conspiracy had taken place, [the] moving party's 'failure to foreclose' that possibility **mandated** denial of [the] motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-158 (1970).

Here, in the instant case, the Defendants asserted (see DM and Defendants' Statement of Material Facts) that the "documents" to which Plaintiffs alleged the conduct in reference to were received by the D.C. Court on March 23, 2006. Plaintiffs have entered substantive evidence now into the record to dispute this material issue, and in fact, the Plaintiffs' claim that the subject documents of the conduct at issue in Count #7 were not received by the D.C. Court on March 23, 2006, as the Defendants put forth, but rather, were received, and the

21

evidence so concludes, on February 27, 2006.  Defendants Motion for Summary Judgment or to dismiss certain claims in light of this material issue dispute, as a Matter of Law, Must be DENIED.

Moreover, in the instant case, Defendants asserted (see DM and Defendants' Statement of Material Facts) that the Clerk of the D.C. Court never "indicated" any documents had been missing, misplaced, or unaccounted for in any way in case No. 06-776.  Plaintiffs have entered substantive evidence now into the record to dispute this material issue of fact, supra, and as a Matter of Law, the Defendants' Motion for Summary Judgment or to dismiss certain claims Must be DENIED.

II.

    A.

DEFENDANTS' MOTION TO DISMISS PURSUANT
FRCP RULES 12(b)(1), (2), (3), (5), and (6) FAILS
AND MUST BE DENIED

## 1). MOTION PURSUANT TO FRCP R. 12(b)(1) MUST BE DENIED:

In considering a motion to dismiss for lack of subject-matter jurisdiction pursuant to FRCP R. 12(b)(1), the court must accept as true all of the factual allegations contained in the Plaintiffs' Complaint. <u>Scandinavian Satellite Sys., A.S. v. Prime TV Ltd.</u>, 291 F3d 839, 844 (D.C. Cir. 2002)(citing <u>Swierkiewcz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002) ). Because subject-matter jurisdiction focuses on the court's power to hear the Plaintiffs' claim, the court may also consider materials outside the pleadings. <u>Herbert v. Nat'l Acad. of Sciences</u>, 974 F2d 192, 197 (D.C. Cir. 1992).

In the instant case, the Defendants briefly challenge the subject-matter jurisdiction of this court. See DM. The Plaintiffs, however, have alleged multiple areas for grounds of jurisdiction. First, the Plaintiffs assert that this Court has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. See Plaintiffs' Brief in Jurisdiction Section. However, it is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction. See <u>C & E Servs., Inc. v. Dist. of Columbia Water & Sewer Auth.</u>, 310 F3d 197, 201 (D.C. Cir. 2002)(citing <u>Skelly Oil Co. v. Phillips Pet. Co.</u>, 339 U.S. 667, 671 (1950) ). Therefore, the Plaintiffs do not derive subject-matter jurisdiction under this statute.

Additionally, the Plaintiffs allege subject-matter jurisdiction under the federal-question statute. See Plaintiffs' Complaint citing 28 U.S.C. § 1331.

Section 1331 provides that "district courts ... have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, in the instant case, the Plaintiffs allege a civil cause of action that is based on conduct which caused very serious violations of the First Amendment, Fourth Amendment, Fifth Amendment, Eighth Amendment, and Federal Law (see 18 U.S.C. § 3621(b), Privacy Act (5 U.S.C. § 552a et. seq), FOI Act (5 U.S.C. § 552), inter alia. Because these claims "arise under" the Constitution (and under federal law) this Court has subject-matter jurisdiction under the federal question statute, 28 U.S.C. § 1331. E.g. Cook v. Babbitt, 819 F. Supp. 1, 4 (D. D.C. 1993)(finding subject-matter jurisdiction for claim arising under the Fifth Amendment's Due Process Clause). See also Simmat v. U.S. Bureau of Prisons, 413 F3d 1225 (10th Cir. 2005)(outlining and listing various permissible jurisdictional grounds).

Moreover, Plaintiffs have alleged subject-matter jurisdiction of this court pursuant to equity relief, the Administrative Procedures Act, 5 U.S.C. § 551, pursuant to 28 U.S.C. § 1337 (which creates jurisdiction of federal courts pursuant to such execution of procedures and statutes). See Ramar v. Saxbe, 522 f2d 695, 697 (D.C. Cir. 1975); pursuant to Mandamus and Injunctive Relief, 28 U.S.C. § 1361, and of course in a Bivens v. Six Unknown Named Agents of the Federal Bur. of Nar., 403 U.S. 388 (1971) action, 28 U.S.C. § 1331(b). Similarly, an official-capacity jurisdictional statute is 28 U.S.C. § 1391(e). Finally, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 2674, the ADA Act, 42 U.S.C. § 12101 et. seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. See also Plaintiffs' Complaint at pages 10 - 19 for various subject-matter jurisdiction alleged.

As such, the Plaintiffs clearly have subject-matter jurisdiction in this Court under one of the above-referenced entitlements. Therefore, Defendants'

Motion to Dismiss pursuant to lack of subject matter jurisdiction, FRCP R. 12b(1) must be DENIED.

## 2). DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP RULES 12(b)(3) and 12(b)(2) FAILS AND MUST BE DENIED:

The Court, in considering a motion to dismiss under 12(b) must construe the Plaintiffs' allegations in the light most favorable to the Plaintiffs (non-movant). Scheuer v. Rhodes, 416 U.S. 232, 236 (1974, overruled on other grounds by harlow v. Fitzgerald, 457 U.S. 800 (1982); Walker v. Jones, 733 F2d 923, 925-26 (D.C. Cir. 1984). To prevail on a motion to dismiss for improper venue, **facts** must be presented that will defeat the Plaintiffs' assertion of venue. 2215 Fifth St. Assocs. v. U-Haul Int'l, Inc., 148 F. Supp. 2d 50, 54 (D. D.C. 2001)(citing 5A Fed. Prac. & Proc. civ. 2d § 1352).

Plaintiffs incorporate all of the paragraphs, infra, by reference. The Plaintiffs have alleged that venue is proper in this district pursuant to 28 U.S.C. § 1391, inter alia other grounds. In support of Plaintiffs' assertion the Plaintiffs point out that it is **where the conduct occurred of the Defendants in this case not** where an injury may have taken place that is the **"offending"** **causation, or "moving force" relevant to the matter.** Courts have frequently found venue proper in Bivens (§ 1391(b) ) actions **where "conspiring",** **"planning", or "supervision"** of an event took place in another judicial district. E.g. Egervary v. Young, 159 F. Supp 2d 132, 151 (E.D. PA 2001)(finding venue proper in a district where the federal defendants **"conspired with, gave** **substantial assistance or encouragement to, and/or ordered or induced"** the taking of a child ("the injury") in a custody dispute); see also Freeman v. Fallin, 254 F. Supp 2d 52 (D. D.C. 2003)(finding venue proper in D.C. District where planning and implementation conduct of AIG and Deputy AIG defendants in

relation to policy inwhich officers (plaintiffs) were injured in another district by such conduct).

As 28 U.S.C. § 1391(b) states, venue in a federal question case is proper where 'a substantial part of the events or **omissions giving rise** to the claim occurred". Ibid. Here, in the instant case,, the **"omissions"** or **"failure to act"** is one form of conduct of Mssrs. GONZALES and LAPPIN alleged to have occurred within the D.C. District. See Plaintiffs' Complaint at page 7. Moreover, the conduct of Mssrs. LAPPIN and GONZALES as alleged in Count 7 ("stolen documents") SQUARELY PLACES PROPER VENUE IN ONLY THIS D.C. COURT.

Plaintiffs also point out that Mssrs. LAPPIN and GONZALES **are not** being sued via "Respondeat Superior". A supervisor may be held personally liable if there exists either (1) his personal involvement in creating, or failing to act to prevent, common custom, practices, or policies that violated, or were a "moving force" that led to violations of the Plaintiffs' Constitutional rights; in other words, a failure to act was, thus, an "affirmative" choice or "affirmative action" "to do nothing" of such said official (individual); (2) the supervisor is willfully blind or deliberately indifferent to constitutional violations committed by their employees; or (3) supervisory liability occurs when there is a "causal connection" between the actions (or, affirmative inactions) of the supervising official and the alleged constitutional deprivation. Miller v. King, 384 F3d 1248, 1261 (11th Cir. 2004). A single decision by a policy-maker may, under certain circumstances, also create supervisory liability. See Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997)(quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)) as well as "a final decisionmaker's **adoption** of a **course of action** 'tailored to a particular situation and not intended to control decisions in later situations'." Ibid.

Likewise, a "causal connection" can be established when: (1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so; or (4) constitutional violations Plaintiffs suffered were "set in motion" by (supervisor's) Defendants' policy decisions, or on the very least, that the supervisors knew of these abuses and demonstrated a deliberate indifference to Plaintiffs.

Plaintiffs have sufficiently alleged that Defendants created, approved, executed, inter alia, policies and procedures that violated, or by setting in motion a series of acts by others (requisite causal connection), and the constitutional violations that suffered were "set in motion" by Defendants' policy decisions, all such being done, as alleged by Plaintiffs (see Plaintiffs' Complaint) exclusively in Washington, D.C. (of which the Defendants do not explicitly dispute this issue of where Mssrs. LAPPIN'S and GONZALES'S CONDUCT "as indicated in the Claims" occurred). Further, the Defendants **have failed to produce** any facts what-so-ever to defeat Plaintiffs' assertion of venue. 2215 Fifth St. Assoc v. U-Haul Int'l, Inc., supra. The Defendants produce no facts, nor have they even alleged any, which establishes where the "conduct" of LAPPIN and GONZALES (Defendants) occurred in relation to the Claims in Plaintiffs' Complaint. Such is insufficient to meet their burden in their motion. Conclusionary allegations similarly are not only not fact, but also insufficient.

Accordingly, the Plaintiffs assert, inter alia, supervisory liability under these premises, supra, such that also the "conduct" of these Defendants occurred

exclusively "in the Washington, D.C. District, and therefore in view of this, as well as the explicit facts and claims alleged in Count 7 having occurred **exclusively** in the Washington, D.C. district, and that moreover based on such, only this District Court would have "**personal jurisdiction**" over Mssrs. LAPPIN and GONZALES for the claims made by Plaintiffs, **venue is proper only in the D.C. Court**. Consequently, this requires proper venue as only the D.C. COurt. Finally, for the reasons discussed at length, supra, in **Section I(A), supra**, regarding venue and jurisdiction, which Plaintiffs shall not repeat here, but rather incorporate in entirety by reference, herewith, the Defendants' motion to dismiss pursuant to FRCP R. 12(b)(3) and for FRCP R. 12(b)(2) Must be **DENIED**.

3). DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF SOVEREIGN IMMUNITY MUST BE DENIED:

It is abundantly clear, and a matter of law, that neither Mssrs. Lappin or Gonzales enjoy "sovereign immunity". See Harlow v. Fitzgerald, supra. "The presumption is that 'qualified immunity' rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Forrester v. White, 484 U.S. 219, 224 (1988), Harlow, supra at 812. An official seeking absolute immunity "bears the burden of showing that such immunity is justified for the function in question." Burns v. Reed, 500 U.S. 478, 486 (1991). The Defendants have produced no such **affirmative evidence** and as such, absolute immunity for such Must be DENIED.

It is well-established that Defendants UNITED STATES and FBOP have waived immunity for suits for injunctive or declaratory relief. See 5 U.S.C. § 702. Additionally, such waiver is not limited to suits under the Administrative Procedures Act. Chamber of Commerce v. Reich, 74 F3d 1322, 1329 (D.C. Cir. 1996)("The APA's waiver of sovereign immunity applies to **any suit** whether under the APA or not"). Thus, for **equity relief**, the Defendants enjoy no sovereign immunity. Additionally, "18 U.S.C. § 3626 constitutes a waiver in that it authorizes suits arising out of prison conditions or actions of prisons officials." Tanner v. FBOP, 433 F. Supp. 2d 117 (D. D.C 2006). See also 28 U.S.C. §§ 1331 & 1361.

Additionally, the Plaintiffs incorporate by reference, herewith, Pages 11 thru 19 of Plaintiffs' Original Complaint as authority and additional detailed expansion of this argument for the basis that the Defendants UNITED STATES and FBOP have waived sovereign immunity for all claims except the Bivens action relief sought. For these reasons, the Defendants' Motion to Dismiss based on Sovereign Immunity Must be DENIED.

29

4).    REGARDING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP RULE 12(b)(5) and "PLAINTIFFS' FAILURE TO PROPERLY SERVE ALBERTO GONZALES (Individual Capacity):

Plaintiffs were Granted In Forma Pauperis status by this Court.  This Court Ordered the Clerk of the Court, District of Columbia, to properly prepare the summonses and Complaints for proper service upon ALL DEFENDANTS in this cause of action, and Further Ordered the United States Marshal's Service to properly effect service upon each Defendant.    These matters of service were not under control of the Plaintiffs, neither did the Clerk or Marshal's service provide to Plaintiffs any proof of service for Plaintiffs' records and, therefore, Plaintiffs, who relied on the Court's Order and the Clerk's and Marshal's Offices duties under the law and under said Order, did not become aware of this situation until now.

In consideration of the above, Plaintiffs respectfully request this Court to ORDER the U.S. Marshal's Service to IMMEDIATELY EFFECT INDIVIDUAL SERVICE UPON MR. ALBERTO GONZALES (individually capacity), personally, as required by FRCP Rule 4(e) and all applicable FRCP Rules, along with duplicate service to both the U.S. Attorney's Office, District of Columbia, and the Attorney General of the United States as is required when an employee is sued in his individual capacity.

The Plaintiffs further request, if necessary, this Court to Order an "ENLARGEMENT OF TIME" to serve Mr. ALBERTO GONZALES (individual capacity) personally, should such be necessary to be within the time-constraints of service pursuant to the FRCP applicable rules.

The Plaintiffs ask this Court to also inquire of the U.S. Marshal's Service, coincidently under the supervision and control of Mr. ALBERTO GONZALES, as to why "their boss" (Mr. ALBERTO GONZALES) was not properly served as was ORDERED by this Honorable Court, and more importantly, why such "employees" of said

30

Defendant did not see fit to inform either the Clerk, this Court, or the Plaintiffs as to their failure in adhering to this Court's Order.

Plaintiffs also request all other relief available in this instance and ask that the Defendant's Motion to Dismiss pursuant to FRCP Rule 12(b)(5) ("failure to properly serve Mr. Alberto Gonzales, individual capacity) be held in abeyance until proper service as Ordered by this Court is effected; subsequent to such, the Plaintiffs then request the Marshal's Service provide both the Clerk and the Plaintiffs with proof of proper service upon service of Mr. Ganzales within Five Days of said service, and additionally that then this Court **DENY** Defendants' Motion, thereof.

III.

A.  <u>BOTH DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP RULE 12(b)(6),</u>
<u>and DEFENDANTS' ASSERTION OF A DEFENSE OF QUALIFIED IMMUNITY MUST BE DENIED:</u>

The Supreme Court has established a two-part inquiry to dertermine when a
district court should hold that the doctrine of qualified immunity bars a suit
against government officials: (1) the court must first consider whether the facts
alleged, when taken in the light most favorable to the party asserting the injury
(Plaintiffs), demonstrate a violation of a constitutional right.  <u>Saucier v.</u>
<u>Katz</u>, 533 U.S. 194, 201 (2001); and (2) the court must then consider whether the
officials' actions violated "clearly established statutory or constitutional
rights of which a reasonable person would have known," <u>Hope v. Pelzer</u>, 536 U.S.
730, 739 (2002).  See also <u>Butera v. Dist. of Columbia</u>, 235 F3d 637, 646 (D.C.
Cir. 2001)(citing <u>Wilson</u>, 526 U.S. at 609).

Defendants make the claim and statement regarding asserting a qualified
immunity defense for Mssrs. Lappin and Gonzales that "Plaintiffs complaint does
not allege the violation of constitutional or statutory rights that are clearly
established under law and was properly dismissed below."  See DM at pg 16.
Plaintiffs are perplexed as to what Defendants mean as to "properly dismissed
below".  Ibid.   It is Plaintiffs understanding that this is an "Original
Complaint" not a case on appeal.  Again, it is hard to believe Defendants
actually read Defendants' Complaint prior filing a frivolous filing in view of
Defendants' Motion's contents as will be even more evident below.  For as one can
**clearly** see throughout Plaintiffs' Complaint, Plaintiffs allege violations by the
Defendants Lappin and Gonzales of constitutional and federal rights which have
previously been held by numerous previous courts as not only violative, but also

"clearly established".

Plaintiffs allege violations of Eighth, First, Fourth, and Fifth Amendment rights caused by the conduct as alleged of Mssrs. Lappin and Gonzales. See Plaintiffs' Original Complaint at pgs 21 thru 33. Plaintiff has also further alleged violations of federal statutory rights caused by the conduct of Mssrs. Lappin and Gonzales. See Plaintiffs' Original Complaint at pgs 21 thru 33, including, but not limited to, 18 U.S.C. § 3621(b), 5 U.S.C. § 552, 5 U.S.C. § 552(a) et. seq., 18 U.S.C. § 4042, inter alia. Thus, it is abundantly clear, to one to whom actually reads the Plaintiffs' Complaint, that the Plaintiffs have alleged violations of numerous constitutional or federal rights.

Secondly, the rights violated have all been previously held as "clearly established" at the time of these Defendants' conduct. "A right is 'clearly established' if the contours of that right are sufficiently clear that what he is doing violates that right." Freeman v. Fallin, 254 F. Supp 2d 52, 59 (D. D.C. 2003)(quoting Wilson, 526 U.S. at 614-15). See also Crawford-El v. Britton, 523 U.S. 574, 591 (1998)(stating that "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct"). Although the specific action in question need not have been held unlawful by the courts, its unlawfulness in light of pre-existing law must have been apparent to the defendant. Butera v. Dist. of Columbia, 235 F3d 637, 646 (D.C. Cir. 2001)(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The Supreme Court also spoke in relation to qualified immunity of high-ranking government officials with regards to their conduct as "setting in motion a series of events that the defendant knew or should have known would cause others to deprive a plaintiff of constitutional rights", Conner v. Reinhard, 847 F2d 384 (7th cir. 1988), when the Court stated that: "[w]e have held that

qualified immunity would be defeated if an official 'knew or reasonabley should have known (emphasis added) that the action he took within his sphere of official responsibility would violate the constitutional rights [a plaintiff]'." Harlow v. Fitzgerald, 457 U.S. 800 (1982). "Damages against high officials were, therefore, 'an important means of vindicating constitutional guarantees'." Ibid. " 'The greater power of [high] officials', we reasoned, 'affords a greater potential for a regime of lawless conduct'." Ibid, quoting Butz v. Economou, 438 U.S. at 506.

The Defendants, in DM at pg 18, recharacterize and redact all of the Plaintiffs' Eighth Amendment Claims made in Counts 1, 2, 5, 6 into only a claim regarding, "any delay in receiving dental or vision treatment, and accordingly ... failed to state a claim upon which relief may be granted under the Eighth Amendment". Notwithstanding the fact that Plaintiffs' Claims involve, inter alia, **"constructive denial of medical care due to systemically deficient medical care system"**, see Plata v. Davis, 329 F3d 1101 (9th cir. 2003)(inmate class states an Eighth Amendment Claim in right to be free from being subjected to an inadequate medical care system), Plaintiffs allege and state an Eighth Amendment Claim in right to be free from: unhealthy & inhumane prison conditions, Helling v. McKinney, 509 U.S. 25 (1993); Environmental Tobacco Smoke and other toxins, Helling, supra, Whitley v. Hunt, 158 F3d 882 95th Cir. 1998), Rochon v. City of Angola, 122 f3d 319 (5th Cir. 1997); inadequate medical care "system", Plata v. Davis, supra, Wilson v. Seiter, 501 U.S. 294 (1991), Estelle v. Gamble, 429 U.S. 97; as well as right to be free of deprivations of: sleep, quiet-time, degree of quiet, Harper v. Showers, 174 F3d 716 (5th Cir. 1999), Mata v. Saiz, 427 F3d 745 (10th Cir. 2005), Rhodes v. Chapman, 69 L ED 2d 68 (1981); of proper and adequate air-ventilation and humanely-temperate environment, Ramos v. Lamm, 639 F2 559 (10th Cir. 1980), Battle v. Anderson, 446 F. Supp 516 (E.D. OK 1977), Alberti v.

Sheriff of Harris County, Texas, 406 F. Supp (S.D. Tex 1975), Williams v. Edwards, 547 F2d 1206 (5th Cir. 1977); inadequate day-room or recreation space, Rhodes v. Chapman, supra, Capps v. Atiyeh, 495 F. Supp. 802 (D. OR. 1980); unnecessary and wanton infliction of pain, corporal punishment or threat there-of, inhumane abusive conditions of confinement which violate the standards of civilized decency, Rhodes v. Chapman, supra, Capps v. Atiyeh, supra, Wilson v. Seiter, 501 U.S. 294 (1991), Convention & treaty on Human Rights ratified by the United States, Battle v. Anderson, Ruiz v. Estelle, inter alia. **Clearly**, the Plaintiffs have adequately stated Eighth Amendment claims.

Although the Defendants cite Rhodes v. Chapman, supra, in DM the Rhodes case was a **narrow** question and **narrow** holding before, and of, the Court, respectively. Rhodes dealt stictly with the question and practice of per se "double celling" itself.    THIS CASE IS NOT ABOUT "DOUBLE CELLING" BUT RATHER, inter alia, "OVERCROWDING" AND THE "EFFECTS OF OVERCROWDING", of which the Rhodes court alluded to "was not present" in the Rhodes case when it considered only the issue of "double celling".    The Court, in Rhodes, noted that even if no single condition of confinement would be unconstitutional in itself, "exposure to the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment", Id at 70.    The Court explicitly explained that "[i]n determining when prison conditions pass beyond legitimate punishment and become cruel and unusual punishment 'the **touchstone is the** effect **upon the imprisoned.** The Court must examine the effect upon inmates of the conditions of the physical plant (lighting, heat, plumbing, ventilation, living-space, recreation-space, noise levels); sanitation (control of vermin and insects, food preparation, medical facilities, showers, lavatories, clean places for eating, sleeping and working); safety (fire protection and safety, etc); inmate needs and services (clothing, nutrition, bedding, medical system, dental care, visitation time, exercise and

recreation, educational and rehabilitative programming, medical care system); staffing (trained and adequate staffing), etc.". <u>Rhodes v. Chapman</u>, supra at 80.

Thus, the <u>Rhodes</u> case, supra, <u>DEALT WITH THE NARROW ISSUE OF 'DOUBLE-CELLING' IN AN ENVIRONMENT THAT DID NOT CONTAIN THE OTHER 'EFFECTS' OF OVERCROWDING -- NOT PER SE 'DOUBLE-CELLING IN A VACUUM!</u>

Thus, <u>Rhodes</u> is **off-point** in the Defendants' reliance to the matters at issue in this instant litigation and lawsuit. Similarly, the Defendants' reference to <u>Woods v. Edwards</u>, 51 F3d 577 (5th Cir. 1995), id at DM pg 17, is **off-point** for <u>Woods</u> did hold that <u>adequate</u> <u>ventilation</u> <u>was</u> <u>a</u> <u>requirement</u> and, unlike BUILDING 9 in the instant case, the plaintiff in <u>Woods</u> had <u>fans</u> <u>in</u> <u>the</u> <u>cells</u> and the temperatures were not inhumanely hot as opposed to <u>BUILDING 9 WITH CLOSED OVER WINDOWS, NO FANS, NO COLD WATER, NO TOILET PAPER, UNSANITARY CONDITIONS, and TEMPERATURES CONSTANTLY IN EXCESS OF 100 to 115 DEGREES AROUND THE CLOCK</u> except in the winter when they are oppositely 40 to 45 degrees. The instant case deals with a <u>complete lack of any ventilation or basic human needs within BUILDING 9</u>. The Defendants should be ashamed of themselves for attempting to trivialize the grotesquely inhumane conditions present within BUILDING 9 as are <u>well</u> <u>documented</u> in Plaintiffs' Complaint.

Plaintiffs incorporate by reference, herewith, all previous paragraphs in this filing. Plaintiffs do state Eighth Amendment Claims and Defendants Motion to Dismiss Must be **DENIED.**

Although not challenged in Defendants' Motion, the Plaintiffs' Complaint also **states claims under rights other than the Eighth Amendment.** E.g. Right to be free from unreasonable searches and seizures of legal material and legal mail, <u>Procunier v. Naravette</u>, 434 U.S. 555 (1978), <u>Jensen v. Klecker</u>, 648 F2d 1179 (8th Cir. 1981), <u>Ramos v. Lamm</u>, 639 f2d 559 (10th Cir. 1980), <u>Jones v. Diamond</u>, 594 F2d 997 (5th Cir. 1979); right to be free from reprisals or inhibitations to

access to the courts or imposition of "chilling effects", <u>Morris v. powell</u>, 449 f2d 682 (5th Cir. 2006); right to unfettered and unhibited access to the courts, <u>Harbury v. Deutch</u>, 244 F3d 956 (D.C. Cir. 2001) & <u>Harbury</u> at 959 (if state officials wrongfully and intentionally conceal information crucial to a person's ability to obtain redress through the courts, and do so for the purpose of frustrating that right, and that concealment and delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled, they have committed a constitutional violation), <u>Ryland</u>, 708 F2d at 973 (constitutional right of access violated where agents of the state intentionally engaged in conduct that interfered with the exercise of the constitutionally protected right to institute a lawsuit); right to individualize determination for place of confinement, <u>Woodall v. Harley G. Lappin, Dir. B.O.P., et. al.</u>, 432 F3d 235 (3rd Cir. 2005); <u>Elwood v. Jeter</u>, 386 F3d 842 (8th Cir. 2004); <u>Goldings v. Winn</u>, 383 F3d 17 (1st Cir. 2004); <u>Mihailovich v. B.O.P., et. al.</u>, (U.S.D.C. North. Dist. Tex. No. 3:06-CV-1603-N, March 28, 2007). The Defendants contests none of these and consequently forfeit objection to the fact that these claims <u>do state a claim</u>.

**Ever-so-clearly**, Plaintiffs have well-alleged violations of constitutional and federal rights within Plaintiffs' Original Complaint and, as such, Defendants' assertion of Qualified Immunity Must be **DENIED**, and similarly, Defendants' motion to Dismiss Pursuant to FRCP R. 12(b)(6) Must be **DENIED**.

IV.

## SUMMARY

## DEFENDANTS' MOTION TO DISMISS ON NON-EXHAUSTION
## OF ADMINISTRATIVE REMEDIES FAILS, AND MUST BE DENIED

Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, BEARS THE ULTIMATE BURDEN OF PERSUASION, "it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." Rushing v. Kansas City S. Ry. Co., 185 F3d 496, 505 (5th Cir. 1999), cert. denied, 528 U.S. 1160 (2000)(citing Exxon Corp. v. Oxford Cloths, Inc., 109 F3d 1070, 1074 (5th Cir.), cert denied, 522 U.S. 915 (1997). A 'material fact' is one that might affect the outcome of the suit under governing law.   See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); matsushita Elec. Indus. Co. v. Zenith Radio, 474 U.S. 574, 587 (1986); Tao v. Freeh, 27 F3d 635, 638 (D.C. Cir. 1994).

The Defendants have, first of all, completely failed in their "burden of persuasion" in presenting evidence to support each element of its affirmative defenses of qualified immunity, sovereign immunity, and non-exhaustion of administrative remedies.  The Defendants merely resort to a "general denial" that Plaintiffs have not exhausted administrative remedies by way of general allegations rather than properly producing evidence.  As Plaintiffs describe, infra, Defendants make reference to numerous administrative remedy claims on numerous issues that Plaintiffs have filed in relation to prison issues and constitutional issues, but then only hand pick a couple that, in fact do show and prove exhaustion of certain claims, but handily fail to produce all the others, and then allege, based on such "non-production" of evidence, that "that" evidence

not produced "proves" non-exhaustion on the other claims. Such is a "bare allegation" devoid of affirmative evidence. Further, the Defendants reference and point to only a couple of "Eighth Amendment Claims" that they allege justify their affirmative defense of "qualified immunity" in relation to "clearly established" rights. This completely ignores most of the substantive FIRST, FIFTH, AND EIGHTH AMENDMENT CLAIMS as well as Federal rights claims, made in Plaintiffs' Original Complaint. Plaintiffs affirmatively show, infra, numerous constitutional and federal rights claims that are all "clearly established" alleged to have been due to Defendants' conduct. This being done here, although the "burden of persuasion" is upon the Defendants on all such allegations in Plaintiffs' Original Complaint.

IV.

    A.

Under the recent U.S. Supreme Court ruling, **Jones v Bock**, supra, dated January 22, 2007; Defendants' Motion to Dismiss **Must be DENIED**. In that decision, supra, the Supreme Court says that PLRA does not require Inmate Plaintiffs to Prove exhaustion, nor does it impose "total exhaustion" standards. The Supreme Court held that the Prison Litigation Reform Act's requirement that prisoners seek to challenge prison conditions in federal court first exhaust all available administrative remedies does not foreclose a prisoner from pursuing relief against prison officials in a civil action merely because one of multiple claims is unexhausted. **Therefore**, as an affirmative defense Defendants' **MUST** show, individually, which claims Plaintiffs did not exhaust and identify, in the instant case, which claims should be dismissed. The Defendants' entirely failed to specifically identify any claim "not" exhausted and entirely failed to prove in the affirmative any one particular claim for failure to exhaust. **Therefore**, as a Matter of Law, Defendants' Motion to Dismiss **Must be DENIED**.

Defendants have not met the requirements of an affirmative defense by arguing, without specificity, a mere general "failure to exhaust Administrative Remedies" doctrine; and therefore, Defendants' Motion to Dismiss **Must be Denied**. Defendants have failed to enumerate any single claim "not" exhausted and, after general characterizations, Defendants asked this court to "**DISMISS NO CLAIM**" but only states, "Thus, Plaintiff's claims specific to Building Nine and all of Mihailovich's claims should be dismissed for failure to exhaust administrative remedies under PLRA" (id at 12 DM). An "affirmative defense" cannot prevail where the Defendants haven't "identified which claims were not exhausted" nor "affirmatively

enter evidence supporting that any particularly claim wasn't exhausted. Defendants' motion lacks specificity and even if the court sided with the defendants the court could not grant dismissal for failure to exhaust because Defendants   did not specifically ask this court to dismiss any identifiable claim.   Can this court determine "which claims" are Mr. Mihailovich's and if not how can the court dismiss Mr. Mihailovich's claims for failure to exhaust? Can the court identify "which" claims are specific to Building Nine; is there even a claim "specific to Building Nine"; as a matter of law can the court construe Defendants' motion liberally, and subjectively "divine" or "guess" which claims belong to Mr. Mihailovich, and/or which claims belong specifically to Building Nine. Courts do not generally exercise these types of discretionary powers and for this reason alone the Defendants' Motion **Must be DENIED.**

Furthermore, if we exclude the argument ante, as a matter of law the Defendants' allegations that Plaintiffs have failed to Exhaust Available Administrative Remedies are factually untrue and incorrect. The "Declaration of Bruce Plumley" provided by Defendants, in support of their motion, is deficient with regards to the Administrative Remedy Process, a mere generalization of practice and policy, and is exclusionary concerning statute and misrepresents the Administrative Remedy Process and exhaustion requirements as a matter of law.

Mr. Plumley's declaration can best be described as conclusionary whereby Mr. Plumley "declares" that "he" made a self-serving determination "to which" Administrative Remedies were applicable or "not" applicable regarding Plaintiffs' claims; and therefore, which Claims were exhausted or "not" exhausted relating to this litigation.   Mr. Bruce Plumley also "declares" in his declaration that both Plaintiffs have properly submitted

41

numerous Administrative Remedies challenging the condition of their confinement and then proceeds to incorrectly segregate out for "exclusion of consideration" in his "opinion" concerning this litigation.

Mr. Plumley, identifies himself as a "Remedy Specialist", i.e. "clerical position" and nothing is provided that certifies Mr. Plumley as an authority or expert witness as to what is proper content applicable or inapplicable concerning the legitimate claims before this court.    In Mr. Plumley's official capacity he "declares" that Mr. Beaird  has submitted a total of twenty-three (23) Administrative Remedies and that Mr. Mihailovich has submitted a total of twenty-five (25) Administrative Remedies, but Defendants only decided to "declare" and present a few of them in support of the Defendants' motion to dismiss. The Defendants have empowered themselves to mutually exclude, at there own discretion, most of Plaintiffs' Remedies and self-determined that they are not applicable in this litigation. **Plaintiffs Disagree**.   Neither the Defendant, nor the Defendants' Counsel, nor Defendants' agent cite any authority in law for excluding the "numerous" remedies which Defendants' agent admits both Plaintiffs submitted.  On one hand the Defendants asserts that Plaintiffs have not exhausted any remedies but then submits Plumley's declaration which, in part, affirms that Plaintiffs have exhausted Administrative Remedies.     Therefore the Defendants' Motion to Dismiss for failure to exhaust may be characterized as one **conducted in bad faith** and their dual position is certainly a self-argument by the Defendant against the Defendants' Motion to Dismiss for failure to exhaust.

Concerning Mr. Mihailovich, Plaintiffs would like to put this court on notice that the Federal District Court in the Northern District of Texas, Dallas  Texas,  has  held  that  Plaintiff  Mihailovich  exhausted  his

**42**

Administrative Remedies pertaining to claims and issues in this instant case. In **Robert Mihailovich v Federal Bureau of Prisons**, No. 3:06-CV-1603-N,(Northern District of Texas, March 28, 2007) granting Plaintiff Mihailovich's §2241 habeas, the court found that Plaintiff Mihailovich had exhausted all Administrative Remedies necessary for his claims pursuant to 18 U.S.C. Section 3621(b) and 28 CFR 570.20 & 570.21 which are also relevant to the instant case before this court. The Court also held that Plaintiff Mihailovich exhausted his Administrative Remedies, ante, **prior** to December 2006. Therefore, as a Matter of Law, it has already been determined, and so ruled, that Plaintiff Mr. Mihailovich has exhausted Administrative Remedies, relevant to the instant case before the D.C. Court, **prior to December 2006**; and therefore, as a Matter of Law Defendants' Motion **Must be DENIED**.

Furthermore, Defendants' agent, Bruce Plumley, in his declaration affirms that Plaintiff Mihailovich, id pp 2(3), has exhausted Administrative Remedies relevant to the instant case by stating, "Therefore, Plaintiff formally exhausted the administrative cycle...". It should be noted for the record that the BOP assigns simple titles to their Remedy Sentry Entries, although the Administrative Remedy Form has no input, therefore the Administrative Remedies screening process "by title" accomplished by Mr. Plumley, instead of by content, in his Declaration is absolutely meaningless. For example, Mr. Plumley in his Declaration, affirms that Plaintiff Mihailovich has exhausted an Administrative Remedy which is Sentry Titled "home confinement". This Remedy is attached to Mr. Plumley's Declaration. Included in the many pages of that single Remedy, Plaintiff Mihailovich, references and challenges several prison conditions that spans several of Plaintiffs claims. For example, that single remedy discussed "inmate polulation", "overcrowding", "design capacities", "Title 18

**43**

§3621(b)", "inmate transfers", "community custody", "health care issues", "duties and responsibilities of the instant Defendants", "future civil litigation that is now a reality before this court", "deliberate indifference", "28 CFR 570.21", "Program 7310.04", etc. By the nature of the Administrative Remedy Process itself, one Remedy may give cause to several legal claims; and therefore, the law is just in requiring the Defendants to prove as an "affirmative defense" that Plaintiffs have not exhausted. By the nature of the Remedy Process itself and the affirmation that Plaintiffs have exhausted Remedies the Defendants' have failed their burden to succeed in an "affirmative defense" and for this reason Defendants' Motion to Dismiss Must be DENIED.

Mr. Plumley either self-directs himself to ignore most of the Administrative Remedies or he was directed to do so as an employee of the Defendants; nevertheless, he "declares" that plaintiff Beaird, as relating to this litigation, "has exhausted" his Administrative Remedies pertaining to the claim of "effects of overcrowding and commensurate constitutional violations by stating, "[t]hus, Plaintiff has exhausted his administrative remedies with respect to the issue of overcrowded conditions in the institution (cycle 384260)." (id 2(5) Defendant exhibit "Declaration of Bruce Plumley"). Mr. Plumley also "declares" that Mr. Beaird exhausted his Administrative Remedies in support of a second claim relating to the litigation before this court by "declaring", "Plaintiff has exhausted his administrative remedies pertaining to the issue of staff tampering with his legal work." (id page 3(7) of Defendants' exhibit "Declaration of Bruce Plumley"). Therefore the Defendants' own agent has acknowledged exhaustion, in opposition to Defendants' Motion; and therefore, Defendants have failed the burden of their "affirmative defense" that Plaintiffs failed to exhaust

available Administrative Remedies relevant to any claim.    **Therefore**, as a Matter of Law defendants' Motion to Dismiss **Must** be **DENIED**

IV

B.

In the Supreme Court decision of **Bock**, supra, the government argued that inmates needed to affirmatively defend their administrative remedy filings, dates, exhaustion, etc.  In the oral arguments, the Justices questioned how an inmate, (lacking storage space, stationary filing/record resources, some illiterate, some just unorganized, often subject to property seizures and/or immediate transfers at the will of the BOP), would successfully manage this gate keeping and important administrative function.  In turn, the Supreme Court rejected those arguments and held that a defendant needed to meet burdens under an "affirmative defense" and not the inmate/Plaintiff.

In this instant case, Plaintiffs **"do not have to prove"** they have exhausted available remedies.  Although, the Defendants must **prove** that Plaintiffs "did not" exhaust and Plaintiffs have no burden, nevertheless; Plaintiffs offer additional evidence and affidavits that they have complied with all requirements under the PLRA and Administrative Remedy Process and both Plaintiffs have exhausted their ^dministrative Remedies relating to all claims in this instant case.

Plaintiffs have eight (8) counts, referred to a 1 thru 8, pending before this court, (see Plaintiffs Complaint "claim Section").  Plaintiff Mihailovich offers the following in support of exhaustion to counts 1 through 8, ante.

45

<u>Plaintiff Mihailovich's Administrative Remedies Exhaustions.</u>

1.) Administrative Remedy # 437378; specific to conduct, interference, and mismanagement of special/legal mail over the seizure of legal mail and legal filings from FCI Compound Post Office Box, of ⌐laintiffs protected legal mail. Applies to Counts 6, 7, & 8. See attachment M-1.

2.) Administrative Remedy 442064; Specific to retaliation, to impede, obstruct, and deny Plaintiffs access to courts, to punishing Plaintiff for requests to legal resources, attempting to file remedies, and for attempting law suit by firing Plaintiff from job, restricting inmate from law library, and ordering of Plaintiff "not" to do legal work. Applies to counts 6, 7, & 8. See exhibit M-2.

3.) Administrative Remedy 425024; Specific to duty in designating, placement, transferring and duties pursuant to § 3621(b). Applies to count 1, 2, 3, & 4. ⌐ee exhibit M-3.

4.) Administrative Remedy 423376; Specific to §3621(b), obligations and duties of BOP, transfer/designation/placement. Applies to count 1, 2, 3, 4, and 5. ⌐ee exhibit M-4.

5.) Administrative Remedy 428719; Specific to duties concerning transfer/placement/designation. Applies to 1, 2, 3, 4, & 5. See exhibit M-5;

6.) Administrative Remedy 428713; Specific to failure to accept, log, and process Administrative Remedies which effectively denies Plaintiffs from all due processes, legal rights, and access to the courts. This Remedy also represents a denial to medical access, conditions of confinement, and several constitutional violations. ⌐pplies to 1, 2, 3, 4, 5, 6, 7, & 8. ⌐ee attachment M-6.

7.)   Administrative Remedy 437378;   Specific to unlawful seizure of special/legal mail after dropping into institutional legal mail post office box on FCI compound.   Such legal mail seized related to the filing of this litigation and all the counts therein.   Applies to counts 1, 2, 3, 4, 5, 6, 7, & 8.   ˆee Exhibit M-7.

8.)   Administrative Remedy 428308; Specific to impeding, obstructing, and denying the acceptance, logging, and processing of Administrative Remedies and the ᴾOP's failure to allow access to the ᴬdministrative Remedy Process by design to deny due process and open access to the courts.   Applies to 1, 2, 3, 4, 5, 6, 7, & 8. See exhibit M-8.

9.)   Administrative Remedy 428708; Specific to access to the law library, law materials, and resources owed by law to inmates.   ˆenial of access to due processes and access to the courts.   Applies to counts 1, 2, 3, 4, 5, 6, 7, & 8.   ˆee M-9.

10)   Administrative Remedy 423667;   Specific to 3621(b), duties owed, inmate rights under the law, placement, designation, and transfer.   Applies to 1, 2, 3, 4, 5, 6, 7, & 8.

ᴾlaintiffs   put   this   court   on   notice,   ante,   that   Defendants' generalization of the Administrative Remedy ᴾrocess was a misrepresentative of the Exhaustion Doctrine.   In **Kaba v Stepp**, 458 F.3d 678 (7th Cir. 2006); the court held at 684, "when prison officials prevent inmates from using the administrative remedy process detailed in the Code of Federal Regulations, the process that exist on paper becomes unavailable in reality.   Thus, as we held in Dale, when prison officials fail to provide inmates with the forms necessary to file an administrative grievance, administrative remedies are not 'available.'   376 F.3d at 656.   The Third Circuit reached a similar conclusion in **Brown v Croak**, 312 F.3d 109, 111-12 (3rd ᶜir 2002).

**47**

It further held, "Prison officials may not take unfair advantage of the exhaustion requirement, and a remedy becomes unavailable if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhaustion. **Dole v chandler,** 438 F.3d **at 809.**" And finally at 685, supra, "[A] remedy that prison officials prevent a prisoner from utiliz[ing] is not an available remedy under §1997e(a)."

Defendants have initiated, caused to be initiated, implemented, caused to be implemented, allowed, caused to be allowed, and caused to be executed a policy, custom, and practice of misconduct which effectively impedes, obstructs, and denies inmates access to the Administrative Remedy Process. Furthermore, this is not a bald allegation and plaintiff Mihailovich, has put Defendants on notice of this problem through personal communications, postage pre-paid through U.S. Post Services, through FCI intra-office mail services, and through the Administrative Remedy Process itself. ^ee exhibits M11 through M15. In fact, Plaintiff Mihailovich, properly filed and submitted a "sensitive" Administrative Remedy asking for relief from a direct order; whereby, Plaintiff Mihailovich was ordered never to submit another Administrative Remedy for the remainder of his imprisonment, which effectively made all Administrative Remedies unavailable and constitutes "exhaustion" as a Matter of Law. See Exhibit M-16.

Plaintiff has properly filed and submitted and/or properly attempted to file and submit numerous remedies through the Administrative Remedy Process which have been seized, unprocessed, unanswered, ignored, unacknowledged, unprocessed, improperly rejected, and denied all in violation of the Title 28 CFR §542.10 through §542.19. Therefore, Plaintiff Mihailovich has exceeded all of his PLRA Administrative Remedy Exhaustion Requirements, not once, not twice, but numerous times as a Matter of Law under statute and the exhaustion doctrine of the court.                48

## <u>PLAINTIFF BEAIRD'S ADMINISTRATIVE REMEDIES EXHAUSTION:</u>

DEFENDANTS' AFFIRMATIVE DEFENSE **AS** TO NON-EXHAUSTION OF CERTAIN ADMINISTRATIVE REMEDIES, WITH RESPECT PLAINTIFF BEAIRD, IS <u>FACTUALLY</u> <u>INCORRECT</u> AND "DEFENDANTS' MOTION" MUST BE **DENIED:**

The Defendants' claim regarding Plaintiff Beaird is "circular" at best, confusing, and self-contradiction at its finest. The Defendants claim in one sentence, see DM at pg 11: "Plaintiffs have failed to exhaust their administrative remedies with respect to the claims of prison conditions and overcrowding ...", and then two sentences later the Defendants claim: "Defendant[s] concedes PLRA exhaustion for the overcrowding claim"!! So which is it???!! The Defendants have the burden of an "affirmative defense" and "consequently the burden of proof is on the prison officials to allege and prove non-exhaustion of specific claims." <u>Kaba v. Stepp</u>, 458 F3d 678, 681 (7th Cir. 2006); <u>Dale v. Chandler</u>, 438 F3d 804, 809 (7th Cir. 2006). The Plaintiffs agree with the Defendants in the claim (and concession) made by them of "Defendant[s] concedes PLRA exhaustion for the overcrowding claims". Because "all facts and reasonable inferences must be viewed in the light most favorable to the non-moving party (Plaintiffs)", <u>Matsushita</u>, 474 U.S. at 587, Plaintiffs, and especially Plaintiff Beaird, have exhausted all administrative remedies on any and all of the overcrowding claims and issues there-of.

Now although the Defendants attempt to assert that Plaintiffs, and Plaintiff Beaird, have not exhausted the "effects of overcrowding and conditions of confinement" issue regarding BUILDING 9, it is first interesting to note that Defendants only attempt to do this with regards to BUILDING 9 and to no other building, all of which are listed throughout Plaintiff Beaird's administrative remedies (see Appendix 3 to Plaintiffs Original Complaint). But then, here

again, a **"detailed reading"** of Plaintiffs' Complaint and Plaintiff Beaird's Appendix 3 and said Administrative Remedies, there-in, **reveals otherwise**, and such misguided allegation of the Defendants is not supported by the facts.

Plaintiff Beaird clearly put the Defendants **on notice of the problems regarding BUILDING 9 within such administrative remedies.** The Supreme Court spoke of this recently in stating: "[w]e are mindful that the primary purpose of a grievance **is to alert prison officials to a problem,** not to provide personal notice to a particular official he may be sued." Jones v. Bock, 549 U.S. ___ (2007). In the instant case, Beaird clearly put the Defendants on notice of all of the problems alleged in numerous facilities and buildings --- **including BUILDING 9.** See Plaintiffs' Original Complaint at Appendix #3 at "Request for Administrative Remedy (BP-9) Continuation Page/Footnotes Page at:

FOOTNOTE 1: Referencing inadequate living conditions, inhumane "in excess of 100 degrees in summer are common and inmates must endure such for 23 hours a day and there is absolutely no fresh air forced into the room", mattresses-on-the-floor practices next to the filthy toilets, inter alia;

FOOTNOTE 2: Plumbing and sewage problems plague BUILDING 9;

FOOTNOTE 6: Sanitation, "flooding, dampness, lack of proper ventilation", age, black mold, and general condition of BUILDING 9.

Again, Beaird alerted prison officials to the conditions of BUILDING 9 in his (BP-11) to Washington, D.C. "Central Office Administrative Remedy Appeal" (see Appendix 3, supra) and not only the Central Office was "alerted", but in addition Beaird **personally "alerted" Defendant HARLEY G. LAPPIN** via "actual" and "constructive" Notice via **Certified Mail No.** 7000-1670-0004-3960-2867, such being received by Mr. Lappin on **October 17, 2005 (see EXHIBIT 26 herein).** Such documents therewith received, and said "Continuation Page of BP-11" specifically states and notices the Defendants, as well as personally notices Mr. Lappin,

that:  "BUILDING 9 is a SHU and the rooms contain only about 60 sq ft inclusive of a desk, toilet and bed.  Although adequate for 23 hr housing around the clock confined housing for only 1 inmate, these units, as of the date of the BP-9 filing, and as of today (10-6-2005), routinely house 3 inmates with one of the three occupants forced to sleep on the floor on a mattress next to the filthy toilet.  Additionally, mattresses are alligned up on the floor in the halls of the Lower 9 section of the building.  This Building [BUILDING 9] **has** **no** **mechanical** **ventilation** **and** temperatures **within** **such** **cells** **routinely** **reach** 100 **degrees** **to** 105 **degrees** -- **all** **without** **fresh** **air** **ventilation**.  This building also contains outdated plumbing and sewage frequently backs ups and bursts out of the pipes within the building and in the basement.  Further, the building CONTAINS ASBESTOS, BLACK MOLD, AND OTHER ENVIRONMENTAL HAZARDS."

Again, it is hard to believe the Defendants actually read the Plaintiffs' Complaint and investigated the Claims PRIOR TO FILING THIS FRIVOLOUS MOTION, for the facts speak for themselves that not only did Plaintiff Beaird "alert" prison authorities within his Administrative Remedies and Exhaust such claims regarding BUILDING 9, but Mr. Beaird also PERSONALLY SERVED SUCH NOTICE ALSO ON MR. LAPPIN, DEFENDANT, VIA CERTIFIED MAIL of these problems.  Defendant Lappin, subsequently, "affirmatively chose", with deliberate indifference to the constitutionally offensive conditions, to 1)  Continue his course of conduct as alleged in Plaintiffs' Complaint; and 2) Do nothing.  Clearly, Plaintiffs, and especially Plaintiff Beaird, has exhausted all administrative remedies having to do with the problems with Building 9.

Thus, the only Administrative Remedies to which the Defendants allege in their Motion that Plaintiff Beaird has not exhausted is the "Plaintiff's claims specific to Building 9".  Id at DM at pg 12.  Accordingly, the Defendants ask **only** for dismissals of the claims specific to Building 9 with regards to a

51

failure exhaust affirmative defense.

But, as Plaintiffs have shown, supra, the Defendants' **facts** **are** **flawed** **and** **incorrect** and do not support their position, and that the facts show that Plaintiffs, especially Plaintiff Beaird, clearly alerted Defendants (as well as personally alerted Mr. HARLEY G. LAPPIN, individually) to the problems and conditions of Building 9, inter alia.  As such, Defendants Motion to Dismiss for lack of exhaustion Must be **DENIED.**

# P R A Y E R

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS PRAY THAT** upon consideration of Plaintiffs' Reply In Opposition To Defendants' Motion To Dismiss And/Or Summary Judgment Or In The Alternative To Transfer, that this Honorable Court **DENY** Defendants Motion To Transfer, **DENY** Defendants' Motion For Summary Judgment, and **DENY** Defendants' Motion To Dismiss for the good and meritorious reasons as shown, infra, and as a Matter of Law in said respects.

Plaintiffs Further Pray that this Honorable Court **RE-ORDER** SERVICE to be made upon ALBERTO GONZALES, personally, as required pursuant to the FRCP R. 4(e), and as requested in Plaintiffs' concurrent Motion for such submitted here-in, and Further that the Court STRIKE the portions of Defendants' Motion and Memorandum as requested in Plaintiffs' Motion To Strike submitted cuncurrently, and that this Honorable Court also provide Any and All Other Relief to which it may provide.

Respectfully Submitted,

JOHN BEAIRD

ROBERT MIHAILOVICH

## CERTIFICATE OF MAILING

I (we), JOHN BEAIRD and ROBERT MIHAILOVICH, certify and attest under penalty of perjury that this filing was deposited into the institutional mail system, first class postage pre-paid, addressed to the clerk of the court, on this the *13th* Day of *April*_____, 2007, and is, thereby, considered "FILED" On Same Date (see "Inmate Mailbox Rule").

JOHN BEAIRD

ROBERT MIHAILOVICH

## CERTIFICATE OF SERVICE

I (we), JOHN BEAIRD and ROBERT MIHAILVOCH certify that a copy of this filing was attempted to be sent to the parties of this action on this *13th* Day of *April*____, 2007, however, due to the inability of the Plaintiffs to obtain copies Plaintiffs request this court serve said filing on all parties. Plaintiffs have made a good faith attempt, but Defendants' conduct continues to deny access to the courts as needed.

JOHN BEAIRD

ROBERT MIHAILOVICH

## VERIFICATION

I, JOHN BEAIRD and ROBERT MIHAILOVICH hereby attest that this filing was filed in good faith and the facts contained herein are true and correct on this the *13th* Day of *April*____, 2007.

JOHN BEAIRD

ROBERT MIHAILOVICH

CERTIFICATE OF RECEIPT

I, JOHN BEAIRD, and ROBERT MIHAILOVICH, hereby attest under penalty of perjury that the filing to which this filing is responding to was received on this, the _26th_ Day of _March_, 2007.

Date: _April 13_, 2007


JOHN BEAIRD                                    ROBERT MIHAILOVICH

55

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN M. BEAIRD, ROBERT MIHAILOVICH and<br>JOHN M. BEAIRD and ROBERT MIHAILOVICH<br>On Behalf Of<br>ALL SIMILARLY SITUATED INDIVIDUALS.<br>(FILED AS A CLASS ACTION COMPLAINT)<br>           Plaintiffs<br><br>   vs.<br><br>ALBERTO GONZALES (Individually),<br>HARLEY G. LAPPIN (Individually),<br>UNITED STATES OF AMERICA<br>FEDERAL BUREAU OF PRISONS<br>Several Unknown Agents<br>of the Federal Government.<br>           Defendants | § § § § § § § § § § § § § § § § § | No. 06-2268-JDB |

## O R D E R

UPON CONSIDERATION of Defendants' Motion to Dismiss And/or Summary Judgment or in the Alternative to Transfer, and the entire record herein, it is hereby

ORDERED that Defendants' Motion to Dismiss is **DENIED**, and it is

FURTHER ORDERED that Defendants' Motion For Summary Judgment is **DENIED**; and it is

FURTHER ORDERED that Defendants' Motion to Transfer is **DENIED**.

So ordered this _____ day of _____, 2007.

                                        _____
                                        JOHN D. BATES
                                        United States District Judge

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

JOHN M. BEAIRD, ROBERT MIHAILOVICH and      §
JOHN M. BEAIRD and ROBERT MIHAILOVICH       §
On Behalf Of                                §
ALL SIMILARLY SITUATED INDIVIDUALS.         §
(FILED AS A CLASS ACTION COMPLAINT)         §
      Plaintiffs                          §
                                            §
    vs.                                     §      No. 06-2268-JDB
                                            §
ALBERTO GONZALES (Individually),            §
HARLEY G. LAPPIN (Individually),            §
UNITED STATES OF AMERICA                    §
FEDERAL BUREAU OF PRISONS                    §
Several Unknown Agents                      §
of the Federal Government.                  §
      Defendants                          §

---

## PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS

---

    Plaintiffs file, herewith, also as part of Plaintiffs' Reply In Opposition To Defendants' Motion To Dismiss And/or Summary Judgment Or In The Alternative To Transfer, this STATEMENT OF CONTROVERTED FACTS in support of Plaintiffs' argument that the Court should **DENY in full** Defendants' Motion For Summary Judgment on Plaintiffs' claims regarding the "stolen documents". There is a genuine issue regarding these facts raised that are material to one or more elements of Plaintiffs' claims; those facts are:

**FACT 1):** The date the "subject documents" ("the Complaint") in Case No. 06-776 were received by the D.C. Court was **FEBRUARY 27, 2006,** not March 23, 2006. This is listed as item "No. 3" in Defendants' Statement of Material Facts;

**FACT 2)** The Clerk(s) of the D.C. Court **DID** indicate documents **were missing** in Case No. 06-776. This is listed as item "No. 4" in Defendants' Statement of Material Facts".

These genuine issues of material facts in dispute are supported by Plaintiffs' Verified Pleadings (Reply In Opposition...) and JOHN BEAIRD's Affidavit (see Beaird Affidavit #2).

2

Respectfully Submitted,

JOHN BEAIRD                                          ROBERT MIHAILOVICH

## CERTIFICATE OF MAILING

I (we), JOHN BEAIRD and ROBERT MIHAILOVICH, certify and attest under penalty of perjury that this filing was deposited into the institutional mail system, first class postage, pre-paid, addressed to the clerk of the court, on this the _13 th_ Day of _April_ , 2007, and is, thereby, considered "FILED" On Same Date (see "Inmate Mailbox Rule").

JOHN BEAIRD                                          ROBERT MIHAILOVICH

## CERTIFICATE OF SERVICE

I (we), JOHN BEAIRD and ROBERT MIHAILVOCH certify that a copy of this filing was attempted to be sent to the parties of this action on this _13 th_ Day of _April_ , 2007, however, due to the inability of the Plaintiffs to obtain copies Plaintiffs request this court serve said filing on all parties. Plaintiffs have made a good faith attempt, but Defendants' conduct continues to deny access to the courts as needed.

JOHN BEAIRD                                          ROBERT MIHAILOVICH

## VERIFICATION

I, JOHN BEAIRD and ROBERT MIHAILOVICH hereby attest that this filing was filed in good faith and the facts contained herein are true and correct on this the _13 th_ Day of _April_ , 2007.

JOHN BEAIRD                                          ROBERT MIHAILOVICH

**A P P E N D I X    A**

AFFIDAVIT
Affidavit of JOHN BEAIRD # 1


I, JOHN M. BEAIRD, do attest and affirm under penalty of perjury that I am over the age of twenty one (21) years of age, of sound mind, have personal knowledge of all of the following, and knowing the difference between the truth and untruth do so affirm that the following facts are true and correct:

**THAT:**

I, JOHN BEAIRD, do not have currently pending in the United States District Court, Northern District of Texas any litigation as a Plaintiff against any parties, including, but not limited to, the parties whom are also parties in this case, No. 06-2268-JDB.    Neither am I a party to any such litigation as a Plaintiff as of this current time in the U.S. District Court, Northern District of Texas.


AFFIANT SAITH FURTHER NOT.


Date:  April 10, 2007.

JOHN M. BEAIRD

AFFIDAVIT
Affidavit of JOHN BEAIRD # 2

I, JOHN M. BEAIRD, do attest and affirm under penalty of perjury that I am over the age of twenty one (21) years of age, of sound mind, have personal knowledge of all of the following, and knowing the difference between the truth and untruth do so affirm that the following facts are true and correct:

**THAT:**
For the record, BEAIRD, hereby authenticates each and every, and all Exhibits attached in this response to the Defendants' (in this instant case) Motion for Summary Judgment, to Transfer Venue, or Dismiss U.S.D.C., Dist. of Columbia Case No. 06-2268-JDB), **Exhibits 1 thru 26** ; each such Exhibit which purports to be a court-filing, administrative remedy filing, letter transmitted, administrative response, time-stamp affixture, or other communication, documents, or records are copies of the genuine item and are records either created by me, received by me, or processed by me to which my personal knowledge, hereby, attests to the genuineness of in each and every detail and Exhibit as ennumerated, or otherwise, in this Affidavit.

On February 14, 2006, BEAIRD, inter alia, "filed" an Original Pleading (Complaint; or "documents") in the U.S. District Court, District of Columbia ("D.C. Court"), in a Complaint which was filed as a "Class Action" pursuant to FRCP R. 23, and which would later become USDC District of Columbia Case No. 1:06-CV-0076-UNA. Plaintiffs (in the instant case) use the term "filed" because that is when BEAIRD's Complaint was received and Time-Stamped by the D.C. Court. See attached Exhibits 1, 2, 3, & 4. Exhibit 1 represents the cover letter which BEAIRD created and was included in the "filing" of February 14, 2006. The subject and contents are self-explanatory. Exhibit 2 represents the reverse side of this letter by BEAIRD (which was returned to BEAIRD as discussed, infra), which has a "red" Date-Stamp of "Nancy Mayer Whittington, Clerk, U.S. District Court for the District of Columbia" affixed in three places. The D.C. Court placed "X's" over said stamps for reasons discussed below. Exhibit 3 represents the "Summons" BEAIRD had prepared and also included in such February 14, 2006 filing as referenced in the letter of Exhibit 1, ante; such also being returned to BEAIRD as discussed, infra. Exhibit 4 represents the reverse side of Exhibit 3 also with the D.C. Court's Date-Stamped red seal affixed. Numerous other pages of this filing were also date-stamped February 14, 2006 by the D.C. Clerk.

On or about February 22, 2006, BEAIRD received legal mail from the D.C. Court regarding the above "filing" which was an "Order" from the Honorable Thomas F. Hogan, Chief Judge, D.C. Court, (Exhibit 5), which indicated that BEAIRD needed to have enclosed an in forma pauperis motion with the original filing that had been filed, and instructed BEAIRD to do so as well as make some other minor corrections before returning the Complaint to the D.C. Court. Additionally, the Complaint was also enclosed within such correspondence received by BEAIRD.

BEAIRD promptly complied with said Order, completed same, and then shipped via "Legal Mail/Special" the Original Complaint/Pleading ("documents") back to the D.C. Court on **February 23,** 2006 via Certified Mail # 7000-1670-0004-8743-2461. See Exhibit 6 which is the Certified Mail Receipt # 7000-1670-0004-8743-2461 evidencing entry into the USPS system at Seagoville Post Office on same date. **On FEBRUARY 27, 2006, the D.C. Court received these "documents"** - the Original pleadings (Complaint) and Appendixes and associated motions from

BEAIRD AFFIDAVIT #2; pg. 1 of 4

BEAIRD. See Exhibit 7 which is the green Return Receipt USPS Card returned to BEAIRD in Certified Mail # 7000-1670-0004-8743-2461 evidencing **receipt of these "documents" ("filing") by the District of Columbia Clerk's Office on "FEBRUARY 27, 2006"**, such being signed for by "Renee Trammell" of the Court.

Therefore, on **FEBRUARY 27, 2006**, the D.C. **Court now had possession, custody, and control of the Original Pleadings & Complaint ("documents" or "stolen documents") in that Class Action as it had been so "filed" on February 27, 2006.** BEAIRD, via legal call, confirmed with the court clerk receipt of said pleadings and complaint in the first week of March, 2006, and thereby, understood a case number and filing was imminent. In the beginning of the following week BEAIRD again contacted the D.C. Court to obtain the case number and understood that the filing and case number would be forthcoming probably toward the end of that week and BEAIRD should call back to then obtain it.

BEAIRD, via a legal call, contacted the D.C. Court later that week of March, 2006, as instructed, and after speaking with the Clerk's office of the D.C. Court, obtained a "present sense impression" and had a "then existing mental state of mind and impression" based exclusively on that conversation with the D.C. Court Clerk (see Fed. R. Evid. Rule 803) that the "documents" were "missing -- but that they had not been shipped out and showed as being 'logged-in' and were being actively searched for within the courthouse and the clerk's office and that BEAIRD should recontact the Clerk's Office in a few days". See BEAIRD Affidavit #2 for detail account. Later that same week BEAIRD again obtained another legal call and contacted the D.C. Court Clerk's Office and spoke with a clerk and, again, received the same "impression" and "understanding" exclusively from that conversation which was the same as BEAIRD's previous understanding described, supra.

On or about March 13 - 17, BEAIRD again contacted the D.C. Court Clerk's Office and spoke to a couple of clerks, including a Ms. "Maurine [sic] Higgens", and exclusively from these two conversations with the clerks spoken to by BEAIRD, BEAIRD had a "present sense impression" and a "then existing mental state of mind and impression" (see FRE R. 803) from such conversations, that "the documents had not been sent out in any fashion, were supposedly still in the court as nothing showed them being logged out or otherwise released to anyone -- but, the Clerk's Office and clerks had **no idea where the missing documents were** and they had somehow 'walked out of the clerk's office' apparently, although the clerks remembered seeing them originally, and could not explain how the documents **'vanished out of the case-file'** especially in view of the significant size of the pleadings of over 300 pages" Moreover, a party outside the institution (civilian world) also contacted the D.C. Court Clerk's office and spoke a number of times with clerks during these periods and also from such conversations with the clerks transmitted to BEAIRD, and BEAIRD received, an understanding and impression identical to that with which BEAIRD received, as so described, ante.

BEAIRD, on March 20, 2006, suspicious of that many documents "coming up completely missing", then dispatches through outside institution assistance **another Complaint** (set of Pleadings) to the D.C. Court. See Exhibit 8 which is a copy of the March 20, 2006, letter created by BEAIRD and shipped with this new shipment of documents, as a cover letter which was included with the now new filing of documents sent on March 20, 2006. This letter specifically references in **paragraph #3 that "[A]pparently, the previous filing (documents) ... was lost (emphasis added) by your office".** This pleading & complaint were received by the Clerk's Office, D.C. Court, on **March 23, 2006**, and **are the pleadings and complaint to which the Defendants** in the instant case, **mistakenly refer to when** they make the statement in their Motion that "the Court's official 'Received'

stamp indicates that the Court first received the complaint in No. 06-776 on **March 23, 2006"**. Such, in view of the facts, supra, is **a genuine material element which is now in factual dispute** by the Plaintiffs in this instant case.

The Plaintiffs', in the instant case, partial cause of action in Count #7, concerns the previously filed documents (documents "filed" and received by the D.C. Court Clerk's Office on **February 27, 2006**) which were subsequently **"spirited out of the District Courthouse"** by the alleged conduct of the Defendants in the instant case and to which then ended up (admittedly) in their possession, custody, and control at the same time the documents should have been secure and safe within the U.S. District Court, Office of the Clerk's Office secured files -- not the documents "re-filed" on March 23, 2006, to which the Defendants in the instant case point to. Thus, the Defendants have not raised any contention or claim in their Summary Judgment Motion that the documents received by the D.C. Court on **February 27, 2006**, were not obtained, tampered with, or otherwise illegally possessed. As such, the Defendants have not even met their initial burden to demonstrate (or even challenge) that the Plaintiffs in the instant case have not presented on an essential element with regards to the documents (February 27 filed documents) were not interfered with by the Defendants.

Subsequently, on April 5, 2006, BEAIRD filed with the D.C. Court a "Motion to Take Judicial Notice" (in case No. 1:06-CV-00776-UNA) of the above-stated events that had transpired with regards to the "stolen documents" in order to make an official preservation in the official record of the court. See Exhibit 9 (Motion to the Court) filed by BEAIRD. The content of this "Motion" is self-explanatory, and detailed with regards to such stolen documents, and parallels this account, herewith.

On March 22, 2006, at 12:45 P.M., Mr. [Robert] Tony Stafford, BEAIRD's counselor, called BEAIRD to his office and indicated to BEAIRD he was suppose to give "these" papers to BEAIRD. Mr. Stafford handed BEAIRD a stack of "dishoveled", "unwrapped", "unaddressed" and bundle of legal papers held together by a "single rubber band". Upon inspection, BEAIRD realized these were the documents that were "missing" from the D.C. Court, the ones that had been filed by BEAIRD and received by the D.C. Court on February 27, 2006; such documents displaying the red Date-Stamped Seal of the D.C. Court Clerk's Office, as are described, ante. By request by BEAIRD on how he came to possess these "stolen documents" Mr. Stafford provided a written explanation (chain of custody) of these 403 pages of BEAIRD's **legal documents**. See Exhibit 10 evidencing the written response given to BEAIRD. Mr. Stafford indicated he had received these documents from Ms. Richard, the Unit Secretary, the previous day 9the afternoon of Tuesday, March 21, 2006). Ms. Richard, subsequently, provided BEAIRD a written explanation on April 11, 2006, (see Exhibit 11 & 12), indicating she had received them "from the Warden's Office" on March 21, 2006. BEAIRD, inquired and received from Warden DAN JOSLIN's secretary, Ms. LORI VANDERSLICE, (having learned verbally the origin of said documents), whom indicated in a writing responding to BEAIRD's written inquiry, (see Exhibits 13 & 14), which indicated the "stolen documents" had been received "in the Warden's office from the Central Office" of the Bureau of Prisons which is located in Washington, D.C. . BEAIRD followed up this directly with DAN JOSLIN, Warden, in a written request (see Exhibit 15) dated March 29, 2006. DAN JOSLIN responded in writing to BEAIRD's written request on April 4, 2006, (see Exhibit 16), stating that "[t]hese documents were received in batch mail from the Central [Washington, D.C. Headquarters] Office with 'no indication as to who the sender was'." Thus, these stolen pleadings (documents) which <u>should have been inside</u> <u>the U.S. District Court Clerk's Office, District of Columbia</u> between FEBRUARY

BEAIRD AFFIDAVIT #2; pg. 3 of 4

27, 2006, and MARCH 22, 2006 were instead obtained and in the possession of the Defendants due to Defendants' conduct, and then subsequently, sent via "batch mail" by some "unknown sender" within the Central B.O.P. Washington, D.C. Office to the Warden's Office at Seagoville, Texas.

On April 9, 2006, BEAIRD filed a "Request for Administrative Remedy (BP-9)(File Bo. 410313-F1)(see Exhibit 17 & 18) alleging said cumulative conduct known to BEAIRD at that time. The Warden's "Response" to said BP-9 (see Exhibit 19) confirmed the previous information provided by Warden JOSLIN, and specifically stated that **such documents were not Special or Legal Mail**. Thus, it was conclusive that such documents were not, nor did they, enter the U.S. Postal Mail System or any other delivery service as any sort of mail to BEAIRD. BEAIRD followed up on a "Regional Administrative Remedy Appeal (BP-10), (see Exhibit 20 & 21) on May 17, 2006. On July 11, 2006, Mr. G. MALDONADO, Regional Director, now "craftily" attempts to "mis-characterize" BEAIRD's complaint as an "issue of your incoming mail" (see Exhibit 22). All mail is picked up or received by R&D and then sorted for delivery as regular, special, or legal mail. No inmate ever receives mail through the "batch mail" (inter-office) system other than internally generated correspondence -- not these type of "documents"! Further, the Warden had already established through his investigation that this was **not** an "issue [relating to] [BEAIRD's] incoming mail"!

On July 24, 2006, BEAIRD transmits and files a Central Office Administrative Remedy Appeal (BP-11) (see Exhibit 23 & 24). On November 22, 2006, BEAIRD received a response "dated" November 1, 2006, issued by HARREL WATTS, National Administrator for the B.O.P. in Washington, D.C. (see Exhibit 25), which admitted the B.O.P. Central Office in Washington, D.C. **originated** the shipment of the "stolen documents" to the Seagoville Warden's Office, but, "conveniently", stated that "[w]e simply do not know how **this material came to be at the Bureau of Prisons' Central Office**" in Washington, D.C. . Res Ipsa Loquitur.

AFFIANT SAITH FURTHER NOT.

JOHN BEAIRD, March 31, 2007

BEAIRD AFFIDAVIT #2; Pg. 4 of 4

AFFIDAVIT

Affidavit of ROBERT MIHAILOVICH. # 1

I, ROBERT MIHAILOVICH, do attest and affirm under penalty of perjury that I am over the age of twenty one (21) years of age, of sound mind, have personal knowledge of all of the following, and knowing the difference between the truth and untruth do so affirm that the following facts are true and correct:

THAT:

I do not have any other federal litigation pending in any other federal district court regarding the defendants listed in D.C. Dist. of Col Case No. 06-2268-JDB.   I had a Habeas action which was recently closed in a the Texas district.   Hence, there I have no other pending or existing federal litigation pending in regards to either the defendants listed in this case, ante, or the matters regarding this complaint.

AFFIANT SAITH FURTHER NOT.

APRIL 5, 2007

ROBERT MIHAILOVICH

AFFIDAVIT

Affidavit of ROBERT MIHAILOVICH, # 2

I, ROBERT MIHAILOVICH, do attest and affirm under penalty of perjury that I am over the age of twenty one (21) years of age, of sound mind, have personal knowledge of all of the following, and knowing the difference between the truth and untruth do so affirm that the following facts are true and correct:

THAT:

For the record, MIHAILOVICH, hereby authenticates each and every, and all Exhibits attached in this response to the Defendants' (in this instant case) Motion for Summary Judgment, to Transfer Venue, or Dismiss U.S.D.C., Dist. of Columbia Case No. 06-2268-JDB), **Exhibits M1 thru M16** ; each such Exhibit which purports to be a court-filing, administrative remedy filing, letter transmitted, administrative response, time-stamp affixture, or other communication, documents, or records are copies of the genuine item and are records either created by me, received by me, or processed by me to which my personal knowledge, hereby, attests to the genuineness of in each and every detail and Exhibit as ennumerated or otherwise, in this Affidavit.

As MIHAILOVICH incorporates by referenced, herein, as a part of this Affidavit, the stated facts and references there-to contained in IV.(A) and IV.(B) contained within PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION ..." (this Affidavit herewith attached there-to) as being actual facts, and when referenced or described as an occurrence, event, or otherwise within such, such are hereby attested to by reference, herewith, as being sworn facts to which I have personal knowledge to same.

AFFIANT SAITH FURTHER NOT.

APRIL 5, 2007

ROBERT MIHAILOVICH

**A P P E N D I X    B**

E X H I B I T    1

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
Clerk of the Court
333 Constitution Ave. N.W.
Washington, D.C.  20001

RE:  Enclosed Petition and Motions for Immediate filing

Dear Sir,

      Please find enclosed herein **(1) Original** of the Plaintiffs'
Pleadings in this action along with **(3) Copies** of same for
immediate filing. Additionally please find enclosed **(1) Original**
**"Motion for Temporary Restraining Order"** plus (3) copies of same,
**(1) Original "Motion to Appoint Interim Counsel"** plus (3) copies
of same, and **(1) Original "Motion to Certify As Class Action"** plus
(3) copies of same for immediate filing. Additionally, please
find enclosed **(1) Original Summons** and (2) Copies of same.

      As is your procedure, please return the **Summons** and **Pleadings**
as stamped and authorized, in order that I may effect service of
process of such Summons and Pleadings upon the Defendants outside
the jurisdictional D.C. district via Certified Mail, and upon the
United States and the Federal Bureau of Prisons.

      Enclosed, please also find the appropriate filing fee for
this Cause of Action for JOHN BEAIRD, the filing party, in
a money order for the appropriate amount.  Additionally, please
find enclosed the Fee for Service in the amount of $250.00
which represents the cost of personal service to be effected upon
two of the individual named defendants **ALBERTO GONZALES**, Attorney
General of the UNITED STATES, and **HARLEY G. LAPPIN**, Director of
the Federal Bureau of Prisons, both of whom are within the
jurisdictional district limits of this District Court and which
personal service upon each is requested of the Plaintiffs' Pleadings
and Motions.

      Additionally, seperately enclosed, is a **complimentary copy**
**package for the Honorable Judge** to whom this is assigned, such
that the **Ex Parte Motion for Temporary Restraining Order** may be
acted upon upon the docketting of this cause of action.  This
package includes the Pleadings, the Motion for Temporary Restraining
Order, the Motion to Appoint Interim Counsel, and the Motion to
Certify as a Class Action.  **Please deliver this to the Honorable**
**Judge upon filing of this action by your office.**.

      Please return to me at the address below the time-stamped copies
evidencing filings of each, as well as the Summons and Plaintiffs'
Action, as necessary in order than service may be effected upon the
other named defendants than as indicated above.  Thank you very much.

E X H I B I T     2

RECEIVED

FEB 1 4 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RECEIVED

FEB 1 4 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

OK

RECEIVED

FEB 1 4 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

E X H I B I T     3

# United States District Court

————————————— DISTRICT OF —————————————

### WASHINGTON D.C.

JOHN BEAIRD, RONALD KELLY,
JESUS GARZA, ET.AL. and
All Similarly Situated Individuals

## SUMMONS IN A CIVIL ACTION

V.

CASE NUMBER:

HARLEY G. LAPPIN, Director of the Federal Bureau
of Prisons (Official and Individual Capacities),
ALBERTO GONZALES, Attorney General of the UNITED STATES
(Official and Individual Capacities), the UNITED STATES,
the FEDERAL BUREAU OF PRISONS, DAN JOSLIN, Warden
(Official and Individual Capacities), ET. AL.

TO: (Name and Address of Defendant)

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

JOHN BEAIRD,   Pro Se (Pro Se filing party)
14355-179
FCI SEAGOVILLE  POB 9000
SEAGOVILLE, TX  75159-9000

an answer to the complaint which is herewith served upon you, within __SIXTY (60)__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

CLERK

DATE

E X H I B I T     4

RECEIVED

FEB 1 4 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

E X H I B I T     5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

John M. Beard
_____
Plaintiff

v.

Harley G. Lappin, et al.,
_____
Defendant

**ORDER**

The papers in the above captioned matter are hereby returned to you for failure to comply with the Federal Rules of Civil Procedure, the Local Rules of this Court and/or the requirements of the Prison Litigation Reform Act of 1995. The papers are deficient in the following areas:

[ ]   Your complaint **must** set forth the facts of your case and indicate what kind of relief you seek from the Court. The name of this Court **must** be written at the top of the first page. The word COMPLAINT **must** appear under the caption. All parties to the suit must be named in the caption. The use of et al. is **not** permitted as the rules require you to name each defendant as well as an address to effect service.

[ ]   Your COMPLAINT **must** be typed or legibly handwritten. If you are requesting a jury trial, the demand **must** be stated in your complaint.

[ ]   Your COMPLAINT **must** bear your original signature.

[X]   Application to proceed in forma pauperis **must** be completed and originally signed. (Enclosed)

[ ]   You **must** file a Motion for Leave to File because: _____

_____

[X]   OTHER: All plaintiffs must originally sign each pleading. Last plaintiff signed (G. Urueg) not listed in caption as a party. need to add. Each plaintiff who wants to be a party must complete an Informa Pauperis Application and originally sign, plus submit 6 months statement for each plaintiff. We do not want any copies of complaint sent - Just original plus originally sign applications. No summons at this time

For the foregoing reasons, these papers are being returned unfiled. You may resubmit these papers to the Court, upon correction of the deficiency(ies) checked above. **DO NO SEND PAPERS DIRECTLY TO ANY CHAMBERS.**

2/15/06
_____
Date

**HOGAN, C.J. TFH**

_____
Chief Judge Thomas F. Hogan

Please do not send extra copies

n:\Forms\Pro Se Return Doc. Letter

E X H I B I T     6



E  X  H  I  B  I  T      7

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent ☑ Addressee<br>B. Received by ( *Printed Name* )    C. Date of Delivery |
| 1. Article Addressed to:<br><br>**UNITED STATES DISTRICT COURT**<br>**ROOM 1225**<br>**333 Constitution Ave. N.W.,**<br>**Washington, D.C.   20001** | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:      ☐ No |
| | 3. Service Type<br>☑ Certified Mail   ☐ Express Mail<br>☐ Registered      ☑ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*       ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*)   **7000-1670-0004-8743-2461** | |

PS Form 3811, February 2004          Domestic Return Receipt                    102595-02-M-1540

E X H I B I T     8

March 20, 2006                        **VIA FEDERAL EXPRESS DELIVERY**

Honorable Nancy Mayer Whittington, Clerk
UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
333 Constitution Avenue  N.W.
Washington, D.C.  20001


RE:      **ENCLOSED FILING**
         **1.**  Plaintiffs Original Pleadings
         **2.**  Motion for Temporary Restraining Order
         **3.**  Motion for Appointment of Interim Counsel
         **4.**  Motion to Certify Action as Class Action
         **5.**  Informa Paurperis Applications/Applications/Affidavits
                 from Each Plaintiff
         **6.**  Consent to Collection of Fees From Trust Account
                 From Each Plaintiff
         **7.**  Trust Fund Information from each Plaintiff
                 (some pending due to computers being down)

Dear Honorable Nancy Mayer Wiittington, Clerk;


       Please find the above indicated materials **TO BE FILED
IMMEDIATELY**.  Please file such immediately and remit back to
me in the pre-addressed, pre-stamped envelope, the copy of the
front-page of the Pleading which is additionally enclosed for
such purpose such that it be **Time-Stamped** and the **Case Number
Indicated upon such.**

       This filing is **complete**.  The Filing Fee for JOHN M. BEAIRD
is being sent to you once the **case number** has been issued in
order that such fee may be properly applied.  This is being sent
under seperate cover and the sending party will call on or about
Thursday March 23 or Friday March 24 to obtain such case number
to properly affix to said payment, the additional respective
documents as indicate above are also herewith enclosed.  Because
the computers have been down, and may not be working for a number
of days, some of the Trust Fund Account Information sheets will
be supplemented to you when these become available.

       **THIS FILING SUPERCEDES ANY OTHER RECEIVED FILING.**  Apparently,
the previous filing (Pleading) and (Informa-Pauperis complete
information including deposit-information) was **lost** by your Office
and the **FILING FEE** which was previously remitted and received by
you for Mr. JOHN M. BEAIRD, was also erroneously returned.  This,
as indicated, ante, is being re-routed back to you.

       Please insure that **these filings are properly FILED WHEN
RECEIVED** and the self-addressed envelope enclosed along with
the copy of a **time-stamped filed front page** of the Pleading (enclosed)
is returned.  Thank you for your personal attention to this matter.

Sincerely,

JOHN M. BEAIRD
14355179  FCI Seagoville  POB 9000
Seagoville, TX  75159-9000

E X H I B I T     9

April 5, 2006

CERTIFIED MAIL No. 7200-1670-0004-8741-8311
RETURN RECEIPT REQUESTED

United States District Court
District of Columbia
333 Constitution Ave. N.W.
Washington, D.C. 20001

RE:    PLEASE FILE IMMEDIATELY THIS EMERGENCY MOTION
       This case: JOHN M. BEAIRD, et. al vs. HARLEY G. LAPPIN, et. al
       We have not been notified as to the case number.

Dear Honorable Nancy Mayer Whittington;

Please immediately file the enclosed Emergency Motion as entitled and provide the judge whom has been assigned the case with an immediate copy.

We have not been notified as to the case number which has been assigned to the Cause of Action that you now have pending, therefore, please inform me of the number and provide a time-stamped copy of the front page of the Original Pleadings which have already been previously filed (received by your court), a self addressed, pre-stamped envelope was attached to such.

As this new matter is of very significant importance, please insure that it is processed without any additional undue delay to the Plaintiffs. Thank you very much.

Sincerely,

JOHN M. BEAIRD
14755-179
FCI Seagoville
POB 9000
Seagoville, TX 75159-9000

cc: Katie Leishman
    Hon. Thomas F. Hogan, Chief Judge

---

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JOHN M. BEAIRD, et. al.

    Plaintiffs

vs.                                             No. §
                                                    §
HARLEY G. LAPPIN, et. al.                           §
                                                    §
    Defendants                    §

EMERGENCY
MOTION TO TAKE JUDICIAL NOTICE;
INCORPORATED MOTIONS FOR EXPEDITED PROCESSING
AND GRANTING OF PLAINTIFFS' PENDING MOTIONS
AND MOTION FOR IMPOSITION OF SANCTIONS FOR CAUSE

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs in the above-styled cause of action, which was filed in this District Court on March 10, 2006, but is awaiting approval of "In Forma Pauperis" status and assignation of a docket number.

The Plaintiffs for good and meritorious reasons as detailed herein, move this Honorable Court to grant this motion, and incorporated requests for relief, as submitted, and without delay, for the reasons detailed herein. Plaintiffs request the Court take note of the following:

I. FACTS

On February 14, 2006, the United States District Court for the District of Columbia received the filing of the Plaintiffs' original pleadings, consisting of 245 pages of pleadings, incorporating numerous affidavits, in the case styled: JOHN M. BEAIRD, et al vs. HARLEY G. LAPPIN, et al. The case sought class action status alleging multiple constitutional violations and prisoner abuses. Additionally, attached to the pleadings were a

"Motion for Class Certification," "Motion for Appointment of Interim Counsel," and a "Motion for Temporary Restraining Order."

On February 15, 2006, the District Court, Hon. Thomas F. Hogan, Chief Judge, entered an order for the Plaintiffs to complete in forma pauperis applications for each named Plaintiff, and to ensure that each Plaintiff that had signed the pleadings was included in the caption of the case. The District Court returned the pleadings directly to Mr. Beaird, to complete these steps.

On February 22, 2006, Mr. Beaird was called to the "mail room" of FCI Seagoville, where he is currently incarcerated, for the purpose of receiving "legal mail." At approximately 11:30 a.m., the pleadings were returned to him, and per policy, they were opened in Mr. Beaird's presence, to inspect for physical contraband.

On the evening of February 22, 2006, Mr. Beaird placed the now-completed in forma pauperis applications and the corrected case caption, per the instructions of the Court, into a manilla envelope, marked, "legal mail," and then into the outgoing mailbox at FCI Seagoville, prepaid first class and certified.

On February 27, 2006, the U.S. District Court for the District of Columbia received the Certified mail package (No. 7000-1670-0004-8743-2461). It was signed for by Ms. Renee Trammell (See Appendix A). Plaintiffs' outside contact phoned the Court and spoke with Ms. Trammell, verifying the receipt of the corrected pleadings.

On March 13, 2006, Plaintiffs' outside contact once again phoned the Court to inquire on the status of the case and to see if it had been assigned a docket number. The contact was then informed that the pleadings had been "misplaced" and that they were actively

2

looking for them. The Clerk further informed the contact person that it was only a matter of time before she found them. The contact then called several more times over the course of the next several days. Up until March 20, 2006, the Clerk continued to assure the contact that the pleadings were "somewhere in the courthouse" and were sure to be found in a timely manner. When the contact expressed frustration at the Court's "losing" the lawsuit, when it had been signed for, the Clerk assured them that everything possible was being done to locate the paperwork, and that although she had personally seen the documents, knew the person who had originally signed for them, and had spoken with that person, there was no "logged entry" showing receipt of the pleadings.

On Wednesday, March 22, 2006, at approximately 12:45 p.m., Mr. Beaird was called into his Counselor's office at FCI Seagoville. His Counselor, Mr. Tony Stafford handed Mr. Beaird a large stack of paperwork. This paperwork was unwrapped, disheveled, without any envelope, and was held together by a single rubber band. Mr. Stafford informed Mr. Beaird that he had been given this paperwork and instructed to return it to Mr. Beaird. When Mr. Beaird inspected the paperwork more closely, he realized that these were the original pleadings that were supposedly "misplaced" and still being "searched for" in the D.C. District Court. The papers bore the seal of the U.S. District Clerk, Nancy Mayer Whittington. Mr. Beaird, now dumbfounded, asked Mr. Stafford for an explanation for the documents, in light of the fact that these documents had been reported "lost" in the District of Columbia Courthouse, and the fact that Federal statute clearly dictates that such legal documents may

3

not be opened except for contraband inspection, in the presence of the recipient. Further, the Defendants to the lawsuit had now had possession of the pleadings prior to a case number being assigned or the lawsuit being officially "served."

Mr. Stafford provided Mr. Beaird an explanation in writing, detailing how he came into possession of the legal documents (See Appendix B). He explained that he had received them from the Unit Secretary, Ms. Richard. Mr. Beaird proceeded to Ms. Richard's office to inquire about her source of the documents. She informed Mr. Beaird that she had received them from Ms. Vanderslice, the Warden's secretary who had given them to Ms. Richard with instructions to "deliver them to Mr. Beaird." This is not the procedure for delivery of legal mail documents to an inmate.

Upon detailed inspection of the returned documents, Mr. Beaird discovered that significant portions of the pleadings were now missing. Approximately 110 pages, incorporated in the original pleadings as affidavits, were now missing. Mr. Beaird, of course, had wisely retained his own copies of the all the affidavits. More alarming, however, was the insertion of new documents by the Defendants. These documents were not part of the original pleadings, and bore physical evidence, in the form of date stamps, indicating, "Received Mar 16 2006, Administrative Remedy Section." As detailed, supra, Plaintiffs were not in possession of the documents on March 16, 2006. This was during the time that the D.C. District Court was still "searching for the missing pleadings." The "Administrative Remedy Division" is located in the Central Office of the Bureau of Prisons in Washington, D.C. Somehow, during the time

---

period that the D.C. District Court was searching for the pleadings, they came into the possession of the Central Office of the Bureau of Prisons (the principal named Defendant), and from there, were modified. Subsequently, they were went to FCI Seagoville, where they eventually reached Mr. Beaird on March 22, 2006, as detailed, supra. Ms. Vanderslice has acknowledged receipt of the documents from the Central Office, in writing (See Exhibit C).

II. DEFENDANTS' CONDUCT HAS AFFECTED THE INTEGRITY AND SECURITY OF THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

The integrity, not to mention the internal security, of the United States District Court, District of Columbia, has been called into question and directly affected by the actions of the Defendants in this case. Legal documents that represent confidential, as yet non-public, original pleadings and motions, were unlawfully possessed and read by the Defendants in advance of the case having been docketed by the District Court and in advance of any named Defendant being "served." Further, these documents were then unlawfully altered by the Defendants, and portions removed. The instant cause of action includes U.S. Government officials, and the integrity of the District Court is compromised when the same Defendants being sued for their continued constitutional violations then interfere with judicial process by obtaining "advance copies" of the proceedings, then altering them. The "advance notice" to the Defendants by the District Court itself, represents misconduct of the most severe nature. The unlawful conduct has harmed the Plaintiffs and is criminal in nature.

The fact that the United States Attorney General, Alberto

Gonzales and the Director of the Bureau of Prisons, Harley Lappin, are named Defendants, having direct liability in this lawsuit, only serves to enhance their unlawful interference in these judicial proceedings. Plaintiffs respectfully request that this Honorable Court order a full investigation of this matter, due to its seriousness, and impose sanctions on all parties involved in the misconduct.

III. DEFENDANTS' CONTINUED CONDUCT CREATES HARM MEANT TO BE PROTECTED BY THE TEMPORARY RESTRAINING ORDER

The Plaintiffs, along with the filing of the lawsuit, also filed a "Motion for Temporary Restraining Order" in order to protect the status quo and prevent additional Constitutional violations and retaliatory conduct. Since the Defendants unlawfully obtained these filings, including the "Motion for TRO," as previously discussed, they had confidential knowledge of the contents of the pleadings and the TRO. The protections requested by the Plaintiffs in the TRO are now known by the Defendants, and the Defendants have now acted to cause the harm that the TRO was meant to enjoin.

One of the areas in which the Plaintiffs requested protection, was unrestricted access to the courts. In light of the contents of the litigation, Plaintiffs feared that the Defendants would conspire to restrict true, meaningful and timely access to the courts. On March 21, 2006, the day before the pleadings were returned to Mr. Beaird, Defendant Dan Joslin, Warden of FCI Seagoville, instituted a new "local" legal mail policy (See Exhibit D). This policy is in direct violation of Bureau policy, statute, case law and the Constitution. It is in direct retaliation to the instant case, and

---

1 See 18 U.S.C. § 2071; Removal, Concealment, or mutilation of records deposited with a U.S. District Court Clerk; See also 18 U.S.C. § 371; Conspiracy; and see 18 U.S.C. §§ 241 and 242, Conspiracy against civil rights.

is designed to hinder the mailing of any legal material, specifically any material over 16 ounces. Due to the nature and length of the instant cause of action, EVERY mailing exceeds 16 ounces. Previously, all "legal mail" was treated the same, and was deposited in a specially marked receptacle for such correspondence. The new "local" policy requires the inmate to request permission from his Counselor to mail a "package," which is how the local policy now categorizes any legal correspondence weighing 16 ounces or more. He must then obtain a form, fill it out, return it to the Counselor and wait for the Counselor to schedule a time when he can personally accompany the inmate to the mail room to sign the form and approve the mailing. This process is currently used only for hobby craft items, mailing home of large boxes containing an inmate's personal property, and for sending radios and headphones to the manufacturer for repair. This process is burdensome and often takes 2-3 weeks to complete. As the Plaintiffs have already alleged in great detail in the instant case, simply LOCATING a Counselor during the day in order to obtain an Administrative Remedy form in a reasonable time period is a challenge. This new legal mail policy serves to hinder and delay the Plaintiffs from mailing any documents to the courts for perhaps weeks at a time.

Further, this "local" policy is in direct conflict with National Bureau of Prisons policy, regarding the handling of legal mail, without any reference to weight limits. Also, because this "local" policy is a direct challenge to existing codified policy (28 CFR, Sec 310), and was not published in the Federal Register as required, it is unlawful. Finally, this arbitrary action by the Defendants in

response to Plaintiffs' filing is plainly unreasonable because it singles out "legal mail," without placing any restriction on regular mail or incoming mail. In other words, an inmate could mail an envelope containing "non-legal" materials in excess of 16 ounces, without any paperwork whatsoever, however, the minute he writes, "legal mail" on the front, he engages the above-mentioned illegal policy.

By implementing this new "legal mail" policy in advance of a TRO being issued, based on their foreknowledge of the protections sought by Plaintiffs in the TRO, the Defendants can now claim that the policy was in effect PRIOR to the issuance of a TRO, thereby negating any protections sought by Plaintiffs.

IV. DESTRUCTION OF DOCUMENTS

It is known by several of the Plaintiffs that the Medical Services Department and the Administrative Offices, both located in "Building 9" at FCI Seagoville, did, on March 23, 2006 and March 24, 2006, accomplish the shredding of a significant amount of documents. Because Defendants have unlawfully obtained, and have knowledge of, the contents of the TRO, and may without penalty destroy potential evidence in the instant case, Defendants have effectively circumvented the protections sought by the TRO and may have caused irreparable harm.

V. CONSTITUTIONAL VIOLATIONS

The complete circumvention of the procedure, fairness and Due Process protections afforded by the Constitution, impugns the integrity of the District Court. Further, it creates an uneven playing field, since the Defendants had complete knowledge of all

filings in advance. As discussed, ante, Plaintiffs have already experienced retaliatory action and may have suffered irreparable harm to their case by the destruction, concealment or transfer of material evidence subject to discovery. The protections sought by the TRO are now essentially meaningless. The documents, having been unlawfully spirited out of the Court, presents a serious due process violation and damages the integrity and fairness of the procedings. It has the appearance of an attempt to obstruct the prosecution of this meritorious, well-pled and substantially documented cause of action.

CONCLUSION

Wherefore, premises considered, Plaintiffs respectfully ask this Honorable Court for the following emergency relief:

1. The pleadings be filed immediately and docketed and a case number issued;

2. An investigation be ordered by the Court into the unlawful possession and alteration of legal documents by Defendants, as discussed herein;

3. The Motion for Temporary Restraining Order by immediately granted as submitted;

4. The Court issue an Order of Injunction against the implementation of the new "legal mail" policy, as discussed herein;

5. The Motion for Appointment of Interim Counsel be immediately GRANTED;

6. The Motion for Class Certification be immediately GRANTED;

7. The Court issue an order requiring the Defendants to provide

# EXHIBIT A

Plaintiffs with a list of every person or entity who has: viewed, may have viewed, has knowledge, obtained copies, made copies, mailed, scanned, faxed, or handled Plaintiffs legal documents prior to the filing date, including the dates when such actions occurred, and further provide affidavits to this effect within ten (10) calendar days;

8. The Court impose sanctions against the Defendants for the conduct detailed herein, of sufficient weight to deter future illegal interference with this suit.

9. The Court issue an injunction preventing the shredding of any documents potentially related to the pending litigation, which Plaintiffs may request through discovery;

10. The Court grant any and all other relief which this Honorable Court may provide Plaintiffs.

Respectfully Submitted,

JOHN M. BEAIRD
14355-179
FCI Seagoville   POB 9000
Seagoville, TX   75159-9000

VERIFICATION

I, JOHN BEAIRD, verify, certify, and affirm that the foregoing facts are true and correct.

DATE: April 5, 2006

JOHN M. BEAIRD

CERTIFICATE OF MAILING
Pursuant to the "inmate-mailbox rule", see Houston v. Lack, (citations omitted), this document is considered filed with the clerk of the court on this date of mailing, April 5, 2006. I, JOHN BEAIRD, certify and affirm under penalty of perjury that this document was deposited in the institutional mail system on this the 5th day of April, 2006, addressed to the clerk of the court.

JOHN M. BEAIRD

10

# EXHIBIT B



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

UNITED STATES DISTRICT COURT
ROOM 1225
333 Constitution Ave. N.W.,
Washington, D.C.  20001

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)  7000-1670-0004-8743-2461

PS Form 3811, February 2004    Domestic Return Receipt

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

| | | |
|---|---|---|
| Postage | $.735 | |
| Certified Fee | 2.40 | Postmark Here |
| Return Receipt Fee (Endorsement Required) | 1.85 | FEB 8 2006 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $11.80 | |

Sent To  U.S. District Court

PS Form 3800

# EXHIBIT C

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98 PLEASE REPLY IMMEDIATLY
U.S. DEPARTMENT OF JUSTICE                FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) | DATE: |
| MR. TONY STAFFORD, COUNSLIR | 23 March, 2006 |
| FROM: JOHN BEAIRD | REGISTER NO.: 14535179 |
| WORK ASSIGNMENT: YD | UNIT: D - 54 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.) HAND DELIVERED ON THIS THE _2nd_ DAY OF MARCH, 2006

On March 22, 2006, at approximately 12:45 P.M., I was handed by you in your office a
stack of legal papers consisting of 403 pages, unaddressed, unmarked, unwrapped,
un-addressed, and "disshoveled". ⚡ These legal papers represented legal documents of
mine, and further represent one of the sets of the Original Plaintiff Pleadings in
JOHN M. BEAIRD, et. al. vs. HARLEY G. LAPPIN, et. al. ¹, that bore the seals of the U.S.
District Court of Washington, D.C. (2-14-2006).

I would like to know 1) who gave you these documents; 2) on what date were such legal
documents given to you; 3) who else have you shared these documents with; 4) who else do
you know, or are aware of, has reviewed or seen these documents; 5) on what dates if any
apply to the answer ### #4 above; ? Thank you for your assistance.
1 (You may be called as a witness in this matter and case).
(Do not write below this line)

DISPOSITION: On the afternoon of Tuesday, March 21, 2006, I was handed a pack of papers
by Ms. Richard, Unit Secretary. She advised me she had picked up the papers from the Unit-
mailbox in Building 1. She did not tell me exactly when she picked them up. She asked me
to deliver them to the inmate in question (you). As it was the end of the day, I forwarded
the papers to you on Wednesday, March 22, 2006, at approximately 12:45 PM. I worked from
11:30 AM until 8:00 PM that day.

| Signature Staff Member | Date 3/27/06 |

Record Copy - File; Copy - Inmate          This form replaces BP-148.070 dated Oct 86
(This form may be replicated via WP)        and BP-S148.070 APR 94



BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

PLEASE RESPOND IMMEDIATLY

| TO:(Name and Title of Staff Member) | DATE: |
| MS. LORIE VANDERSLICE | 22 March, 2006 |
| FROM: | REGISTER NO.: |
| JOHN BEAIRD | 14355179 |
| WORK ASSIGNMENT: | UNIT: |
| YD | D - 54 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.) Delivered via _Gidom by Mr. Greffel_ on _22 March, 2006._

On March 22, 2006, at approximately 12:45P.M., I was handed a stack of legal papers
consisting of 403 pages, unaddressed, unmarked, unwrapped, and "dishoveled". These papers
representing my legal documents, and further represent ENOUGHXX one of the sets of Original
Plaintiff Pleadings in XXXX  JOHN M. BEAIRD, et. al. vs. HARLEY G. LAPPIN, et. al. that
bore the seals of the U.S. District Court of Washington, D.C. (2-14-2006).

I would was informed that you had possession of these papers. I would XXXXXXX
like to know 1) how you came to possess these papers, 2) who gave you these papers; 3)
who have you shared these documents with; 4) who did you give these documents to; 5) when
did you come into possession of these documents; and 6) when did you share these documents.
with anyone else or give them to someone else or arrange delivery to me of these documents.
Thank XXXX you for your assistance. (You may be called as a witness in this matter and case).
(Do not write below this line)

_____
Signature Staff Member                 Date

DISPOSITION:

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)          This form replaces BP-148.070 dated Oct 86
                                              and BP-S148.070 APR 94

---

BEAIRD, John
Register No.: 14355-179

Inmate Request to Staff Member

This is in response to your Inmate Request to Staff Member received March 24, 2006. You request
information regarding the legal papers (consisting of 403 pages) received in the Warden's Office on
March 21.

Your documents were received in the Warden's Office at this facility from the Central Office on
March 21, 2006, at approximately 12:00 noon. Your items were placed in the Unit Team's mailbox
for delivery to you.

_signature_

Lorie Vanderslice, Secretary

3/24/06
Date

April 29, 2006

Honorable Nancy Mayer Whittington, Clerk
United States District Court
District of Columbia
333 Constitution Avenue  N.W.
Washington, D.C.  20001

RE:  <u>JOHN M. BEAIRD, et. al. vs.  HARLEY G. LAPPIN, et. al.</u>

Dear Hon. Nancy Mayer Whittington,

    I am writing to inquire on the status of the above-styled
case which was delivered to your court on **February 27, 2006**, for
filing, and which was lost or stolen from inside your courthouse
and subsequently found in the possession of the Defendants in this
case -- very serious and highly unusual, not to mention a
violation of my rights as Plaintiff in this action.  Subsequently, a
replacement copy was provided to you which you received in your
court on or about March 21, 2006.  There seems to be "foot-dragging"
and other "associated" events, as discussed supra, in getting this
well-pled and meritorious case docketted and officially filed in
your court.  'I'

    I further provided to you, subsequent to the illegal and
highly unethical events as are discussed supra, a Motion for
Sanctions against Defendants (U.S. Government & U.S. Government
Officers, inter alia) incorporated along with Notice to Take Judicial
Notice for the Court of the events and actions by the Defendants.
This was sent and received by your officer on April 10, 2006.

    To date, none of these items submitted by Plaintiffs, either the
the Original Pleadings and associated Motions, nor the subsequent
Notice and Motion, as referenced above, have had even the courtesy of
a reply from your office -- this being so even when I submitted
to you a self addressed envelope for such reply by your office.

    I am requesting that immediate action be taken on all submissions
which have been made and that the case be properly docketted and that
you provide me proper and prompt correspondence evidencing such.
Over **TWO MONTHS HAS ELAPSED** from when this case was originally received
by your office for docketting; and almost a Month and a half has
elapsed since the replacement copy was received for immediate docketting
and disposition, on matters which represent **serious Constitutional issues**.
I hope that this matter will be properly handled according to law and
ethical concerns from this point further.  Thank you for your assistance.

                    Sincerely,

                    JOHN M. BEAIRD
                    14355179  FCI Seagoville POB 9000
                    Seagoville, TX  75159-9000

CC:  Hon. Congresswoman Sheila Jackson Lee
     2435 Rayburn House Office Building
     washington, D.C.  20515

E X H I B I T     10

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98                                          **PLEASE REPLY IMMEDIATLY**
**U.S. DEPARTMENT OF JUSTICE**                           **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) **MR. TONY STAFFORD, COUNSELOR** | DATE: **23 March, 2006** |
|---|---|
| FROM: JOHN BEAIRD | REGISTER NO.: 14355179 |
| WORK ASSIGNMENT: YD | UNIT: D - 54 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.) HAND DELIVERED ON THIS THE *23rd* DAY OF MARCH, 2006

    On March 22, 2006, at approximately 12:45 P.M., I was handed by you in your office a stack of legal papers consisting of 403 pages, unaddressed, unmarked, unwrapped, un-addressed, and "disshoveled". ☓ These legal papers represented legal documents of mine, and further represent one of the sets of the Original Plaintiff Pleadings in JOHN M. BEAIRD, et. al. vs. HARLEY G. LAPPIN, et. al.[1], that bore the seals of the U.S. District Court of washington, D.C. (2-14-2006).

    I would like to know 1) who gave you these documents; 2) on what date were such legal documents given to you; 3) who else have you shared these documents with; 4) who else do you know, or are aware of, has reviewed or seen these documents; 5) on what dates if any apply to the answer ### #4 above; ? Thank you for your assistance.

[1] (You may be called as a witness in this matter and case).

(Do not write below this line)

DISPOSITION: On the afternoon of Tuesday, March 21, 2006, I was handed a pack of papers by Ms. Richard, Unit Secretary. She advised me she had picked up the papers from the Unit mailbox in Building 1. She did not tell me exactly when she picked them up. She asked me to deliver them to the inmate in question (you). As it was the end of the day, I forwarded the papers to you on Wednesday, March 22, 2006, at approximately 12:45 PM. I worked from 11:30 AM until 8:00 PM that day.

| Signature Staff Member | Date 3/23/06 |
|---|---|

Record Copy - File Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

E  X  H  I  B  I  T      11

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| MS. RICHARD | MARCH 22, 2006 |
| FROM: | REGISTER NO.: |
| JOHN BEAIRD | 14355-179 |
| WORK ASSIGNMENT: | UNIT: |
| YD | D 54 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)    IMMEDIATE REPLY REQUESTED   **HAND DELIVERED ON** _3/23_ , **2006.**

On March 22, 2006, at approximately 12:50 P.M., I contacted you in person and asked you
who gave you some legal documents of JOHN BEAIRD.  These dcouments consisted of a stack of
pages, **was** unwrapped, unaddressed, legal filing.  These documents were one of the sets of Pleading
filed by Plaintiffs in JOHN M. BEAIRD, et. al. vs. HARLEY G. LAPPIN, et. al. .  These pleadings
have been reported as being missing[1] from the U.S. District Courthouse, District of Columbia.
The district court has been looking for these for over 3 weeks, had not sent them out, and **was**
could not explain how they could be missing from the United States District Courthouse.  YOU
WILL BE CALLED AS A WITNESS IN THIS MATTER.  I want to know 1) Who gave you this specific
paperwork & how you came into possession of such; 2) on what date; and 3) who did you give these
to, and on what date you did so; and 4) who else have you shared these documents with which are
the legal ~~paper~~ property  of JOHN BEAIRD?  Thank you.

[1]These Pleadings bear the U.S. District Court TIME-STAMP (Feb 14, 2006); *(403 pages)*

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)



This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94


Printed on Recycled Paper

E X H I B I T    12

BEAIRD, John
Register No.: 14355-179


Response to Inmate Request to Staff Member


This is in response to your Inmate to Staff Member dated March 23, 2006, regarding personal legal documents I received from the Warden's Office. You request answers to the following questions:

1) Who gave you this specific paperwork and how you came into possession of such;

I received the legal document from the Unit Mail box in the Warden's Office.

2) On what date;

Can not remember the exact date but when I received them, I gave them to Mr. Stafford that same day. What ever day you received them, I received them the day before.

3) Who else have you shared these documents with which are the legal property of John Beaird;
No one but Mr. Stafford, your Counselor.


_Pamela Richard_

Pamela Richard, Unit D Secretary

_04-11-06_

Date


*Received by John Beaird in institutional mail on 4/20/2006 at 8:30PM (Herb)*

E X H I B I T    13

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98                    PLEASE RESPOND IMMEDIATELY
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) **MS. LORIE VANDERSLICE** | DATE: **22 March, 2006** |
|---|---|
| FROM: JOHN BEAIRD | REGISTER NO.: 14355179 |
| WORK ASSIGNMENT: YD | UNIT: D - 54 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.) Delivered via _Delivery by Mr. Stafford_ on _23rd_ March, 2006.

On March 22, 2006, at approximately 12:45P.M., I was handed a stack of legal papers consisting of 403 pages, unaddressed, unmarked, unwrapped, and "disshoveled". These papers representing my legal documents, and further represent ~~XXXXXXXX~~ one of the sets of Original Plaintiff Pleadings in ~~XXXX~~ JOHN M. BEAIRD, et. al. vs. HARLEY G. ~~AA~~PPIN, et. al.[1] that bore the seals of the U.S. District Court of Washington, D.C. (2-14-2006).

I ~~would~~ was informed that you had possession of these papers. I would ~~XXXXXXXX~~ like to know 1) how you came to possess these papers, 2) who gave you these papers; 3) who have you shared these documents with; 4) who did you give these documents to; 5) when did you come into possession of these documents; and 6) when did you share these documents with anyone else or give them to someone else or arrange delivery to me of these documents.

Thank ~~XXXXX~~ you for your assistance.    [1](You may be called as a witness in this matter and case)

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94



E X H I B I T     14

BEAIRD, John
Register No.: 14355-179

Inmate Request to Staff Member

This is in response to your Inmate Request to Staff Member received March 24, 2006. You request information regarding the legal papers (consisting of 403 pages) received in the Warden's Office on March 21.

Your documents were received in the Warden's Office at this facility from the Central Office on March 21, 2006, at approximately 12:00 noon. Your items were placed in the Unit Team's mailbox for delivery to you.

Lorie Vanderslice, Secretary

3/24/06
Date

E X H I B I T     15

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM **IMMEDIATE RESPONSE REQUESTED**
SEP 98 **HAND DELIVERED TO WARDEN DAN JOSLIN ON** 3/70_____, 2006
**U.S. DEPARTMENT OF JUSTICE**                              **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) **DAN JOSLIN, Warden** | DATE: 29 March, 2006 |
|---|---|
| FROM: **JOHN BEAIRD** | REGISTER NO.: 14355179 |
| WORK ASSIGNMENT: **YD** | UNIT: D - 54 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.) Dear Warden Joslin;
    I have been informed that my personal legal documents (403 Pages; One set of the Original
Plaintiffs' Pleadings in JOHN M. BEAIRD, et. al. vs. HARLEY G. LAPPIN, et. al., which were time-
stamped with the District of Columbia District Court Seal, Nancy Whittington, Clerk, 2-14-2006)
which such exact documents having been reported missing from inside the U.S. DIstrict Courthouse
were found and present inside your office. I am requesting answers to the following:

1) Have you read, reviewed, or looked over these documents or copies of these documents, and if
so on what specific dates; 2) Have you or anyone you know been directed to make copies or direct
anyone to make copies or read or review these documents, and if so whom and on what dates; 3)
have you spoken to or conversed with anyone regarding the contents of these documents and if so
whom and on what dates; 4) who do you have knowledge of that sent, or may have sent, or that you
believe to have sent these documents here from the Central Office; 5) By what authority do you c
did you possess these documents? THANK YOU for your assistance in this serious matter.

(Do not write below this line)

DISPOSITION:



| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94



E X H I B I T     16

BEAIRD, John
Register No.: 14355-179

Response to Inmate Request to Staff Member

This is in response to your Inmate Request to Staff Member dated March 29, 2006, regarding personal legal documents received in the Warden's Office. You request answers to the following questions:

**1) Have you read, reviewed, or looked over these documents or copies of these documents, and if so on what specific dates;**

No.

**2) Have you or anyone you know been directed to make copies or directed anyone to make copies or read or review these documents, if so whom and on what dates;**

I am not aware of any copies being made.

**3) Have you spoken to or conversed with anyone regarding the contents of these documents and if so whom and on what dates;**

No.

**4) Who do you have knowledge of that sent, or may have sent, or that you believe to have sent these documents from the Central Office;**

Unknown. These documents were received in batch mail from the Central Office with no indication as to who the sender was.

**5) By what authority do you or did you possess these documents?**

As Warden of this institution, I am the recipient for batch mail to the institution.

Dan Joslin/Warden                          4/4/06
                                            Date

E X H I B I T     17

U.S. DEPARTMENT OF JUSTICE                              **REQUEST FOR ADMINISTRATIVE REMEDY**
Federal Bureau of Prisons    **HAND DELIVERED TO MR. STAFFORD ON THIS THE** 9th **DAY OF APRIL, ~~2006~~, 2006**

_Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse._

| From: | BEAIRD , JOHN M. | 14355-179 | D - 54 | SEAGOVILLE FCI |
|-------|-----------------|-----------|--------|----------------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

Subject:    UNAUTHORIZED POSSESSION & DISTRIBUTION OF OFFICIAL U.S. DISTRICT COURT MATERIALS THAT HAD BEEN UNLAWFULLY REMOVED FROM THE UNITED STATES DISTRICT CLERK'S OFFICE, U.S. DISTRICT COURT for the District of Columbia, by Ms. LORIE VANDERSLICE:

On March 28, 2006, I learned via an Inmate Request to Staff Member Response, that MXXXXXXXX Ms. LORIE VANDERSLICE had admitted possession of my personal legal documents, these documents being one of the set of Original Pleadings that had been filed and retained by the United States District Court, District of ~~COLUMBIA~~ Columbia (**JOHN M. BEAIRD, et. al. and all Similarly Situated Individuals vs. HARLEY G. LAPPIN, et. al.**), such documents still bearing the Red Time-Stamp & Seal of the United States District Clerk's Office (Feb 14, 2006, Nancy Mayer Whittington, Clerk, U.S. District Court) on numerous pages.

These documents (Pleadings) (400 Pages) had been reported as being missing from inside the United States District Clerk's Office, whereby an active search internally had been invoked by the staff and the United States District Court Judge.  Further, the Clerk had indicated that the documents had not been released or disbursed by the Court or the Clerk's Office to anyone.

The removal and possession of these documents is criminal in nature. See 18 U.S.C. § 2071: Removal, Concealment, or mutilitation of records deposited with a U.S. District Clerk; ....(next page)

| APRIL 8, 2006 | |
|-------|------|
| DATE | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

| | |
|------|------|
| DATE | WARDEN OR REGIONAL DIRECTOR |

_If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response._

ORIGINAL: RETURN TO INMATE                              CASE NUMBER: 410313-F1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                                                        CASE NUMBER: 410313-F1

**Part C– RECEIPT**
Return to: Beaird John M.    14355-179    D    SEA

| | | | | |
|------|------|------|------|------|
| LAST NAME, FIRST, MIDDLE INITIAL | | REG. NO. | UNIT | INSTITUTION |

SUBJECT: Legal/Complaint Against Staff (Vanderslice)

| 4-17-06 | |
|------|------|
| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |

BP-229(13)

E X H I B I T    18

CONTINUATION PAGE
BEAIRD, JOHN M.    BP - 9; 4/8/2006

see also **18 U.S.C. § 371**: Conspiracy; and see **18 U.S.C. §§ 241 & 242**: Conspiracy to violate civil rights.

Because, obviously, the nature of the possession of these particular documents (Pleadings in JOHN M. BEAIRD, et. al. vs. HARLEY G. LAPPIN, et. al.), raises very serious civil rights and criminal issues, I requested more complete information from Ms. Vanderslice (See INMATE REQUEST TO STAFF: LORIE VANDERSLICE, dated March 29, 2006, attached) as to 1) Who specifically in the Washington, D.C. Central Office did she receive these documents from and by what specific means (carrier) were these documents received; and who were these documents, or copies of these documents shared with which she had knowledge of and on what dates; and had Ms. Vanderslice, or anyone to her knowledge read or made copies of these documents and on what dates; (NOTE: "shared" with meaning its ordinary meaning of i.e. discussed the contents, looked at, read, faxed, e-mailed, scanned, inter alia).
NO RESPONSE HAS BEEN PROVIDED TO THIS INFORMATION REQUEST.

Because of the serious nature of the conduct at issue (possession of documents by Federal Bureau of Prisons, inter alia, named defendants in a Federal proceeding of as yet not public documents, which had been "removed" unlawfully from inside the United States District Court's internal files), I am requesting the following:

1) An Official Investigation into this complete matter to be initiated by the Federal Bureau of Prisons.[1,2]

2) An Affidavit to be provided by Ms. Vanderslice attesting under oath the answers to the following issues:

A listing, to the Affiant's knowledge or belief, of
every person, or entity who has: viewed, may have viewed, made copies, read copies, scanned, faxed, e-mailed, the documents at issue, or any portion or part of the contents of such documents at issue, and the specific dates of such there-of;

A discription of the manner inwhich these documents were received:
Discription meaning: By what carrier, signed for by whom on what date, were the documents enclosed or loose, was there an envelope or some type wrapping that these documents were covered with within the Batch Mail envelope, and what evidence of the specific sender in the Central Office was attached to, or covered these documents, evidencing any comments, routing, or sending party or delivery instructions;

A listing, to the Affiant's knowledge or belief, of
every person, or entity, whom may have discussed the contents, or what the Affiant believes to have been the contents of, these documents, or whom may have discussed portions of, or a part of, the contents of said documents, and the date(s) on which action(s) took place;

Whom, to the Affiant's knowledge or belief, has the missing 110 pages of these Original Pleadings Documents which represent One of the Sets of Affidavits made a part of these Original Pleadings.

Thank you in advance for your assistance and resolution in this most serious matter.

---

[1] This Official Investigation will be Subpoenaed in JOHN M. BEAIRD, et. al. vs HARLEY G. LAPPIN, et. al. ;

[2] This investigation is separate from any investigation by the FBI Civil Rights & Corruption Unit, and the Inspector General's Office;

E X H I B I T     19

**BEAIRD, John**                                                    **FCI Seagoville, Texas**
**Register No.: 14355-179**
**Remedy No.: 410313-F1**

This is in response to your request for Administrative Remedy receipted on April 17, 2006, wherein you allege unauthorized possession and distribution of official U. S. District Court materials had been unlawfully removed from the United State's District Clerk's Office, U. S. District Court for the District of Columbia, by a staff member. Specifically, you allege that on March 28, 2006, you learned via a Inmate Request to Staff Member response that the Warden's Secretary had admitted possession of your personal legal documents. You indicate these documents were the original pleadings that had been filed and retained by the United States District Court, District of Columbia (*John M. Beaird, et. al. and all similarly situated individuals vs. Harley G. Lappin, et. al.*). You further indicate removal and possession of these documents is a criminal matter. You request an official investigation into this matter be initiated by the Federal Bureau of Prisons and an affidavit be provided by the Warden's Secretary attesting to the incident.

Research reveals that on March 21, 2006, the Warden's Secretary opened a "batch mail" envelope from the Central Office at approximately 12:00 noon. Included in that envelope were documents with a sheet of paper on top with no documented sender from the Central Office. The paper had the typed name of John Beaird, Reg. No. 14355-179. All documents were placed in the Unit Team mailbox on the same day for appropriate delivery to the inmate. In accordance with Program Statement 5800.10, the documents did not meet the criteria of Special or Legal Mail as the documents would need to be in a sealed envelope from the Court or Attorney marked "Special or Legal Mail."

As the documents were handled in accordance with established institution mail procedures, your request for Administrative Remedy is denied.

If you are not satisfied with this response, you may appeal to the South Central Regional Director, 4211 Cedar Springs Road, Suite 300, Dallas, Texas, 75219, via BP-DIR-10, within 20 calendar days of the date of this response.

_____                    _____
Dan Joslin, Warden                                                    Date   5/12/06

E X H I B I T     20

May 17, 2006                **CERTIFIED MAIL No. 7000-1670-0004-3960-6308**
                            **RETURN RECEIPT REQUESTED**

**Mr. G. Maldanado**
South Central Regional Director
Bureau of Prisons
4211 Cedar Springs Road
Suite 300
Dallas, TX  75219


Dear Mr. Maldanado;

    Enclosed please find an "Administrative Remedy Appeal" (BP-10) on
BP -9 file number 410303F1.  This matter represents a very serious matter
regarding documents (Plaintiff's Pleadings in JOHN M. BEAIRD, et. al. and
all Similarly Situated Individuals vs. HARLEY G. LAPPIN, et. al.)
which were **"stolen" out of the inside of the United States District
Court Clerk's Office, District of Columbia, and were, subsequent to
such "theft" found in the possession of the Federal Bureau of Prisons**
and specific individuals.

    As this matter represents a severe violation of Due Process,
see U.S. Const. Fifth Amend., as well as a "retalitory act" for
pursuing a due process claim, and, most seriously, a violation of
criminal law, see 18 U.S.C. § 2071, Removal, Concealment, or Mutilation
of records deposited with the U.S. District Clerk; 18 U.S.C. § 3571,
Conspiracy; and 18 U.S.C. §§ 241 & 242, Conspiracy to Violate CivilRights

    Accordingly,   you now have direct personal and individual
knowledge of this, such that any actions, or importantly, inactions
taken with regard to this, will effectuate an essential "causal link"
with regard to any continued "Due Process" violative behavior,
such being, as here in this violative conduct the subject of this
Administrative Remedy, done with "deliberate indifference" to the
rights of myself, inter alia.

    As the foregoing represents legally required notice, I am now
asking, respectfully, that you examine this most serious matter and
that the "Denial" on the Original BP-9 be "overturned" and that I be
GRANTED, herewith, ALL REQUESTS as indicated, without exception, on
the Originally Submitted BP-9.  These matters, will, obviously be
obtained in much greater detail through **discovery, depositions,** etc.
in the above-referenced Federal District Court action which has now
been approved and docketted, however, in the spirit of allowing this
agency (Bureau) **a good faith opportunity** to be "forthcoming", and
"clean up" such, prior to being compelled in Federal Court, I am
respectfully giving you, as REGIONAL DIRECTOR, this additional pre-
litigatory opportunity to properly investigate and attend to
this most serious matter.  Thank you in advance for your time and
consideration to this request.

Sincerely,


JOHN M. BEAIRD
14355179  FPC POB 9000
Seagoville, TX  75159-9000

cc:  HON. Sheila Jackson Lee, 2435 Rayburn House Office Building
        House Judiciary Committee - 109th Congress

E X H I B I T    21

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

15m

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| From: | BEAIRD, JOHN M. | 14355-179 | Satellite Camp Seagoville |
|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**

RE:  Case No. (BP-9) 410313-F1;  Possession, Copying, & Distribution of Official U.S. District Court Filed Pleadings; such being illegally obtained, and Inmate Personal Legal Materials.

In my original filing of my BP-9 I requested (2) forms of relief.  Neither was provided.  Further-more, the BP-9 Response itself was purposefully nonresponsive with regards to providing requested information whether anyXXXXXXXXXXXXX anyone had made copies of such legal material (Pleading); discussed in any manner the content of such pleadings; held any meetings regarding the content of said pleadings; requested anyone to copy said legal materials; viewed said legal materials (read in whole or in part); where the missing XXXX 110 Pages of the documents were; inter alia.

Moreover, the warden, Mr. Dan Joslin, has already identified and alleged that these stolen documents (taken from inside the District of Columbia District Court Clerk's Office without any authorization what-so-ever) as having come from the WASHINGTON D.C. B.O.P. CENTRAL OFFICE.  The two major DEFENDANTS of this CAUSE OF ACTION , Mr. ALBERTO GONZALES, and Mr. HARLEY G. LAPPIN, whom whom are in WASHINGTON D.C., and have DIRECT ACCESS TO THE WASHINGTON D.C. DISTRICT COURT' CLERK's OFFICE, now, by such response by Mr. JOSLIN, incurs possible liability for the removal or the aiding & abetting the removal of said pleadings from inside the WASHINGTON D.C. District XXXXXXXXXX Courthouse. NOTE:  THESE PLEADINGS ARE THE PLEADINGS OF THE PLAINTIFF's IN A CLASS ACTION PROCEEDING.  THE DEFENDANTS HAVE OBTAINED THE PLEADINGS PRIOR TO THE UNITED STATES MARSHAL SERVING SAID PLEADINGS UPON THE DEFENDANTS: A serious Due Process violation, as well as an essential "conspiracy to violate civil rights".  This matter is placed at your level for affirmative action

| MAY 17, 2006 | |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**

---

| DATE | REGIONAL DIRECTOR |
|---|---|

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 410313-R1

**Part C - RECEIPT**

CASE NUMBER: _____

RECEIVED
MAY 2 3 2006
BUREAU OF PRISONS
LEGAL DEPARTMENT SCRO

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

| DATE | SIGNATURE, RECIPIENT OF REGIONAL APPEAL |
|---|---|

BP-229(13)

E X H I B I T     22

BEAIRD, John M.              REG. NO. 14355-179      RECEIPTED: 05-23-06

CASE NO. 410313-R1           PART B - RESPONSE

You are appealing the Warden's response to your complaint regarding your incoming mail. Specifically, you allege mail received from the Central Office via batch mail was illegally obtained and mailed by staff. In addition, you claim your rights have been violated. For relief, you request this incident be investigated.

The Warden's response appropriately addressed your concerns regarding the issue of your incoming mail. As stated, when documents are received for an inmate via batch mail from the Regional or Central Offices, the batch mail is processed when received; it is opened, inspected, and when identified mail belongs to an inmate, the mail is placed in the Unit Team mailbox for delivery to the inmate.

You failed to include evidence with your appeal to prove staff have mishandled the delivery of your incoming documents received through batch mail. Additionally, you failed to provide evidence your rights were violated.

Based on the above, your appeal is denied.

In the event you are dissatisfied with this response, you may appeal to the Bureau of Prisons, Administrative Remedy Section, 320 First Street, NW, Washington, D.C. 20534. Your appeal must be received in that office within 30 days from the date of this response.

_07/11/06_
Date

G. Maldonado, Jr.
Regional Director

SENSITIVE - LIMITED OFFICIAL USE

E X H I B I T    23

U.S. Department of Justice                          **Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons     RE SUBMITTED VIA CERTIFIED MAIL #7000-1670-0004-8741-4726 AUGUST 18, 2006

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: **BEAIRD, JOHN M.**     **14355-179**     **CAMP**     **SEAGOVILLE**
      LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

Part A—REASON FOR APPEAL **DELIVERED BY CERTIFIED MAIL #7000-1670-0004-8741-2968**

This filing shall serve as exhaustion of administrative remedies for litigation to be filed in the United States District Court, District of Columbia, to be styled JOHN M. BEAIRD vs. HARLEY G. LAPPIN, ALBERTO GONZALEZ, and SEVERAL UNKNOWN AGENTS OF THE FEDERAL GOVERNMENT, which shall claim violation of my 5th Amendment due Process Rights, unreasonable "seizure" of legal material in violation of the Sixth Amendment, Conspiracy to Violate Civil Rights (see also 18 U.S.C. §§ 241 & 242), (see also 18 U.S.C. § 371), and unlawful concealment, and removal, and possession of Official Records filed within the U.S. District Court Clerk's Office (see 18 U.S.C. § 2071). Such Original Pleadings which were admitted by the Defendants in writing to have been in their possession had been removed ("stolen") from within the U.S. District Court Clerk's Office, District of Columbia by said Defendants (see xxxxx BEAIRD, et. al. vs. LAPPIN, et. al.,) prior to said case being Officially Docketed, such conspiracy to violate civil rights and due process being conducted by said defendants above along with several "unknown" "agents" of the Federal government.

An Attachment Sheet to this BP-11 is also herewith attached.

**I am requesting Independent Counsel to be appointed to now investigate this criminal matter rather than a Justice Department investigative body.**
JULY 24, 2006

_____           _____
       DATE                          SIGNATURE OF REQUESTER

**Part B—RESPONSE**

R E C E I V E D
Administrative Remedy Section

R E C E I V E D
2 8
Administrative Remedy Section

_____
       DATE                          GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE           CASE NUMBER: **410313**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**

                                               CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

_____
       DATE                     SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL       BP-231(13)

E  X  H  I  B  I  T      24

## ATTACHMENT SHEET TO BP-11; JOHN BEAIRD, JULY 24, 2006

This Attachment sheet is incorporated as part of my BP-11. The Response by Mr. G. **MALDANADO, JR.**, Regional Director to my submitted BP-10 amounts to "sticking your head in the sand to avoid liability" in regards to the issues raised and is **Non-Responsive** to the claims made and the following comments are dispositive:

First, Original Pleadings in the cause of action: <u>JOHN M. BEAIRD, et. al. and All Similarly Situated Individuals vs. HARLEY G. LAPPIN, et. al.</u>, a civil rights Eighth and Fifth Amendment claim, inter alia, filed as a "Class Action" and claiming Individual Liability as well as Official Capacity Liability of all named Defendants, was filed with said U.S. District Court, District of Columbia (later officially docketted after review under the "PLRA" with damage amount being set by the District Judge at $200,000,000.00 upon "official docketting" on April 27, 2006; see 1:06-cv-00776-JNA). The Original Pleading which arrived at the district court clerk's office on February 14, 2006, were reported as being missing ("stolen") from within the courthouse, having not been sent out and having been given to the District Judge. Such file had been completely "removed" without authorization and illegally from said district courthouse. A massive search ensued by the U.S. District Court Clerks, as well as by the U.S. District Judge. It is **very important to note here that <u>at no time had these pleadings been sent to the Defendants</u>** in this cause of action.

With the status of these pleadings of "missing" ("stolen") existing on March 22, 2006 I, on that day, was given a stack of legal documents (unwrapped, disshoveled, and with no addressee note, and with only a single rubberband wrapped around them) these documents bearing the Original Red Time-stamp Seals of the U.S. District Clerk, District of Columbia upon them. These were given to me by the Defendants. The Defendants later admitted in writing that they had possession of these documents which should have, at that time, been inside the U.S. District Court Clerk's file, but they were not -- they were in the possession of the named Defendants without having been sent to them by the U.S. District Clerk, or without having had the U.S. Marshall serve them. These documents were admittedly received from the Defendants in Washington, D.C. (Central Office). More troubling is the fact that additional Official Documents had been "inserted" within these documents which purported to have been executed on a date in 2005 (Original signature in blue ink and Original Date indicating such) when, infact, the "Red and Blue Timestamp" upon such evidenced the date of "March 16, 2006" (an obvious falsification of such document of when it was actually "executed"). Such Forgery of a Government Document done to apparently "make it appear" that such was executed on the date in 2005, when the time stamp revealed otherwise. The Original BP-9 claimed the illegal removal and conspiracy involved to remove such, not just the mere possession which Mr. Maldanado "craftly" addressed.

Mr. Maldanado "recharacterizes" the claim as a "complaint regarding your incoming mail". This is non-responsive. Nowhere in my original complaint is the word "my mail" even used. Furthermore, I am not aware of any remote realm where an inmate's "mail" or even "legal mail" comes through the "batch mail system" being routed to the Central Office first! No, the complaint was very clear as stated in the "Subject Line": "the **Unauthorized Possession & Distribution of Official U.S. District Court Materials that had BEEN UNLAWFULLY REMOVED FROM THE U.S.District Court's Office..**" by the Defendants in that cause of action; some of which now, prior to discovery, being "concealed" and described and "identified" as "several unknown agents of the federal government". But, what then could one expect of the defendants now? -- To **admit** they hired the formerly (and now elderly) "White House "Plumbers" " of the Nixon era to "sneek into the U.S. District Courthouse" and illegally obtain said documents; or maybe "call in a 'favor' from a friendly court-house worker or other government agent" to enlist them in a conspiracy to obtain the documents? No, this conspiracy now leads to the highest levels in the department and the government -- one which shall be later determined through discovery. Yet, the Bureau wishes (as in "Watergate" & "Whitewater") to "not investigate" this matter in order to "cover up" potential liability. This has now risen to a conspiracy to coverup a violation of my Constitutional rights, as well as the original conpiracy and other claims.

This matter is now put at your level (Central Office).

CC:
Hon. Shiela Jackson Lee, Ranking Member, House Judiciary Committee
Hon. Bobby Scott, Member of Congress

E X H I B I T     25

JOHN M BEAIRD, 14355-179
SEAGOVILLE FCI     UNT: CAMP     QTR: S02-019U
2113 NORTH HWY 175
SEAGOVILLE,   TX 75159

RECEIVED
WARDEN'S OFFICE

NOV 22 2006

FCI  SEAGOVILLE

**Administrative Remedy Number 410313-A2**
**Part B - Response**


You request to know how mail you supposedly sent to the U.S.
District Court came to be in the possession of the Bureau of
Prisons.

Our review of this matter reveals both the Warden and Regional
Director have adequately addressed your concerns.  We simply do
not know how this material came to be at the Bureau of Prisons'
central office.  We believe, based on the information already
provided to you by prison staff, the material was sent to the
prison from the central office via batch mail.  Once at the
prison, the batch mail envelope was opened and its contents
disseminated to the addressee's.  There is no evidence to support
your belief the item was stolen from the U.S. District Court.

We would be happy to inquire into this matter further if you
obtain any additional information which might shed some light on
the matter.  It is usual for items received by central office
divisions to be date-stamped upon arrival.  If you would inspect
the material you received closely to see if any such marking are
present, we could inquire further.  Absent such, no further
inquiry is warranted.

This response is for informational purposes only.


_November 1, 2006_

Date

_for Kelia C. Rios_

Harrell Watts, Administrator
National Inmate Appeals

**A P P E N D I X    C**

E X H I B I T      26

October 6, 2005

**CERTIFIED MAIL #7000-1670-0004-3960-2867**
**RETURN RECEIPT REQUESTED**

Federal Bureau of Prisons
Administrative Remedy section
320 First street, N.W.
Washington, D.C.  20534
**ATTENTION:  Mr. HARVEY LIPPON, Director, B.O.P.**

RE:    Enclosed BP-11 re:    Eighth Amendment violations;
"Effects of Massive Overcrowding";
Inter alia

Dear Mr. Lippon;

Please find enclosed (1) Original BP-11 "Central Office Administrative Remedy Appeal along with (4) copies of the attached "Continuation Page" to such as is required pursuant to procedure.  Additionally, please find enclosed One copy of the BP-10 and BP-9 as required pursuant to procedure.

Pursuant to 28 C.F.R. § 542.18 ("Response Time") a written response to this enclosed appeal is to be given to me prior to the expiration of Forty (40) Days from the receipt as evidenced from the Return Receipt Card as dated.

As the issues presented within this appeal, and in the original BP-9 represent serious Constitutional issues, this appeal is respectfully requested to be given serious and intense scrutiny for available relief. By such, Mr. HARVEY LIPPON, as Director of the Federal Bureau of Prisons, is, and will have been, provided knowledge of said unconstitutional conditions, such that subsequent actions or inactions will be made having said knowledge.

Thank you in advance for your attention to this very serious matter.

Sincerely,

JOHN BEARD
44355179  FCI SEAGOVILLE POB 9000
Seagoville, TX  75159-9000

cc:    FILE
Hon. Sheila Jackson L
Member, House Judic
2435 Rayburn House
Washington, D.C.  2

Hon. Bobby Scott
Member, House Judic
1201 Longworth Hous
Washington, D.C.  2

Ho. Kay Bailey Hutche

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

FEDERAL BUREAU OF PRISONS
ADMINISTRATIVE REMEDY SECTION
320 First Street, N.W.
Washington, D.C.  20534

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

OCT 17 2005

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☒ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7000-1670-0004-3960-2867

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-154

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: **BEAIRD, JOHN M.**          **14355-179**          **D - 54**          **SEAGOVILLE FCI**
     LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL   SENT VIA CERTIFIED MAIL No. 7000-1670-0004-3960-2867**

On 10/6/2005 I received the Response from Region (attached) to my complaint of violations of the Eighth Amendment proscriptions against infliction of cruel and unusual punishment by way of present and ongoing conditions within the B.O.P. system and at SEAGOVILLE FCI and by way of "the effects of massive overcrowding". The Regional response, unfortunately, states that "you present no evidence to support your claims...". This response is defective for two important reasons; 1) The BP-9 referenced by Footnote 14 critical areas of such evidence [see attached footnotes to BP-9] and; 2) **"[a] defendant would 'not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he stongly suspected to exist'."** Farmer v. Brennan, 114 S. Ct 1970, 1982 @ n.8 (1994); also at McGill v. Duckworth, 944 F2d 344, 351 (7th Cir 1991)("Going out of your way to avoid acquiring unwelcome knowledge **is a species of intent**") cert denied, 503 U.S. 907 (1992). Further, "once [D]efendants were aware of the risk they were obligated **to consider the risk seriously, and to conduct adequate inquiries."** Madrid v. Gomez, 889 F. Supp 1146, 1267 n.213 xxxxxxxxxxxx (N.D. Cal. 1995) quoting Farmer, supr at 1982 n.8. This is ever-so-important since **"[s]upervisory liability in civil rights context may extend to the highest levels of [] government."** Slakan v. Porter, 737 F2d 368, 373

_10-6-2005_
       DATE                                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____          _____
       DATE                                    GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

**Part C - RECEIPT**
                                   CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          _____
       DATE                                    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

                                                                        BP-231(13)

(4th Cir. 1984) quoting Scheuer v. Rhodes, 416 U.S. 232, 40 L Ed 2d (1974).
     As of August 15, 2005 Seagoville FCI was at **281% Design Capacity** in population and
at **141% Critical Capacity**. I.E:

| Building | Population | Design Capacity | Critical Capacity |
|---------|-----------|-----------------|-------------------|
| 54 | 340 | 128 | 256 |
| 53 | 340 | 128 | 256 |
| 12 | 140 | 48 | 96 |
| 10 | 106 | 47 | 94 |
| 7 | 202 | 73 | 146 |
| 6 | 285 | 100 | 200 |
| 5* | 202 | 73 | 146 |
| 9* | 63 | 36 | 36 |
| | 1,678 | 597 | 1,194 |

*NOTE:  BUILDING 9 is a SHU and the rooms contain only about 60 sq ft inclusinve of a desk,
toilet, and bed.  Although adequate for 23hour housing around the clock confined housing for
only 1 inmate, these units, as of the date of the BP-9 Filing, and as of today, routinely
house 3 inmates with **one of the three occupants forced to sleep on the floor on a mattress next
to the filthy toilet.  Additionally, mattresses are alligned up on the floor in the halls of
the "lower 9" section of the building.**  This building has **no mechanical ventilation and temper-
atures within the cells routinely reach 100degrees to 105 degrees ---all without fresh air
ventilation.**  This building also contains outdated plumbing and sewage frequently backs up and
bursts out of the pipes within the building and in the basement.  Further, the building contains
**Asbestos** and **Black Mold**, and other enviornmental and health hazards.

     Inmates are housed through-out the compound in day-rooms which have as little as 21 square
feet per inmate and do not have windows, desks, adequate ventilation (65 cubic feet per person
per minute), and are a fire trap and are without proper fire corridor or eggress facilities.
There is further, NO DAY-ROOM space at all in the buildings as should be required.

     Although this is a brief synopsis of the material, the BP-9 filed by me should be
referred to the indepth analysis with the individual sections referenced in the Footnote
section for a more complete listing of constitutional abridgments and effects there-of.

     Although a claim that Seagoville FCI was recently looked at by the ACA Commission in a
recent inspection, this inspection either is meant as a fascade of what it should be or is
conducted without full awareness by such "inspectors".  For when one of the ACA Inspectors was
asked the question and informed of the conditions in Building 9 (SHU), a mr. Sandol, whom was
also an apparrent former warden on Thursday August 4, 2005, his response was "well--don't go
to the 'hole'."  This represents a deliberate indifference of the inspectors whom are suppose
to be inspecting.

     Further, the medical facilities and system suffers from both systemic deficiencies and
the care (or lack of care) is frought with repeated cases of deliberate indifference and
complete negligence.

     This represents the final administrative remedy prior to litigation.  These represent
serious constitutional violations towhich relief is requested for each.

JOHN BEAIRD          10-06-2005

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | BEAIRD, JOHN M. | 14355-179 | D - 54 | FCI SEAGOVILLE |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST** This BP-9 is a consolidated submission pursuant to Two (2) Attached BP-8's, one dated 7/14/2005 and the other dated 7/22/2005, as they both pertain in essence to the same subject—**"the effects"** of **massive overcrowding. NOTE:** I WAS NOT SUPPLIED WITH A WRITTEN RESPONSE TO EITHER OF THESE BP-8's. The "effects" of massive overcrowding are present at Seagoville (here) as well as throughout the B.O.P. system. Hence this BP-9 utilizes Seagoville as representatitive (and partially in particular) without waiving the scope of the complaint.

Seagoville FCI is massively overcrowded. "The 'touchstone' of the Eighth Amendment inquiry is 'the effect upon the imprisoned'." ~~EXPLAIN~~ Rhodes v. Chapman, 452, U.S. 337, 366, 69 L Ed 2d 59 (1981). Moreover, as the [Supreme] Court recognized in Chapman, conditions of confinement "alone or in combination may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standards of decency." Chapman at L Ed 2d 69. The "effects" of overcrowding are now manifested in multiple areas as follows: Physical Plant (ventilation[1]; plumbing[2], living space[3], noise levels[4], recreation space[5]); Sanitation[6](control of vermin & insects & clean enviornment)[7]; food-prep & dining[8]; medical facilities[9], lavatories & showers[10]; safety[11]; fire-protection[12]; Enviornmental Aspects of Overcrowding[13]; Visitation[14]; Staffing[15]. Such combined effects constitute a violation of the Eighth Amendment. Population levels should be immediately reduced by 35% inter alia. A REPLY IS REQUESTED WITHIN THE PRESCRIBED 20 CALANDER DAYS. NO REPLY...WILL BE DEEMED A REPLY FOR BP-10 and Administrative Procedures required to satisfy 42 U.S.C. § 1997e and 42 U.S.C. § 1983. I have provided a copy of this as a courtesy to my Congresswoman, the Hon. Shiela Jackson Lee, and my Senators, the Hon. John Cornyn, and Hon Kaye Bailey Hutchison. THANK YOU IN ADVANCE FOR YOUR ASSISTANCE TO THIS MATTER. Attachments: Continuation Pg. & BP-8's.

27 July, 2005
7/27/2005 DATE          *CC: FILE*          JOHN BEAIRD SIGNATURE OF REQUESTER

**Part B- RESPONSE**




DATE                                              WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                    CASE NUMBER: _____

                                                  CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____


DATE                                              RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN          PRINTED ON RECYCLED PAPER          BP-229(13)
                                                    APRIL 1982

1) American Public Health Standards for Health Services in Corrections Institutions defines "adequate ventilation" as 60 cubic feet per man per minute. There is no mechanical ventilation drawing fresh air into the cells in Bldg. 9. Inmates (many times 3 to a cell with a mattress on the floor next to a toilet in a room of approx. 65 sq ft) have absolutely no fresh air forced into the room. Temperatures exceeding 100 deg in summer (and in heat wave warnings) are common and inmates must endure such for 23 hrs a day sometimes for weeks on end; Bldg. 5, 7, 10 have inadequate mechanical ventilation systems often completely stopped up by dirt or none at all; Bldg. 53 & 54 mechanical system is poorly maintained—fresh air ports (2 ea) are broken and the system has no air filters. All systems are inadequate for the number of inmates housed in each specific unit.

2) Plumbing: Bldgs. 5, 6, 7, 10 plumbing systems are so delapidated that the showers often flood ankle-deep with water, toilets frequently back-up with sewage; the basements of Bldg. 9 (recently on 7-26-2005) and bldg 7 frequently flood with water from broken pipes or sewer pipes or outside leakage. The sewar discharge by the institution into the enviornment is substantially above any expected design capacity of the facility putting a drain on the city.

3) Living Space: As the [Supreme] Court has noted "[T]he work of standard-setting organizations...is particularly valuable." Chapman, supra at 80 n.12. The following professional organizations reccomend the minimum area of square footate per inmate of living space (cell space) for long term housing: American Public Health Assoc., Manual of Standards for Adult Correctional Institutions, standard No. 4142, pg 27 (1977)(min 60 to 80 sq ft); National Sheriffs' Assoc., A Handbook on Jail Architecture (70 to 80 sq ft); U.S. Dept. of Justice, Federal Standards for Prisons and Jails, Standard No. 2.04 pg 17 (1980)(60 sq ft); National Institute of Justice, American Prisons and Jails 85 n.6(1980)(80 sq ft); Building Officials and Code Administrators (BOCA), Basic Building Code 1975 § 201.3 (70sq ft); Committee for the Study of the U.S. Army Confinement System (1970)(55sq ft). The massive overcrowding has caused per inmate per square foot living space to be as low as follows (approx.): Bld. 5 (25 sq ft); Bld. 6 (22sq ft); Bld 7 (25sq ft); Bld 9 (21sq ft); Bld 10 (25sq ft); Bld 53 (22sq ft); Bld 54 (22sq ft). Further, professional authorities call for a minimum of 35 square feet per inmate of Day-Room space. There is no existing day room space in any building as all has been utilized to put additional inmates in. Moreover-physical plant problems with the structure of most all buildings exist as most all are over 75 years old—far beyond their intended useful life expectancy (excluding Bldgs 53, 6, & 54). The second floor of building 10 has settled down approx. 3 inches and the structural integrity of the building is questionable.

4) Noise Levels: Because of the massive over-crowding such levels are most of the time, especially in the evening and ibn the night until about 11 P.M. the noise level of a train station.

5) Recreation Facilities: are far overburdened, and over-crowded because of the mass overcrowding and such often creates more frustration than that to which recreation is designed to release in the inmate group.

6) Sanitation: Constant smoking in the Unit Bathroom(s) [i.e. Bldg. 54] creates mandatory exposure to second hand smoke and gets into the air-vent system through-out the whole building. See Helling v. McKinney, 509 U.S. 25 (1993). Buildings 5,7,9, & 10, because of the re-occuring flooding, dampness, lack of proper ventilation, lack of air-conditioning, age, and general condition within the structure have been know to contain what is probably black mold; these buildings, it is also believed, contain asbestos insulation areas and within the wet-walls. Buildings 53,54,9, & 6 contain black mold within the shower areas and subsequent venting areas as the air conditioning is not run at all times to relieve the humidity build up in such areas. Additional vermin and insect problems have been known in the building areas as well as in the food facilities and food storage areas.

7) The small dining facility is overtaxed with 1600 inmates causing eating times to be reduced to around 20 minutes, thereby risking creation or aggravation of gastric illnesses by eating hurriedly in a noisy, crowded, stressful area.

8) Medical facilities are too small for the 1600 population in area as well as in staffing. It routinely takes 14 months just to get a routine teeth cleaning; repeatidly it has taken inmates 7 months to get dental plates after pulling of all teeth during which 7 month period an inmate is forced to "gum" food or starve. On July 20, 2005, it was indicated the number of reported cases of "staff infections" on the compound was 169. — over 10% of population.

9) The Ratio of inmates to lavatories and toilets in each building is way over design capacity sometimes forcing one to wait long periods to use the restroom or being able to take showers.

10) Safety: The population above the design capacity leaves fewer correctional officers per inmate. For example, the ratio in Bld 54 is 1:336 where at the camp it is 1:180 at a lower security unit all-together. The security level to be eligible for a low has just been increased from 8 points max to 12 points max thereby letting more violent offenders integrete within the population (this as a means to relieve over-crowding at the medium institutions). Additionally, illegal immigrants are housed at the low whereby nothing is known about the level of criminal past or violence from their home country because such is not part of their PSI as are American offenders' past violations.

11) Fire Protection: appropriate fire corridors in the housing units are virtually non-existant because of the massive over-crowding both in sleeping quarters within the general housing unit area; Fire Exit signs [Bld 54] do not work because the lights or illumination is non-existant and can't be seen in the dark in an emergency; the respective building occupancies dramatically exceed the local fire code standards as configured.

12) Enviornmental Aspects: Massive overcrowding creates an increas risk of communicable diseases (flue, hepatitus, tuberculosis, etc.) as well as stress related diseases (rashes, asthma, htpertension). Additionally, the lack of quiet time or space oftentimes causes the only available such time to be after mid-night—thereby, exacerbating sleep deprivation. Because of the elimation of all day-room space, inmates are up outside the room doors until

11 P.M. most all nights creating constant noise levels as that of a train station. The combined effects operate to effect an environment of needless physical, mental, and physycological suffering where degeneration of well being occurs.

13) The Visiting Facilities are dramatically over-taxed by the massive overpopulation causing allienation of family ties. A mere 1200 sq ft seating area exists for a population of 1600 and waiting lines for visitors average three (3) to three and one half (3.5) hours to get in. Visitors frequently are waiting in line and then told they must all get out of line when the institution begins its prisoner-count inside (although the visitors are outside in the parking lot). This precipitates scuffels and arguments when they all re-line up. In fact, it is understood that on July 22, 2005, a fist fight broke out in the visiting line area of the parking lot for just such reason. This creates an unfriendly enviornment and damages what little community and family ties an inmate may have with his family.

14) Staffing: There are only 3 barber chairs for a population of 1600! Massive overcrowding took the resources of staff. Counselors are burdened with case-loads beyond a reasonable capacity. This creates a frustration level among various staff that is passed on directly to inmates which results in further heightened anxiety levels.

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98 **THIS IS A BP - 8 EQUIVALENT; REPLY REQUESTED WITHIN 3 DAYS**
U.S. DEPARTMENT OF JUSTICE **"SENSITIVE"** FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| TO:(Name and Title of Staff Member) Ms. Boyle, Asst Warden | DATE: 7/26/2005 |
| FROM: JOHN BEAIRD | REGISTER NO.: 14355179 |
| WORK ASSIGNMENT: YARD - PM | UNIT: D - 54 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.) Dear Sir:

I have been subject to second-hand smoke inhalation from continued smoking (cigarettes and cigars) in the bathrooms of Building D-54 which has been allowed to go on rampantly, unchecked, essentially condoned, and usually without any "individual" consequences to the individual smoker.

Recently it was a Memo issued to halt such previously allowed practices. (See Exhibit "A", dated July 12, 2005 Memo) re: tobacco in restrooms referencing the "New" sanitation policy which is effective "immediately" i.e. 7/12/2005). Such Memo implicitly implies a "change". Sometimes I have observed "clouds" of smoke "billowing" from the restroom. Often I can not go into the bathroom to brush my teeth without coming out smelling like a tobacco farmer. Rarely are individual smokers disciplined and it is even rarer that security guards leave the confines of their offices in order to observe such practices. Even after this memo was issued, this smoking practice continues; without any individual discipline to such smokers.

This problem is characteristic of a system that has exceeded its designed capacity and is strained with overcrowding, strain on resources, and on available staff.

RECOMMENDED SOLUTION: 1) Hire additional guards so there is one for each the "A" and "B" side with their offices on each side; 2) Eliminate immediately all tobacco products for sale by the B.O.P. and use by inmates; 3) Reduce the inmate population by 31%; 4) leave the unit doors unlocked at all times (especially since this is a low) so that smoking inmates may go outside and smoke.

To continue to sell a product (tobacco, cigarette, cigars) whereby that same product directly puts my and other non-smoking inmate's health at risk. I hold the B.O.P. directly responsible for any future federal health claims regarding such. It is no consolation that these products are to be halted in 9 months, for during such time, the B.O.P. is actual aware of the harmful nature of such products and is un-willingly soliciting and use to continue.

DISPOSITION:

---

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98 **"SENSITIVE"** FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| TO:(Name and Title of Staff Member) Mr. STAFFORD | DATE: 14 July, 2005 |
| FROM: JOHN BEAIRD | REGISTER NO.: 14355179 |
| WORK ASSIGNMENT: Yard PM | UNIT: D-54 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.) Dear Mr. Stafford:

There exists a continued pattern and practice in characteristic noise past 10:00 p.m. at night. "Hooting", loud talking, singing along with BET television playing at football games, inter alia. There is no reason why the noise level after 10 p.m. should be any louder than it is allowed to be during "court time". This continues to result in sleep deprivation and exacts a punishment violations and could be a result of massive overcrowding. This Disproportion and is violative of basic human rights and dignity. RECOMMENDED SOLUTION: 1) Put all the televisions back in day rooms where they should be; 2) hire additional guards so the "A" side and "B" side each have their own; 3) reduce the inmate population by 31%; 4) turn TVs off at 10 p.m. This is not every all necessary requirements for peaceful habitation or ratify pain for this legal claim when such additional filings can be shown as Appro Loss. (See U.S. v. _____ (BTH CIR 2005)

DISPOSITION:

(Do not write below this line)

Signature Staff Member _____ Date _____

Record Copy - File; Copy - Inmate
(This form may be replicated via WP) This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94



**U.S. Department of Justice**

**Federal Bureau of Prisons**

**Federal Correctional Institution**

*Seagoville, Texas  75159*

July 12, 2005

MEMORANDUM FOR BUILDING 54 INMATES

FROM:           Shannon W. Phelps, C/D Unit Manager

SUBJECT:      New Sanitation Regulation

Effective immediately, cigarettes, cigars, matches, or any other tobacco products are not allowed in the bathrooms of Building 54. Anyone discovered with these items while in the bathroom will be subject to a disciplinary report for Failure to Follow Posted Sanitation Regulations, Code 317. If you have any questions concerning this unit sanitation regulation, please contact your counselor.

Efectivo inmediatamente, los cigarrillos, los cigarros, los fósforos, o ninguna otra productos del tabaco no se permiten en los cuartos de baño del edificio 54. Cualquier persona descubierta con estos artículos mientras que en el cuarto de baño estará conforme a un informe disciplinario para que la falta siga las regulaciones fijadas del saneamiento, código 317. Si usted tiene cualesquiera preguntas referentes a esta regulación del saneamiento de la unidad, entre en contacto con por favor a su consejero.

# EXHIBIT A