UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

**RECEIVED**

APR 2 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| JOHN M. BEAIRD, ROBERT MIHAILOVICH and JOHN M. BEAIRD and ROBERT MIHAILOVICH On Behalf Of ALL SIMILARLY SITUATED INDIVIDUALS. (FILED AS A CLASS ACTION COMPLAINT) Plaintiffs | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| vs. | §<br>§<br>§ | No. 06-2268-JDB |
| ALBERTO GONZALES (Individually), HARLEY G. LAPPIN (Individually), UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS Several Unknown Agents of the Federal Government. Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

PLAINTIFFS' EXHIBIT "M" OF
PLAINTIFFS' REPLY IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS AND/OR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE TO TRANSFER

T

Plaintiffs herewith submit to this Court the EXHIBITS M1 - M16 which were unable to be included with Plaintiffs' "REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR SUMMARY JUDGMENT OR IN THE ALTERNATIVE TO TRANSFER". This Exhibit(s) were unable to be included at the time the Reply was filed due to the fact that the Defendants in this cause of action, United States would not permit the Plaintiffs to make copy of these at such time.  Consequently, due to the Defendants' MISCONDUCT, could not be included in such Reply even though they were explicitly referenced in such.

Plaintiffs ask this court to Attach these Exhibits to said reply as a part of it as had been originally intended by Plaintiffs.

Exhibit

M-1

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

15 m

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| From: | Mihailovich, Robert L. | 33446-177 | Camp | Seagoville TX 75159 |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**   Dated 1/11/07 received 1/17/07.  I appeal the Warden's response.   The statue(s) provided and outlined in my BP-9 are clear and unambiguous.   Lack of an inmate's return address is not cause to seize, open, and read "Special Mail", therefore it constitutes an illegal act. Since this was addressed to the BOP, Regional Director, there was no reason for the tampering and certainly the Regional Director was in a position to complain about a missing inmate return address if he thought there was a policy violation. You not only illegally tampered with my legal mail but also with the Regional Director's legal mail.  I continue to seek relief as outlined in my submitted BP-9.  I also request a photo copy of the envelopes, showing the addressee and postage, for my records and tort claim. I was shown this photo copy as part of a UDC hearing so I know it exists.

Dropped in FCI Institution legal mail 1/26/07
_____
DATE

*Robt M hulowah*
_____
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____
DATE

_____
REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE   RECEIVED

CASE NUMBER: 431378-R1

**Part C - RECEIPT**

JAN    2007

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL

SUBJECT: _____

_____   _____   _____
REG. NO.    UNIT    INSTITUTION

Notice:   The Regional Response and mailing back to me did not
include the Warden's original response.   The Regional Office
either lost, kept, or decided not to mail back the Warden's
response.

However, the Warden's response is referenced by the Regional
response to my BP-10 Appeal.   Therefore, it acts as proof that
I complied to all procedures and that you have on file the
Wardens response and that it is indexed in Sentry.


For the Record, attached to, and submitted as part of my
Central Office Appeal of cycle 437378


*[signature]*
Robert Mihailovich                         Date: 3/30/07

MIHAILOVICH, Robert          REG. NO. 33446-177      RECEIPTED: 01-31-07

CASE NO. 437378-R1          PART B - RESPONSE

You are appealing the Warden's response to your complaint
regarding your mail.  Specifically, you state staff opened and
mishandled your outgoing special mail.  You are requesting
monetary damages, sanctions against staff involved, return of
your prepaid postage, and that your administrative remedy
submissions be accepted despite their untimeliness.

The Warden's response appropriately addressed your concerns
regarding the issue of your outgoing special mail, the misuse of
official business envelopes, and the requirement for filling out
the return address on outgoing mail.  The evidence you provided
does not substantiate your claim staff processed your mail
inappropriately.  Staff at your facility were contacted and
confirmed outgoing mail is processed in accordance with Bureau of
Prisons policy.

In addition, Program Statement 1330.13, *Administrative Remedy
Program*, indicates that requests for monetary compensation will
not be accepted under the Administrative Remedy procedure.
Should you wish, you may file an administrative tort claim,
obtaining the necessary form from your unit team.

Based on the above, your appeal is denied.

In the event you are dissatisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section,
320 First Street, NW, Washington, D.C. 20534.  Your appeal must
be received in that office within 30 days from the date of this
response.

_3/20/07_____
Date                              G. Maldonado, Jr.
                                  Regional Director

SENSITIVE - LIMITED OFFICIAL USE

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

| From: | Mihailovich, Robert L. | 33446-177 | Camp | Seagoville, TX 75159 |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**   I appeal the BOP response to the mismanagement of my protected legal mail.  I documented this entire incident to the Warden in a certified/return receipt mailing.   In that certified mailing, I put the Warden and the BOP on personal notice that the conduct, interference, and mismanagement of my protected special/legal mail constituted a felony under the law.  I also put the Warden and BOP on notice that failure to act and report to law inforcement constituted a "misprison of a felony" by failure to act and report on knowledge of the commission of a felony.   Please reference Title 18 U.S.C. §4 which provides that you could become a defendant and imprisoned up to three (3) years.

Dropped into Institutional Legal Mailbox 3/30/07

_____        _____
DATE                                                      SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____        _____
DATE                                                      GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                CASE NUMBER: 437378

**Part C - RECEIPT**

CASE NUMBER: _____

| Return to: | | | | |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

Exhibit

M-2

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                              **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| Ms. Barker | 2/9/07 |
| FROM: | REGISTER NO.: |
| Robert Mihailovich | 33446-177 |
| WORK ASSIGNMENT: | UNIT: |
| | FCI Camp |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

(Informal Resolution Attempt w/Barker). My Sensitive BP-9 was improperly
rejected stating, incorrectly, that it was not sensitive nor did I attempt
a informal resolution.  Concerning Remedy resolutions, 28 CFR § 40.7(e)
provides, "no employee who appears to be involved in the matter shall
participate in any capacity in the resolution of the grievance." Since the
BP-9 names McShan and Blakely the Remedy is properly filed and submitted as
a sensitive BP-9 and its denial is illegal by statute. Furthermore, 28 §
542.13(b) provides, An informal resolution attempt may be waived in
individual cases at the Warden ir institutional Administrative Remedy
Coordinator's discretion when the inmate demonstrates an acceptable reason
for bypassing informal resolution." Since McShan/Blakely are named in the
BP-9, proper discretion would dictate accepting even a non sensitive BP-9
of this nature. Although, the rejection was improper, nevertheless, I
hereby submit an informal resolution request to Ms. Barker, McShan's
supervisor, for resolution. I formally request a set down to informally
resolve this complaint.

CC: My File                                        Remedy 442064

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)                This form replaces BP-148.070 ...

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE:  February 8, 2007

FROM:  Administrative Remedy Coordinator
       FCI Seagoville, Texas

TO:    Robert L. Mihailovich
       Register No.: 33446-177
       FCI Seagoville    Unit: Camp    Qtr:  S02-027L

For the reasons listed below, this administrative remedy request is being rejected and returned to
you.  You should include a copy o of this notice with any future correspondence regarding this
rejection.

REMEDY ID:        442064-F1
DATE RECEIVED:    February 8, 2007
SUBJECT 1:        Institution Job - Assignment, Job Complaint
SUBJECT 2:        Other Complaint Against Staff

REJECT REASON:    The issue you raised is not sensitive.  You did not attempt informal
                  resolution prior to the submission of Administrative Remedy, or you
                  did not provide the necessary evidence of your attempt at informal
                  resolution.

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Mihailovich, Robert L. | 33446-177 | Camp | Seagoville, TX 75159 |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST**    (This Remedy is properly filed as a sensitive BP-9 since Counselor McShan and Administrator Remedy Coordinator, Ms. Blakely, are involved)  Inmates, although incarcerated, have certain rights, provided by law and policy.  BOP employees have a code of conduct that, if followed, promotes fairness and safety for both staff and inmate.  However, law, statute, and policy are of no effect without enforcement.  I continue to address infractions by individual Seagoville staff member(s) who have developed an obdurate disposition regarding professional ethics and responsibilities towards inmates.  My comments are not frivolous and the circumstances, if not corrected, can cause harm and liabilities. As briefly as possible, Ms. Cox, because of escalating issues, of a legal nature, removed me from my education/law library position.  Mr. McShan seized the opportunity to punish and to possibly harm, see affidavit, and Ms. Blakely failed to intervene after having personal and constructive knowledge of malice. Individual continue, unabatted, to use their individual authorities to improperly control and punish individual inmates on a personal level.  I have documented these occurrences in previous filings and correspondences with the Warden.  There appears to be deliberate indifferenc to these misconducts since they continue unabated. Please see Exhibit (Affidavit), herein attached, for details.  I request the restoration of my Education/Library position.  I reserve the to litigate and seek money damages for any misconduct.

Dropped in FCI Institutional Mailbox 1/26/07
_____
DATE

*Robert M. Mihailovich* (signature)
_____
SIGNATURE OF REQUESTER

**Part B- RESPONSE**



_____          _____
DATE                                     WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**          CASE NUMBER: 442064-F1

-------------------------------------------------------------

**Part C- RECEIPT**                     CASE NUMBER: 442-064-F1

EXHIBIT ( AFFIDAVIT )

AFFIDAVIT  OF  ROBERT  MIHAILOVICH
FCI   Seagoville   Reg.   No.   33446
P.O. Box 9000, Seagoville TX 75159

I, Robert Mihailovich, being of sound mind, over the age of Twenty-One(21) years of age, and having personal knowledge to attest to such, do so Attest, Affirm, and state under Penalty of Perjury that the following is true and correct, and that knowing the difference between truth and untruth do state the following facts; **THAT:**

It was documented on a BP-9, hand delivered and presented to Mr. McShan, that I was a plaintiff against the BOP in a recently filed suit. On Mr. McShan's first full work day, after receiving the BP-9, I was fired from my education/law-library job and transferred to the warehouse.

It is documented in my medical records that the week before this transfer, I suffered an arm injury resulting from a fall caused by dizziness which ended in a blackouts. My elbow was greatly swollen, possibly fractured, and collecting large volumes of fluids. Mr. Weaver performed two separate procedures to remove the excessive fluid and ordered X-Rays. According to Mr. Weaver, on 1/24/07, the x-ray results have not come back from the radiologist and a fracture is still a possibility. Dr. Capps came over to see me and upon learning that I was transferred to the warehouse provided me a form listing a number of medical restrictions and instructed me to give them to my counselor, Mr. McShan. Dr. Capps told me that I was medically restricted from working in the warehouse. Dr. Capps said his short term concern was to prevent additional injury to the arm until it healed. Dr. Capps continue to say, but that is not the sole reason for the medical restrictions and that his primary concern was a possible work injury caused by my blindness, cronic high blood pressure, and dizziness.

Two of the medical restrictions are "to avoid steps" and not to lift anything "over 15 pounds". Mr. McShan, who is often not available to inmates, could not be reached by me until after the Martin Luther King holiday, at which time I managed to get into his office. I asked about my reassignment and he said Ms Cox and he agreed to reassign me. I asked, "why the warehouse". Mr. McShan replied that he made that decision "because it was a good place for me".. I presented him with a BOP form, signed by Dr. Capps, listing out my medical restrictions. I told him that Dr. Capps explicitly told me that I was medically unfit to be unloading trucks, moving heavy boxes, and stacking products in the warehouse. I told Mr. McShan that the medical restrictions advised avoiding steps and the warehouse was the only work area that required climbing steps.

Mr. McShan said, "**I don't care** you'll remain assigned to the

warehouse." Mr. McShan then excused me from his office. I left a copy of the form listing out the medical restrictions on the corner of Mr. McShan's desk as I left his office.

On my report date to the warehouse, Mr. Benson, asked; "what are you doing here, I didn't request anyone, did you asked to work in the warehouse". I told him that I was fired from my education/law-library job and suddenly reassigned to him. He asked, "what did you do". I said, "I filled a law suit against the BOP and I they want me out of the library". Mr. Benson said, "that will do it, it isn't suppose to, but that will do it". When I presented my medical restrictions to him, signed by Dr. Capps, he said, "looks like they really did want you out of there, you can't work here". He said that he would email Mr. McShan but as long as I was on his roaster, I needed to report to work. Mr. Benson told me several days later that Mr. McShan said he did not have any place else to put me. Factually untrue since new inmates arrive weekly, new inmates have been assigned to education, and kitchen positions remain vacant.

The following week I passed Ms. Blakely in the camp hallway and told her of my reassignment, Dr. Capps medical restrictions, and Mr. McShan's "I don't care" comments. I told her that the timing was troubling and retaliation needed to be considered a possible motive. I then expounded on the breakdown in getting case law request from Ms. Cox, her challenges and irritations towards my requests, and the public knowledge, amongst the staff, concerning the law suit. She commented, "it appears you should not be assigned to the warehouse". Ms. Blakely then walked away without further comment. The following day, I was informed by Ms. Milton that all copying request would cost me 15¢ a sheet, by order of Ms. Blakely, because they were not required to help legal activities.

I made a third "sick call" because of the severe fluid (swelling) in the damaged elbow. Mr. Weaver said he wanted to check with Dr. Capps since my elbow was not responding to the medical draining of the fluid, two antibiotic treatments, and anti-inflammatory treatments. Mr. Weaver and I discussed how the warehouse position would not promote any healing but he said there was nothing he could do about my work assignment. He suggested that I present my medical restrictions to him everytime I go to work.

Robert Mihailovich                     Date: 1/26/07

AFFIDAVIT OF ROBERT MIHAILOVICH
FCI  Seagoville  Reg.  No.  33446
P.O. Box 9000, Seagoville TX 75159

I, Robert Mihailovich, being of sound mind, over the age of Twenty-One(21) years of age, and having personal knowledge to attest to such, do so Attest, Affirm, and state under Penalty of Perjury that the following is true and correct, and that knowing the difference between truth and untruth do state the following facts; **THAT:**

It was documented on a BP-9, hand delivered and presented to Mr. McShan, that I was a plaintiff against the BOP in a recently filed suit. On Mr. McShan's first full work day, after receiving the BP-9, I was fired from my education/law-library job and transferred to the warehouse.

It is documented in my medical records that the week before this transfer, I suffered an arm injury resulting from a fall caused by dizziness which ended in a blackouts. My elbow was greatly swollen, possibly fractured, and collecting large volumes of fluids. Mr. Weaver performed two separate procedures to remove the excessive fluid and ordered X-Rays. According to Mr. Weaver, on 1/24/07, the x-ray results have not come back from the radiologist and a fracture is still a possibility. Dr. Capps came over to see me and upon learning that I was transferred to the warehouse provided me a form listing a number of medical restrictions and instructed me to give them to my counselor, Mr. McShan. Dr. Capps told me that I was medically restricted from working in the warehouse. Dr. Capps said his short term concern was to prevent additional injury to the arm until it healed. Dr. Capps continue to say, but that is not the sole reason for the medical restrictions and that his primary concern was a possible work injury caused by my blindness, cronic high blood pressure, and dizziness.

Two of the medical restrictions are "to avoid steps" and not to lift anything "over 15 pounds". Mr. McShan, who is often not available to inmates, could not be reached by me until after the Martin Luther King holiday, at which time I managed to get into his office. I asked about my reassignment and he said Ms Cox and he agreed to reassign me. I asked, "why the warehouse". Mr. McShan replied that he made that decision "because it was a good place for me". . I presented him with a BOP form, signed by Dr. Capps, listing out my medical restrictions. I told him that Dr. Capps explicitly told me that I was medically unfit to be unloading trucks, moving heavy boxes, and stacking products in the warehouse. I told Mr. McShan that the medical restrictions advised avoiding steps and the warehouse was the only work area that required climbing steps.

Mr. McShan said, "**I don't care** you'll remain assigned to the

warehouse." Mr. McShan then excused me from his office. I left a copy of the form listing out the medical restrictions on the corner of Mr. McShan's desk as I left his office.

On my report date to the warehouse, Mr. Benson, asked; "what are you doing here, I didn't request anyone, did you asked to work in the warehouse". I told him that I was fired from my education/law-library job and suddenly reassigned to him. He asked, "what did you do". I said, "I filled a law suit against the BOP and I they want me out of the library". Mr. Benson said, "that will do it, it isn't suppose to, but that will do it". When I presented my medical restrictions to him, signed by Dr. Capps, he said, "looks like they really did want you out of there, you can't work here". He said that he would email Mr. McShan but as long as I was on his roaster, I needed to report to work. Mr. Benson told me several days later that Mr. McShan said he did not have any place else to put me. Factually untrue since new inmates arrive weekly, new inmates have been assigned to education, and kitchen positions remain vacant.

The following week I passed Ms. Blakely in the camp hallway and told her of my reassignment, Dr. Capps medical restrictions, and Mr. McShan's "I don't care" comments. I told her that the timing was troubling and retaliation needed to be considered a possible motive. I then expounded on the breakdown in getting case law request from Ms. Cox, her challenges and irritations towards my requests, and the public knowledge, amongst the staff, concerning the law suit. She commented, "it appears you should not be assigned to the warehouse". Ms. Blakely then walked away without further comment. The following day, I was informed by Ms. Milton that all copying request would cost me 15¢ a sheet, by order of Ms. Blakely, because they were not required to help legal activities.

I made a third "sick call" because of the severe fluid (swelling) in the damaged elbow. Mr. Weaver said he wanted to check with Dr. Capps since my elbow was not responding to the medical draining of the fluid, two antibiotic treatments, and anti-inflammatory treatments. Mr. Weaver and I discussed how the warehouse position would not promote any healing but he said there was nothing he could do about my work assignment. He suggested that I present my medical restrictions to him everytime I go to work.

_Robert Mihailovich_
Robert Mihailovich

Date: _1/26/07_

Exhibit

M-3

RECEIVED
WARDEN'S OFFICE
OCT 10 2006
FCI SEAGOVILLE

ROBERT L MIHAILOVICH, 33446-177
SEAGOVILLE FCI    UNT: CAMP    QTR: S02-027L
2113 NORTH HWY 175
SEAGOVILLE,  TX 75159

Remedy 425024

RECEIPT - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 19, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTH CENTRAL REGIONAL OFFICE

TO  : ROBERT L MIHAILOVICH, 33446-177
      SEAGOVILLE FCI    UNT: CAMP    QTR: S02-027L

THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID       : 425024-R1
DATE RECEIVED   : SEPTEMBER 14, 2006
RESPONSE DUE    : OCTOBER 14, 2006
SUBJECT 1       : COMMUNITY CORRECTIONS CENTER REFERRALS
SUBJECT 2       : OTHER COMMUNITY PROGRAMS
INCIDENT RPT NO:

CASE NO. 425024-R1        PART B-RESPONSE

You are appealing the Warden's response to your request to be immediately placed in a Residential Reentry Center (RRC).

We have thoroughly reviewed your appeal and find the Warden adequately addressed your concerns. A review of your records indicates you were sentenced in the Northern District of Texas on August 29, 2005, to a 21-month sentence for Mail Fraud and Aiding and Abetting. You are currently scheduled to release from the Bureau of Prisons on June 27, 2007, via Good Conduct Time and have a pre-release preparation date of May 4, 2007. Your pre-release preparation date is the earliest date you are permitted to transfer to a Residential Reentry Center (RRC).

As the Warden indicated, your Unit Team is preparing your referral for RRC placement and will submit it to the Community Corrections Office in the near future. Your acceptance date will be established by the Community Corrections Office and may not be earlier than May 4, 2007, as indicated above.

Based on the above information, your request for relief is denied.

In the event you are dissatisfied with this response, you may appeal to the Bureau of Prisons, Administrative Remedy Section, 320 First Street, N.W., Washington, D.C. 20534. Your appeal must be received in that office within 30 days from the date of this response.

_____10/04/06_____
Date

G. Maldonado, Jr.
Regional Director

**SENSITIVE - LIMITED OFFICIAL USE**

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __Mihailovich, Robert L.__ __33446-177__ __Camp__ __Seagoville, TX 75159__
       LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

**Part A - REASON FOR APPEAL**

I respectfully appeal your decision not to consider me for Community Custody and/or Home Confinement. I have outline a legal argument and my personal circumstances to demonstrate that such placement would be in accordance with the law and in the publics overall best interest. I disagree with the Warden's interpretation and finding, and with the Region's support of such same interpretation and findings. I request a reconsideration of the decision and ask via this appeal that you place me into Community Custody and/or preferably Home Confinement.

SENT: Registered/Certified Mail Return Receipt 7000 1670 0004 8741 3569

Respectfully Submitted,

__10/11/06__
DATE

_Robert Mihalovich_
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

 

 

DATE                   GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

Request: To be considered for in_ _iate transfer to a CCC with a preferen__ for Home Confinement.

Every Circuit, in which litigation filed challenging the DOJ December 13, 2002 Memorandum as having any legal standing, has ruled that all assumptions and interpretations are erroneous and invalidated it as a defense to deny either initial placement or transference of an inmate into a Community Correction Center or Home Confinement to serve their sentence in part or in whole.

In Iacaboni v USA 251 F.Supp.2d 1015 (page 1018) the court stated, "the suggestion that the old approach was unlawful is simply false." On page 1025 of the same case the court stated, "In short, what the BOP could do from 1965 to 1987 – in terms of designation – under the old statue, it can now do under the new law. Nothing has changed. Community confinement constitutes one form of imprisonment and a community confinement facility is a penal or correction facility. Even without this history, the plain language of §3621 obviously covers a community confinement facility, and no whisper of anything to the contrary can be found anywhere, in anything Congress has said. Congress intended by this language to authorize the BOP, when it receives an offender to serve a term of imprisonment, to consider a community confinement designation if appropriate – period."

Since, the court has given affirmation to the intent of Congress that the BOP is obligated to consider me for a CCC including home confinement, I respectfully asked if you applied the guidelines recommended by congress and if you have specifically considered me to serve my sentence of confinement in a CCC.

Also, as the Supreme Court recognized in Reno v Koray 515 U.S. 50, 63, 115 S.CT 2021, 132 L.Ed.2d 46, "the critical litmus concerning the definition of imprisonment is weather offenders always remain subject to control of the Bureau." The Supreme court reaffirmed that offenders in community confinement, including home confinement, are subject to BOP control.

Chief Justice Rehnquist noted, "that BOP control is the touchstone of imprisonment and the BOP exercises complete control over all offenders placed in community corrections. They are imprisoned."

Moreover, on page 206 of Monchan v Winn 276 F.Supp.2d 196 also reaffirms that "prison can mean community confinement, or even home detention."

Several courts and circuits have defined imprisonment as being identified under the custody of the BOP. In Golding v Winn 383 F.3d 17 (2004) the circuit court stated that. "Under the Sentencing Reform Act, it is not the place of imprisonment that determines weather offender is imprisoned, but fact and nature of offender's sentence, and identify of custodian, i.e. Bureau of Prisons (BOP) 18 U.S.C.A. § 3621(a)."

Furthermore, in the original OLC Memorandum, that erroneously created this havoc, according to Goldings v Winn, ." assume[d] arguendo that a community correction center, halfway house, or other forms of community confinement may constitute a penal or correctional facility under provision 18 U.S.C. § 3621(b) and conceded that in an earlier opinion the OLC had, declined to draw a distinction between residential community facility and a secured facility with respect to BOP authority."

A significant mountain of court rulings are mounting against the BOP of continuance policies under the OLC Memorandum which is resulting in deliberate indifference concerning the true interpretation and intent of the law.

I conclude that the BOP had, and continues to have, the obligation under U.S. law, to consider me for community confinement both at the time of my placement and currently, and I respectfully asked you to remedy this error by immediately placing me in home or community confinement for the remainder of my sentence.

Robert Mihailovich 3346-177

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Mihailovich, Robert L.    33465-177    Camp    Seagoville TX 75159
        LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

I say soberly and in sincerity that the BOP has abandoned it's lawful obligation under title 18 Section 3624(c) to consider me for home confinement or into a Community Custody Center (CCC). Furthermore, in Section 28 of Pub. Law 98-473 the express will and intent of Congress supporting 18 U.S.C. 3621(b) is that sentencing "**execution**", an exclusive BOP responsibility, should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society". Before, the 12/13/2002 CCC Memorandum, I would have been considered and placed into home confinement or a CCC in accordance with the application of law and the intent of Congress. For nearly nine (9) months of court, with the recommendation of the prosecutor, released me without bail, on my own recognizance, and without supervision, both before and after sentencing, because I was a non threat to society and fell into the guidelines of 18 U.S.C. 3624(c). The BOP is deliberately holding me in "indifference" to it's lawful obligation, in "indifference" to the intent of Congress, in "indifference" to recent court rulings, and in "indifference" to the interest of society. I request to be released, under the custody of the BOP or some type of supervisory release, into home confinement or a CCC. I reserve the right to pursue my lawful rights in the courts and to seek money damages, if the BOP continues it's "indifference" to the law, the intent of Congress, and your lawful obligation to me concerning this consideration. Thank you very much for your timely consideration of this matter. (sent certified/return receipt 7099 3220 0008 4255 1795)

9/13/04
DATE                                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE                                    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE    CASE NUMBER: 425024-1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT: _____

DATE                                    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

Exhibit

M-4

**INMATE REQUEST TO STAFF MEMBER**                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| Mr. Crowe, Durant, and Douglas | August 8, 2006 |
| **FROM:** Robert Mihailovich | **REGISTER NO.:** 33446-177 |
| **WORK ASSIGNMENT:** Education | **UNIT:** Camp |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Because of the Dec 13, 2002 DOJ Memorandum the BOP stopped considering inmates for Community Custody or Home Confinement Placement as a place of incarceration or custody. Many courts have universally struck down this erroneous interpretation of the law and they have reaffirmed that the BOP both can and should be considering inmates to CCC or home confinement as a designation of sentencing. I have medical issues that can not or is not well taken care of in my current confinement. I suddenly went blind in one eye with a 50% probability of gone blind in the 2nd eye according to university doctors. This condition requires timely monitoring and testing that Seagoville has demonstrated that they can not manage. The courts have not imposed a sentence of blindness on me and neither should the BOP. Also, I have business concerns that are becoming insolvent in my "inability" to interact with society under the rules at this facility. Investors stand to suffer the loss of their IRA(s) and other investments unless I have the ability to interact, intercede, and socialize concerns and issues timely. It is in the interest of others and society as a whole that "historical" BOP procedures and placement considerations be reinforced concerning individual inmates for "constructive" instead of "distructive" custody. The BOP should not impose a sentencing more severe then is absolutely necessary on individuals, which is my case would include potential blindness, insolvency to businesses and others, and the burden of civil litigations well into the future, especially since congress has authorized a remedy for these circumstances. (see attachment)

I respectfully request the application of law that requires the least confinement possible which is in my case would be home confinement or a CCC as a place of BOP custody. Please diligently consider my request.

(Do not write below this line)    *Remedy 423376*

DISPOSITION:

| Signature Staff Member: | Date: |
|---|---|
|  |  |

Record Copy - File; Copy - Inmate                                        Replaces BP-148 of OCT 86

Request: To be considered for immediate transfer to a CCC with a preference for Home Confinement.

Every Circuit, in which litigation filed challenging the DOJ December 13, 2002 Memorandum as having any legal standing, has ruled that all assumptions and interpretations are erroneous and invalidated it as a defense to deny either initial placement or transference of an inmate into a Community Correction Center or Home Confinement to serve their sentence in part or in whole.

In Iacaboni v USA 251 F.Supp.2d 1015 (page 1018) the court stated, "the suggestion that the old approach was unlawful is simply false." On page 1025 of the same case the court stated, "In short, what the BOP could do from 1965 to 1987 - in terms of designation - under the old statue, it can now do under the new law. Nothing has changed. Community confinement constitutes one form of imprisonment and a community confinement facilty is a penal or correction facilty. Even without this history, the plain language of §3621 obviously covers a community confinement facility, and no whisper of anything to the contrary can be found anywhere, in anything Congress has said. Congress intended by this language to authorize the BOP, when it receives an offender to serve a term of imprisonment, to consider a community confinement designation if appropriate - period."

Since, the court has given affirmation to the intent of Congress that the BOP is obligated to consider me for a CCC including home confinement, I respectfully asked if you applied the guidelines recommended by congress and if you have specifically considered me to serve my sentence of confinement in a CCC.

Also, as the Supreme Court recognized in Reno v Koray 515 U.S. 50, 63, 115 S.CT 2021, 132 L.Ed.2d 46, "the critical litmus concerning the definition of imprisonment is weather offenders always remain subject to control of the Bureau." The Supreme court reaffirmed that offenders in community confinement, including home confinement, are subject to BOP control.

Chief Justice Rehnquist noted, "that BOP control is the touchstone of imprisonment and the BOP exercises complete control over all offenders placed in community corrections. They are imprisoned."

Moreover, on page 206 of Monchan v Winn 276 F.Supp.2d 196 also reaffirms that "prison can mean community confinement, or even home detention."

Several courts and circuits have defined imprisonment as being identified under the custody of the BOP. In Golding v Winn 383 F.3d 17 (2004) the circuit court stated that. "Under the Sentencing Reform Act, it is not the place of imprisonment that determines weather offender is imprisoned, but fact and nature of offender's sentence, and identify of custodian, i.e. Bureau of Prisons (BOP) 18 U.S.C.A. § 3621(a)."

Furthermore, in the original CLC Memorandum, that erroneously created this havoc, according to Goldings v Winn, "assume[d] arguendo that a community correction center, halfway house, or other forms of community confinement may constitute a penal or correctional facility under provision 18 U.S.C. § 3621(b) and conceded that in an earlier opinion the CLC had, declined to draw a distinction between residential community facility and a secured facility with respect to BOP authority."

A significant mountain of court rulings are mounting against the BOP of continuance policies under the CLC Memorandum which is resulting in deliberate indifference concerning the true interpretation and intent of the law.

I conclude that the BOP had, and continues to have, the obligation under U.S. law, to consider me for community confinement both at the time of my placement and currently, and I respectfully asked you to remedy this error by immediately placing me in home or community confinement for the remainder of my sentence.

Robert Mihailovich 33446-177

RESPONSE TO INMATE REQUEST TO STAFF

MIHAILOVICH, Robert
Reg. No. 33446-177
Unit - Camp

This is in response to your Inmate Request to Staff dated August 8, 2006, in which you are requesting an immediate placement in a Community Corrections Center or home confinement. You indicate you have medical problems which cannot be addressed at our facility and business responsibilities which you cannot meet due to your incarceration.

A review of policy reveals that the Bureau of Prisons does not have the statutory authority to place in community confinement an offender who has been sentenced to a term of imprisonment. On December 13, 2002, the U.S. Department of Justice, Office of Legal Counsel, provided the BOP with a memorandum which stated that our practice of transferring an offender to a non-prison site for a period, not to exceed six months, of the last 10% of there sentence, is unlawful. Therefore, you request for an immediate CCC placement is denied. However, you will be referred for placement range of 30 to 55 days. If your medical needs cannot be met at our facility, then Health Services can initiate a transfer to a medical facility.

_____          08-08-2006
D. Crowe, Case Manager                      Date

U.S. DEPARTMENT OF JUSTICE  Case 3:09-cv-02268-JDB   Document 1-4  Filed 04/24/2009  Page 28 of 78   REQUEST FOR ADMINISTRATIVE REMEDY

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

**From:** Mihailovich, Robert L.    33446-177    Camp    Seagoville TX 75159
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST** Please see original cop-out with continuation page and informal resolution for request details. Again, Section 3621 endows the BOP with considerable discretion to designate prisoners anywhere the BOP decides is appropriate; considering only five factors listed in §3621. Concerning 18 U.S.C. §3621(b)(1) it is well known that Seagoville's inmate population well exceeds it's design capacity; concerning §3621(b)(2), I am a non violent offender; concerning §3621(b)(3) I am over 50 yrs old with no prior record; concerning §3621(b)(4), the court itself spoke of the "non necessary" of monitoring me for alcohol or drugs use. The court considered me a non flight risk and released me for nearly nine months without posting any bond and no supervisory conditions both before and after sentencing. I am an out-custody inmate, housed in a camp without walls, fences, or policy violations. Transferring me to a CCC or Home Confinement represents no risk to the Gov't or the public. My release is not only within the guidelines of Title 18 Section §3621 but is in the Gov't, BOP, and societies best interest and would fulfill both the intent and spirit of the law drafted by the U.S. Congress and endorsed by the President of the United States. Therefore, I respectfully appeal the decision not to release me into CCC or Home confinement.

_8/10/06_
DATE                                  SIGNATURE OF REQUESTER

**Part B– RESPONSE**

THIS IS A COPY FOR SUBMITTAL WITH BP-10

I hand delivered my BP-9 to my Counselor and Unit Team on 8/10/2006 without receiving a response. I received back a response to my "informal resolution" on 8/8/2006. I attached four (4) copies each of my original cop-out, informal resolution continuation page (attachment), and answer from Team Unit in response to my written informal resolution.

I exceeded the requirements of the Administrative Remedy Process and even allowed extra time for a response. In addition to giving extra time, I dropped a written copy-out to my unit team asking for a response to my BP-9 on the "response due date deadline" and I personally spoke to my counselor after the response deadline. In my presence he had the Unit Secretary access the network and verified that no response receipt existed in the system for my BP-9.

Therefore, a due process failure according to 28 CFR Section 40.7(e) grants me the right to appeal the "no answer" and "no response" to my BP-9. The attached, blue copies of the BP-9, are copies of the original BP-9 submitted on August 10, 2006.

_____
DATE                                WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**THIRD COPY: RETURN TO INMATE**         CASE NUMBER: 423376-F1

CASE NUMBER: 423376-F1

**Part C– RECEIPT**

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

AFFIDAVIT OF ROBERT MIHAILOVICH
FED I.D. 33446-177 P.O. Box 9000
SEAGOVILLE, TX 75159

I, ROBERT MIHAILOVICH, being of sound mind, over the age of Twenty One (21) years of age, and having personal knowledge to attest to such, do so Attest, Affirm, and under Penalty of Perjury that the following is true and correct, and that knowing the difference between truth and untruth do state the following facts:

THAT: On September 20, 2006; I received, see attachment, a formal "Rejection Notice - Administrative Remedy" letter under the subject intitled "Community Correction Center Referrals" which is enclosed and now incorporated as part of this Affidavit and BP-11.

The form incorrectly rejects for the following reasons:

REJECTION REASON 1 :  "You must first file a BP-9 request through the institution for the Warden's review and response before filing an appeal at this level." I provided a true copy of my original BP-9, see same said copy here enclosed and attached, along with the filing of the now rejected BP-10. I not only provided a true copy of my BP-9 but also provided that I hand delivered my BP-9 to my Counselor and Unit Team on 8/10/2006 without receiving a response back. Therefore, the aforesaid reason given for rejecting the BP-10 is in error because I have complied with this condition and my BP-10 was properly submitted.

REJECTION REASON 2(a) :  "You did not provide a copy of your institutional administrative remedy request (BP-9) form..." I provided a true copy of my original BP-9, see blue BP-9 form enclosed, and included it along with all required attachments in the submission and filing of the now rejected BP-10.  The same said copy is included in the submission and filing of this BP-11 for consideration and resolution.  Therefore, I have complied with this requirement and my BP-10 was properly submitted for consideration and resolution.

REJECTION REASON 2(b) :  "and a copy of the (BP-09) response from the Warden." In addition to providing a copy of the original BP-9 as an attachment to the properly submitted BP-10, I clearly stated that no response was forth coming from the Warden within the statutory time limits, which is a method and means of effectively denying the request and is and of it's self a negative response. Therefore, I properly opened my BP-10 appeal by saying, "A 28 CFR Section 40.7(e) due process violation grants the right to appeal the 'no answer' and 'no response' to my BP-9, which I hand delivered to my Counselor and Team Case Manager on 8/10/06." These comments can be found on the originally submitted BP-10 here enclosed and time stamped "received Sep 6-2006". Furthermore, provided was the affirmation that I exceeded the requirements of the Administrative Remedy Process and even allowed extra time for a response. In addition to giving extra time, I dropped a written cop-out to my Unit Team asking for a response to the same said BP-9 on the response due date deadline and I personally spoke to my Counselor after the response deadline asking for a response from the Warden.

My team "Case Manager", Mr. Crowe and my Counselor, Mr. McShan, were both personally involved in the management of my BP-9 for presentation to the Warden. Concerning my written request presented to my team through Mr. Crowe, the Camp Case Manager, for a status, I was informed that it was the Warden's office responsibility to communicate back and there was nothing he could do to secure an answer for me. In a follow up inquiry to Mr. McShan, the Camp Counselor and the individual personally responsible for submittal of all BP-9 for response, the Unit Secretary was asked to access the Lan network and check for a response receipt. Upon accessing the system she replied to the inquiry by stating that there was no existing response receipt, although the deadline had already past. These same said comments and facts were and are documented in the original submittal of the now rejected BP-10 to Region and are here again made available to you through the submittal of this BP-11.

CONCLUSION : I have been careful to comply with the Administrative Remedy Program and I have not failed in my obligations to the process. In fact, I exceeded my requirements by patiently allowing additional time for a response and by interceding twice in an effort to secure said answer that is now cited as the cause of the rejection of my BP-10. It is not my obligation to provide a response back to a properly submitted BP-9 but the Warden's responsibility to provide a timely response to a properly submitted BP-9; therefore I submit this BP-11 as a properly filed appeal and denial of my properly submitted BP-10. Refusal to accept this properly and timely appeal will be deemed by me as an effective denial and would conclude my obligation to the Administrative Remedy Program and preserve my rights under the Prison Reform Litigation Act.

Robert Mihailovich
Fed I.D. 33446-177
P.C. Box 9000
Seagoville, TX 75159

Date: 9/24/06

U.S. Department of Justice

Central Office Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

| From: | Mihailovich, Robert L. | 33446-177 | Camp | Seagoville TX 75159 |
|-------|------------------------|-----------|------|---------------------|
|       | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL** The formal rejection of my properly filed BP-10, see attached affidavit of facts, constitutes a constructive denial of the appeal filed against my properly filed BP-9. Therefore, I submit this BP-11 as a properly filed appeal of such a denial. Both the 8th Cir in Fults v Sanders, (No. 05-3490 4/5/06) and the 3rd Cir in Woodall v Fed Bureau of Prisons, 432 F.3d 235 have affirmed that the BOP has the obligation to consider me for Community Custody, including Home Confinement. It also ruled, "that the BOP's adapted new regulation that states that, in a 'categorical exercise of discretion', it will transfer inmates to CCC placement only during the last 10 percent of their term" is unlawful. I respectfully submit that if you honestly measure me against the five considerations found in 18 U.S.C. 3621(b), that my custody level warrants "community custody" and that I should be immediately transferred into a Community Custody Center or into Home Confinement. The intent of Congress is clear and affirms that an individual such as myself should not be retrained from meaningful employment and from being a net contributor to family and society by a more restictive custody level then required by law. I respectfully request that you honestly and fairly apply the lawful intent of Congress and exercise your discretion under 18 USC 3621(b) by placing me into Home Confinement and/or a Communicty Custody Center. Submitted Certified Mail Return Receipt 7000 1670 0004 8741 4986

9/22/86
DATE

_Robert L. Mihailovich_
SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____
DATE

_____
GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

U.S. Department of Justice

Federal Bureau of Prisons

Regional Administrative Remedy Appeal

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| From: | Mihailovich, Robert L. | 33446-177 | Camp | Seagoville, TX 75159 |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**    A 28 CFR Section 40.7(e) due process violation"the right to appeal the "no answer" and "no response" to my BP-9, which I submitted and hand delivered to my counselor and team case manager on 8/10/06. Twenty seven days with no answer is far in excess of the twenty day limitation to answer. Please see copy of my informal resolution and BP-9 for the details of my request.   I say soberly and in sincerity that the BOP has abandoned it's lawful obligation under Title 18 Section 3621(b) to consider me for home confinement or a "CCC". Furthermore, in Section 239 of Pub. Law 98-473 the express will and intent of Congress supporting 18 U.S.C. 3621(b) is that sentencing "execution", an exclusive BOP responsibility, "should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society". Before the 12/13/2002 OLC Memorandum, I would have been considered and placed in home confinement or a CCC in accordance with the application of law and the intent of Congress. For nine (9) months the court, with the recommendation of the prosecutor, released me without bail, on my own recognizance, and without any supervision, because I was a non threat to society and fell into the guidelines of 18 U.S.C. 3621(b). The BOP is deliberately holding me in indifference to it's responsibility, in indifference to Congress, in indifference to recent Court rulings, and in indifference to the interest of society. I request to be released, under the custody of the BOP, into home confinement or a CCC. I reserve the right to pursue my lawful rights in the Courts and to seek money damages if the BOP continues it's indifference to the law, the intent of Congress, and my rights.

| 7/7/2006 | Robert L. Mihailovich |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**

---

| DATE | REGIONAL DIRECTOR |
|---|---|

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 423376-R1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: _____

Exhibit

M-5

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Mihailovich, Robert L.         33446-177         Camp         Seagoville TX 75159
LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.         UNIT         INSTITUTION

**Part A– INMATE REQUEST**          7320.01 plainly states, "Title 18 Section 3624(c) of the USC allows inmates to be placed into home confinement for pre-release purposes:". 7320.01 also elaborates that Title 18 Section 3621 grants the BOP the statutory authority to place an inmate into a home confinement program at anytime during the sentencing term. It further declares that "home confinement is a time of testing and an opportunity for inmates to assume increasing levels of personal responsibilities...".   I qualify as a candidate for home confinement under section 3624(c) and 3621(b) and it would not be in the interest of the Gov't, of the BOP, of Society, of the Inmate, or in keeping with the intent of Congress to pre-release me into a ½ way house.  I respectfully request that I am pre-released into home confinement on May 4, 2007 and not unnecessarily into a ½ way house.  I have been married for 30 years, have strong stable family relationships, own my own home, and have employment upon release.  The courts stated that there are no requirements for me to be tested, monitored, or to participate in any drug program.  The courts also affirmed that I was a non risk to society and released me on my own recognizes before and after sentencing without bail or supervision or restrictions of any kind for nine (9) months prior to my self surrender into the custody of the BOP. I respectfully request that my integration back into society and a responsible life is not impeded by the wasting of tax dollars by the unwanting and unnecessary intervention of a ½ way house upon pre-release.

Hand delivered 9/14/06 to McShan                      Robert L. Mihailovich camp
DATE                                                    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

---

DATE                                                    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 428719-F1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CASE NUMBER: 428719-F1

Part C– RECEIPT
Return to: Mihailovich, Robert    33446-177    Camp    SEA
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**MIHAILOVICH, Robert L.**                          **FCI Seagoville, Texas**
**Register No.: 33446-177**
**Remedy No.: 428719-F1**

This is in response to your Request for Administrative Remedy receipted September 28, 2006, in which you are requesting to be placed directly on home confinement on your pre-release preparation date, rather than in a Residential Re-entry Center.

Program Statement 7320.01, Home Confinement, states that all inmates referred to Community Corrections are eligible to be considered for home confinement placement. If you wish, when your Unit Team prepares your referral for Community Corrections placement, they will request that you be placed directly on home confinement. The CCM will select the program most likely to meet your needs, whether it is a Residential Re-entry Center or direct placement on home confinement, giving consideration to such factors as eligibility, cost effectiveness, geography, and other management variables.    Your Unit Team will inform you of the CCM's decision.

Based on the above information, this response is for informational purposes only.

If you are not satisfied with this response, you may appeal to the South Central Regional Director, 4211 Cedar Springs Road, Suite 300, Dallas, Texas 75219, via BP-DIR-10, within 20 calendar days of the date of this response.

_____                          _10/18/06_____
Dan Joslin, Warden                                              Date

Exhibit

M-6

REJECTION NOTICE – ADMINISTRATIVE REMEDY

DATE: NOVEMBER 9, 2006

RECEIVED
WARDEN'S OFFICE

NOV 1 3 2006

FCI SEAGOVILLE

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTH CENTRAL REGIONAL OFFICE

TO  : ROBERT L MIHAILOVICH, 33446-177
      SEAGOVILLE FCI     UNT: CAMP    QTR: S02-027L
      2113 NORTH HWY 175
      SEAGOVILLE,  TX 75159

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 428713-R2         REGIONAL APPEAL
DATE RECEIVED   : NOVEMBER 3, 2006
SUBJECT 1       : MEDICAL CARE - DELAY OR ACCESS TO
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT PROVIDE A COPY OF YOUR   INSTITUTION
                 ADMINISTRATIVE REMEDY REQUEST (BP-9) FORM OR  A COPY
                 OF THE (BP-09) RESPONSE FROM THE WARDEN.

REJECT REASON 2: SEE REMARKS.

REJECT REASON 3: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 15 DAYS OF THE DATE OF THIS REJECTION NOTICE.

REMARKS         : AS PREVIOUSLY STATED, RECORDS SHOW THE WARDEN'S
                  RESPONSE WAS SIGNED 10-17-06.

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __Mihailovich, Robert L.__        __33446-177__        __Camp__        __Seagoville TX 75159__
　　　　LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL**        (signed 1/8/07 delivered 1/16/07)    Medical problem continue unresolved.  My medical condition is getting progressively worst.  I have made sick call several times complaining about dizziness which caused me to blackout and fall twice.  High volumes of fluid have been drained from my elbow twice and this new problem remains unresolved.  The swelling in my elbow has not improved, experiences incremental deterioration, and staff has stopped treatment attempts because the injury is not responding.  I met the camp doctor, Mr. Capps, for the first time concerning my CT-Scan, told him I was concerned about the blackouts.  (a body bouncing off the ground is not good).  I attempted to readdressed, to Doctor Capps, the fact that nothing has been done concerning my "Eagle Syndrome", reiterating that I have never received an exam.  He looked at my medical chart and acknowledged that nothing was done and commented that, concerning the CT-Scan report, the report recommended some additional actions and maybe that would show something.  He instituted work related medical restrictions that have went ignored, so far, by staff.  Request: outside medical intervention.  My arm needs seen by a specialist.  My dizziness and blackouts have not been, but needs to be, diagnosed.  Reimbursement for all copying cost and postage imposed on me by the BOP to submit remedies.  Money damages for any neglect, malpractice, and physical damages.

__Dropped in institutional mailbox 1/26/07__
　　　　　　　　DATE        SIGNATURE OF REQUESTER

**Part B - RESPONSE**

　　　　　　　　DATE        GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE        CASE NUMBER: _____

**Part C - RECEIPT**
        CASE NUMBER: _____

Return to: _____
　　　　　　　LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

MIHAILOVICH, Robert        REG. NO. 33446-177          FILED: 11-30-06

428713-R3                  PART B-RESPONSE

You are appealing the Warden's response to your complaint in
which you state you have been experiencing chronic redness,
itching, and sometimes blistering on your face and neck for ten
months.  You request evaluation by a specialist to diagnose and
treat your condition.

Consultation with the staff physician and a review of your
medical record were conducted.  Your medical record reveals you
have been diagnosed with seborrhic dermatitis, which is a chronic
condition.  You were last evaluated by medical staff for this
condition in September 2006, and topical medication was
prescribed.  If you continue to experience symptoms after
completing the medication, you are encouraged to request
reevaluation by medical staff.

The staff physician has determined you have received appropriate
and timely medical care, and a referral to a dermatologist is not
medically necessary.

Our review finds the Warden has appropriately addressed your
concerns, and we concur with the Warden's comments.

You are entitled to no further relief, and your appeal is denied.

In the event you are not satisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal must
be received in that office within 30 days from the date of this
response.

_____1/8/07_____          _____
Date                              G. Maldonado, Jr.
                                  Regional Director

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **Mihailovich, Robert L.**         **33446-177**         **Camp**         **Seagoville TX 75159**
         LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.         UNIT         INSTITUTION

**Part A- INMATE REQUEST**         I have a well documented medical condition that has not received proper attention.    It has been noted to the court, documented in my PSI, reported to Seagoville Medical Staff at the time of my self surrender on 12/19/2005, reported to medical again in January after arriving at the camp, and reported several additional times to Camp medical staff.    I have Eagle Syndrome which, in part causes the calcification of the Carotid artery, and possibly leading to a number of medical misfortures if neglected. To date I have not been able to get a examination nor diagnoses nor evaluation of any kind. I have not even been able to manage a direct conversation with a physician, although it has been reported to me that it was called to the camp doctor's attention.   The court sentenced me into the custody of the BOP, but did not sentence me to be exposed to unwarranted medical risks and possible disabilities by the absence of consideration on such well documented and disclosed medical conditions and/or for the lack of proper and timely medical care and intervention.   I request that I am immediate referred to an out source who is well quailfied to  examine and evaluate this condition.   I preserve my rights to seek court intervention and money damages if the BOP neglects its lawful obligations in this matter. Can you please return me to my family unharmed upon my release from your custody. I have informally addressed this issue for 10 months, this is not a attempt to complain, and I hope you consider this as a legitimate concern that needs intervention. Much thanks for your time in this matter.  By permission of Mr. Crowe, delivered to McShan's inbox

    9/27/06
         DATE                                                    SIGNATURE OF REQUESTER

**Part B- RESPONSE**

         DATE                                                  WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                         CASE NUMBER: _____

                                                        CASE NUMBER: _____

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Mihailovich, Robert L.     33446-177     Camp     Seagoville, TX 75159
         LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL**     A 28 CFR 40.7(e) due process violation grants the right to appeal the 'No Answer' and No Response" of my Eagle Syndrome Medical BP-9, which I hand delivered to Mr. Crowe and into Mr. McShan's Camp inbox on 9/27/06, a full 36 days ago. On 10/23/06, after making several verbal and written requests of Mr. McShan and Ms. Blakely, I personally approached Ms. Blakely who used Ms. Milton's Lan computer and verified that my medical BP-9 was ignored and left unprocessed. My original BP-9, a copy of which is included along with the filing of this BP-10, was properly submitted 35 days ago without a response and therefore this BP-10 is properly submitted as an effective denial of my properly filed BP-9. Furhtermore, this properly filed BP-9 serves to support my previous and properly filed "sensitive" BP-9 which was denied on 9/27/06 and appealed as a BP-10 on 10/14/06; whereby, I alleged that individuals are impeding, obstructing, and denying my due process and Constitutional rights through such neglect or deliberate obstruction of the Administrative Remedy Program so outlined in the Prison Litigation Reform Act. The BOP should take notice that this submission is additional evidence and documentation of the allegations made in the "sensitive BP-9" wherein mentioned. Settlement: see original BP-9 herein included and attached, and I respectfully request the settlement asked for in my properly submitted but denied "sensitive BP-9" which was appealed and resubmitted as a BP-10. I also ask for an investigation and a response back concerning my ignored and/or discarded medical BP-9, herein included and attached, and for corrective and disciplinary action to "bring into conformity" the Admin. Remedy Program at the Seagoville FCI. I preserve my right to seek money damanges as a defense of my constitutional rights to due process and the denial of the right of due process.

Dropped in FCI Institutional Mail 11/1/06

_____     _Robut Mihailov_ Jr.
      DATE                            SIGNATURE OF REQUESTER

**Part B - RESPONSE**

 

_____              _____
       DATE                               REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                       CASE NUMBER: 428713-R2

**Part C - RECEIPT**                                      CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

NOV 03 2006

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: | Mihailovich, Robert L. | 33446-177 | Camp | Seagoville TX 75159
--- | --- | --- | --- | ---
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A - REASON FOR APPEAL**   DECLARATION: STATE OF TEXAS, COUNTY OF DALLAS. ** AFFIDAVIT OF FACT ** I, ROBERT MIHAILOVICH, being of sound mind, over the age of Twenty-One (21), and having personal knowledge of such, do hereby attest, affirm, and state, under perjury, that the following is true and correct. THAT: The the arguments presented in the enclosed BP-9 and BP-10 are factually true. I properly filed a BP-9 and went above and beyond my responsibility in an attempt to get the FCI to properly respond. That I submitted a "sentitive BP-9" which has progressed through the Administrative Remedy Program, whereby the FCI has both actual and constructive knowledge that my properly submitted BP-9(s) are being either impeded or obstructed in violation of U.S. Law. I have done everything required by law, by policy, and by personal insistence to attempt the proper and lawful processing, consideration, and answering of my properly submitted medical concern. The FCI has never responded to any of my written or verbal request concerning this medical matter or the matter of obstruction presented in my sensitive BP-9, 10, 11. My medical condition is ongoing and continuing without an intervening response or medical examination. There has not been a supposed response dated 10/17/06 as indicated on your rejection notice of 11/13/06. Furthermore, in a one on one conversation with Ms. Blakely concerning this alleged response, it was verified by her in my presence that no such response was provided on this subject and also acknowledged that the BP-9 in question has no return receipt processed in the system. She promised a follow up which I waited for before submitting the BP-10 appeal which you have rejected. Settlement requested in BP-9 & 10 with the additional request so outlined in my sensitive BP-9, herein mentioned, and an investigation into process failings of the this properly submitted and enclosed BP-9.

Dropped in FCI Legal Mail Box 11/18/06 postage pre-paid

_____
DATE

*Robert L. Mihailovich*

_____
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

# RECEIVED

DEC 1 1 2006

Administrative Remedy Section
Federal Bureau of Prisons

_____
DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 428713

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

Exhibit

M-7

**MIHAILOVICH, Robert L.**                                    **FCI Seagoville, Texas**
**Register No.: 33446-177**
**Remedy No.: 437378-F1**

This is in response to your request for Administrative Remedy receipted on December 20, 2006, wherein you allege unauthorized opening of outgoing special legal mail by the Camp Unit Manager and Inmate Systems Officer. Additionally, you are requesting money damages to abate the alleged abuse, be provided a federal Tort Claim Action form without further request, sanctions against those staff involved, return of your prepaid postage, your special mail be made timely due to the alleged unlawful seizure, and avoid criminal prosecution regarding Incident Report dated December 1, 2006.

Research reveals that on November 21, 2006, the Inmate Systems Officer retrieved two (2) government envelopes from the Camp mailbox addressed to the Administrative Remedy Coordinator at the South Central Regional Office and Bureau of Prisons Central Office, respectively. The envelopes were staff government envelopes with the institution return address clearly marked for "official business." They contained stamps and were deposited in the Camp mail depository which indicated they were not being used for staff official business. In accordance with Program Statement 5265.11, Correspondence, "inmates are responsible for filling out the return address completely on envelopes provided for inmate's use by the institution." Envelopes must include inmate's name, register number, name of institution, P.O. Box, City, State, and zip code. As the mail did not meet the criteria of the correspondence procedures required by policy, they were opened to ascertain the identity of the sender. All contents were returned to you in an appropriate mailing envelope. Regarding your request for reimbursement of postage, a request for return of postage cannot be submitted through the Administrative Remedy process. A Federal Tort Claims Act form is attached with this BP-9 response. The Incident Report against you was expunged by the Unit Disciplinary Committee.

As the documents were handled in accordance with established institution mail procedures, your request for Administrative Remedy is denied.

If you are not satisfied with this response, you may appeal to the South Central Regional Director, 4211 Cedar Springs Road, Suite 300, Dallas, Texas, 75219, via BP-DIR-10, within 20 calendar days of the date of this response.

D. Berkebile, Warden                                        Date

U.S. Department of Justice
Federal Bureau of Prisons

Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __Mihailovich, Robert L.___ ___33446-177___ __Camp___ __Seagoville TX 75159__
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL**     Dated 1/11/07 received 1/17/07. I appeal the Warden's response. The statue(s) provided and outlined in my BP-9 are clear and unambiguous. Lack of an inmate's return address is not cause to seize, open, and read "Special Mail", therefore it constitutes an illegal act. Since this was addressed to the BOP, Regional Director, there was no reason for the tampering and certainly the Regional Director was in a position to complain about a missing inmate return address if he thought there was a policy violation. You not only illegally tampered with my legal mail but also with the Regional Director's legal mail. I continue to seek relief as outlined in my submitted BP-9. I also request a photo copy of the envelopes, showing the addressee and postage, for my records and tort claim. I was shown this photo copy as part of a UDC hearing so I know it exists.

__Dropped in FCI Institutional legal mail 1/26/07__       _Robt M Mihailovich_
           DATE                                   SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____            _____
         DATE                                     REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _437378_

**Part C - RECEIPT**

                                               CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

**MIHAILOVICH, Robert L.**                                    **FCI Seagoville, Texas**
**Register No.: 33446-177**
**Remedy No.: 437378-F1**

This is in response to your request for Administrative Remedy receipted on December 20, 2006, wherein you allege unauthorized opening of outgoing special legal mail by the Camp Unit Manager and Inmate Systems Officer. Additionally, you are requesting money damages to abate the alleged abuse, be provided a federal Tort Claim Action form without further request, sanctions against those staff involved, return of your prepaid postage, your special mail be made timely due to the alleged unlawful seizure, and avoid criminal prosecution regarding Incident Report dated December 1, 2006.

Research reveals that on November 21, 2006, the Inmate Systems Officer retrieved two (2) government envelopes from the Camp mailbox addressed to the Administrative Remedy Coordinator at the South Central Regional Office and Bureau of Prisons Central Office, respectively. The envelopes were staff government envelopes with the institution return address clearly marked for "official business." They contained stamps and were deposited in the Camp mail depository which indicated they were not being used for staff official business. In accordance with Program Statement 5265.11, Correspondence, "inmates are responsible for filling out the return address completely on envelopes provided for inmate's use by the institution." Envelopes must include inmate's name, register number, name of institution, P.O. Box, City, State, and zip code. As the mail did not meet the criteria of the correspondence procedures required by policy, they were opened to ascertain the identity of the sender. All contents were returned to you in an appropriate mailing envelope. Regarding your request for reimbursement of postage, a request for return of postage cannot be submitted through the Administrative Remedy process. A Federal Tort Claims Act form is attached with this BP-9 response. The Incident Report against you was expunged by the Unit Disciplinary Committee.

As the documents were handled in accordance with established institution mail procedures, your request for Administrative Remedy is denied.

If you are not satisfied with this response, you may appeal to the South Central Regional Director, 4211 Cedar Springs Road, Suite 300, Dallas, Texas, 75219, via BP-DIR-10, within 20 calendar days of the date of this response.

D. Berkebile, Warden                                         Date

Exhibit

M-8

**U.S. DEPARTMENT OF JUSTICE**                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __Mihailovich, Robert L.__      __33446-177__      __Camp__      __Seagoville TX 75159__
         LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A– INMATE REQUEST**            Sensitive BP-9, continuation page, and three exhibits.  I am
justified in submitting this as a sensitive BP-9 because one or more individuals, who are
directly handling and/or managing my BP-9(s), is impeding, obstructing, or denying the
effective and timely processing of my BP-9(s). Either Mr. McShan, to whom I present my BP-
9(s) for initial processing, or Ms. Blakely who assignes my BP-9(s) for answering, is
delaying or disregarding the processing of my BP-9(s). Furthermore, there is a history and
pattern developing in that multiple BP-9(s) submittals are effected. This senstive BP-9 is
in and of itself submitted to address and correct the submittal, acknowledgment, and
timeliness in the administeration and oversight of the local Seagoville grievance and
Administrative Remedy Program. The Seagoville FCI has and continues to fail this inmate in
it's obligation and it's legal duty to timely process, acknowledge, and respond to said
inmates properly and timely submitted BP-9(s), either by design to deny due process or
through mismanagement.   In either case this inmate request that the B.O.P. take notice of
it's legal obligation and failure relating to the Administrative Remedy Program and that
you correct and abide by all it's legal requirements. And that any BP-9 submitted for
proper processing by this inmate, if deemed to be untimely and rejected because of such
failures to properly process by the Seagoville FCI, is immediately accepted for processing
and responded to quickly.

Dropped in institutional mail 9/16/06                      _Robert L Mihailovich_
DATE                                              SIGNATURE OF REQUESTER

**Part B– RESPONSE**

---

DATE                                    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                CASE NUMBER: _____

---

                                              CASE NUMBER: _____

**Part C– RECEIPT**

CONTINUATION PAGE; SENSITIVE BP-9:

**History:** On 8/8/06, I received a formal response to a informal resolution attempt (BP-8). A formal response letter was type written, dated and singed by Mr. Crowe, my case manager. The following day, I submitted a BP-9 along with 4 copies each of my original BP-8 and Mr. Crowe's dated and signed response. A couple of days later my BP-9 was returned by Ms. Blakely, incorrectly saying, I never attempted an informal resolution. I resubmitted the BP-9, without change, to Mr. McShan the same day. I received a formal "rejection notice" dated 8/14/06 from Ms. Blakely stating, "you did not attempt an informal resolution", which was untrue for the second time. I revisited Mr. McShan and resubmitted again without change and received another "rejection notice" from Ms. Blakely dated 8/15/06 stating the same cause. I again revisited Mr. McShan who told me to ignore the last notice. After the mandatory response date of 20 days elapsed, I received a notice that my BP-9 was received and processed on 8/25/06 a full 15 days after correctly submittal. On 8/29/06, I submitted my only other BP-9 and as of today, 9/15/06, I have not received any acknowledgement that my BP-9 has been received, accepted, or rejected; although it is now 17 days into the 20 mandatory response date. If I had not been insistent in nurturing my first BP-9 through the Seagoville FCI, my filing receipt would have reflected that I missed my PLRA filing deadline and my access to the remedy process and the court would have been procedurally impaired or barred. To preserve my rights concerning my first BP-9, I submitted a BP-10 to "regions" on 9/7/06, 28 days after submittal of my original BP-9, although an BP-9 acknowledgment was not received by me at that time. I followed up with a separate request for a BP-10 receipt (see attachment) but as of 9/15/06 there has been no acknowledgment of my BP-10 or the request for a receipt. My concern over the due process failure(s) of my BP-9(s) found me dropping a communication to Ms Blakely on 9/7/06 (see attachment) and a written request for a status to my camp team (see attachment). As of 9/14/06, there has been no acknowledgment of my second BP-9 or either of my requests for acknowledgment (see attachments).

**My Concerns:** To preserve my rights under the Prison Litigation Reform Act (PLRA), an inmate must correctly follow the Administrative Remedy Program. Therefore the courts have ruled that it is mandatory and a matter of law that the B.O.P. follows the Administrative Remedy Program as instituted and outlined. If I do not follow the grievance process then my claim will be procedurally barred and I will suffer a forfeiture of claim, therefore if my grievance is the object of mismanagement by the B.O.P. staff the effect is the same as if I mismanaged the process myself. There is either a general collapse in the grievance process at the Seagoville Camp or individuals in the administrative process are so negligent that they are preventing my access to lawful rights through the Prison Litigation Reform Act by effectively procedurally barring me by their mismanagment of the Administrative Remedy Program. In either case this due process failure by the BOP will procedurally bar me of my rights and needs to be corrected and the B.O.P. needs to come into compliance with the law. It is alarming to have a 20 day filing limitation and then discovering it is taking the BOP over 20 days to acknowledge receipt of my BP-9(s), which subjects me to potential abuse and provides the B.O.P. with an opportunity of refusing to acknowledge my submittals within the mandatory deadlines. This presents a real risk to the inmate and provides a means and method of preventing an inmate from addressing his grievance and denies him his right to timely and open access to the court in violation of the law of the United States. My BP-9(s) are not of a petty nature, are not a personal attack on staff or conditions, and both center on issues of a timely nature that are important to this inmate. I have never asked for any privileges nor do I expect any, but I do expect the B.O.P. and it's staff to respect my constitutional right to access the court and that they effectively administer to their lawful obligations to me in accordance with the law.

**Settlement:** I request that the B.O.P. take notice of it's legal obligation and it's legal failures relating to the Administrative Remedy Program and that you correct and abide by all it's legal requirements. That you provide oversight and implement retraining to instruct employees in their legal obligations and duties to inmates, and to act to protect said rights and obligations in the future. Since access to the PLRA and the grievance process constitutes a legal right belonging to the inmate and is a legal obligation and duty of the B.O.P., and is not a mere inmate privilege nor a mere policy infraction if violated, it is requested that an investigation be initiated and offenders are disciplined for willful neglect, indifference to inmates constitutional rights, and for known and/or unknown violations of the law.

**Furthermore,** I have been damaged and I continue to be damaged by the due process failure and mismanagement of the Administrative Remedy Program, so administered to by the Seagoville FCI; Therefore, I reserve the right to litigate these concerns and violations and to seek money damages for past, current, and future violations of my rights to due process under the law.

Robert Mihailovich

U.S. Department of Justice — Case 1:06-cv-02268-JDB    Document 2-6 Filed 04/16/2007    Central Office Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __Mihailovich, Robert L.__      __33446-177__      __Camp__      __Seagoville, TX 75159__
LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL**   On 10/3/06, I received back a properly submitted but rejected Sensitive BP-9 for cause, "The issue you raised is not sensitive". I appeal and resubmit the original Sensitive BP-9 as a timely and properly submitted BP-11 together with original continuation page and exhibits. You should not have rejected my properly submitted Sensitive BP-9 because 28 CFR § 40.7(c) specifically says, "No inmate or employee who appears to be involved in the matter shall participate in any capacity in the resolution of the grievance." I specifically mentioned both Mr. McShan, the camp counselor who is the first point of contact in the submission and management of BP-9(s), or Ms. Blakely, the Admin. Remedy Coordinator who is the second point of contact in the submission and management of same said BP-9(s), as individuals responsible for the violation of my Constitutional Rights. This complaint is of a constitution nature, it is real, and I plead that it is accepted and addressed in a serious manor. Since the submission of the original and rejected Sensitive BP-9 this inmate has been threatened, along with other inmates, and actually ordered by an angry and aggressive Seagoville FCI employee, Mr. McShan, not to ever submit another BP-9 for the remainder of my term of custody. Please see new BP-11 continuation page and Affidavit for details. Settlement: Please see original Sensitive BP-9 continuation page. Also, money damages for the deliberate and continued violation of my constitutionally protected rights for both actual and punitive damages to acknowledge and correct these violations for all inmates, now and in the future. A deliberate and continued violation of the law warrants the dismissal of any such law enforcement agent responsible for the keeping and administration of Constitutionally protected rights. Additionally, named individual in this complaint is the Admin. Remedy Coordinator South Central Region Officer, signature unreadable.

__Dropped in institutional mail 10/14/06__      _Robert Mihailovich_
DATE      SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____      _____
DATE      GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE      CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT:_____

AFFIDAVIT OF ROBERT MIHAILOVICH, FED. I.D. 33446-177
P.O. BOX 9000, SEAGOVILLE, TX. 75159-9000

I, ROBERT LEE MIHAILOVICH, being of sound mind, over the age of Twenty One (21) years of age, and having personal knowledge to attest to such, do so Attest, Affirm, and State under Penalty of Perjury that the following is true and correct, and that knowing the difference between truth and untruth do state the following facts, THAT:

Every BP-9 ever submitted by me has been impeded, obstructed, or denied in violation of B.O.P. published policy and/or in violation of The Code of Federal Regulations. Furthermore, any attempt to achieve a verbal or written status concerning the "out of process" or "no receipt" condition of said filed BP-9(s) have all went unacknowledged at every level.

The first BP-9 submitted by this inmate was rejected several times because Mr. McShan acknowledged that he failed to abide by local policy in which he was required to submit an informal resolution. On September 21, 2006, I learned from Ms. Blakely that Mr. McShan continued the effective practice of denying the processing of my BP-9(s) by not submitting, in accordance with local policy, the required informal resolution form. Ms. Blakely, informed me that Mr. McShan was and is of himself the sole point of contact to accomplish all informal resolutions. I learned in that meeting that Mr. McShan, exclusively, controlled the initial access to the entire Remedy process and any open access to Regions, National, and the Court in the grievance process. Ms. Blakely confirmed in our meeting that I had met all the requirements and that I properly submitted my BP-9(s) for processing in accordance with policy. Nevertheless, the Seagoville FCI never at any time complied with either local, national, or the CFR by bring my three BP-9(s) into timely compliance.

On September 25, 2006, I was specifically approached by Mr. McShan who, in anger put his face in my face, and said to me in a confrontational and aggressive manor, in the presence of other inmates, stated to me, "I am warning you for the last time Mihailovich that you better not ever submit another BP-9 to me. And I mean for the remainder of your tenure as long as I (meaning himself) am at the this camp. If you know what is good for you you better not ever and go tell your writ writing friends. And oh yea, thanks to you, I was taking tomorrow off and now I have to come into work". Shortly afterwards, William Kennedy, an inmate who observed Mr. McShan's conduct towards me stated, "I have been down for over ten years and I have never seen a staff member go off on an inmate like McShan went off on you."

I have been effectively denied, via threats and by direct order, access to the Remedy process and access to the Court in violation of my Constitution Rights by Mr. McShan and others who will allow such conduct to prevail.

Since that time Mr. McShan has denied me legal calls, has refused to begin the processing of my furlough request, and attempts to get a status on a properly submitted medical BP-9 dated September 27, 2006 has went unanswered and unacknowledged with no return receipt from the Remedy Coordinator although it is now nearly three weeks old.

_Robert Mihailovich_    Date: _10/14/06_
Robert Mihailovich

Exhibit

M-9

**TO: (Name and Title of Staff Member)**
Mr. Douglas

**DATE:** 8/10/2006

**FROM:**
Robert Mihailovich

**REGISTER NO.:**
33446-177

**WORK ASSIGNMENT:**

**UNIT:**
Camp

**SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)**

Cop-out request asking for immediate access to law materials and if unsuccessful money damages. I have an Aug 29, 2006 dead line to complete and file my 2255 Appeal. I made a request for numerous case laws from Ms Cox specific to my Appeal. I marked on most request my deadline and told them that these cases are not in the camp law library. On 8/10/2006 around 3:30 office Mack told me he had a message from Ms Cox. He informed me that Ms Cox said my requests would cost $56.00 "do you want them". I expressed an opinion that it was my understanding that I was entitled to access legal resource. He said "do you want them" and I said I would like to go talk to someone before answering. He said, "no" you have to tell me right now because I have to call her so do you want them or not. I told him that I am being forced to say no and ask him if he can tell her to send back a copy of my cop out requesting to case law back so that I would know what was being refused since the camp doesn't provide duplicate copy out forms to inmates. He told me he would not relay that request when he calls. A few minutes passed and I walked to Mack's office and as he was picking up the phone I made a comment to him informing him that I don't need paper copies, just access to the case laws and ask him if he would ask Ms Cox if she could make the books available. He said he would not ask her. I ask if he would reconsider asking her to send back a copy of my original request since I do not have a copy of what case law was requested and I do not want the loss of my research. He said no. Do I have the right to access law materials necessary to complete a timely appeal or not?
P.S. Is it possible for the camp to provide a better quality cop-out form in the future? So I provide something a little more readable to you.

CC: Crowe; Durant; to my file.

**(Do not write below this line)**

**DISPOSITION:**

— **Signature Staff Member** —

**Date**

**Record Copy - File; Copy - Inmate**
**(This form may be replicated via WP)**

This form replaces BP-148.070 dated Oc
and BP-S148.070 APR 94

RESPONSE TO INMATE REQUEST TO STAFF

MIHAILOVICH, Robert
Reg. No. 33446-177
Unit - Camp

This is in response to your Inmate Request to Staff dated August 10, 2006, in which you request access to legal documents that aren't available in the camp law library. Ms. Cox will speak to you today, August 17, 2006, and you can tell her exactly what you are requesting. She stated you have received some of the documents you requested.

I hope this addresses your concerns.

_____        08-17-2006
Walter B. Douglas, Executive Assistant        Date

From : Robert Mihailovich
Inmate : 33446-177
Cop-Out attachment to: Ms Cox - Legal Library.
CC: Mr Crowe; Ms Durant; Mr. Douglas; Warden Joslin

Request for immediate access to law resources and case law, if not then
money damages.

Your actions of not allowing me access to case laws is a violation of my
constitutional rights.  Furthermore, the Supreme Court in Bounds vs Smith
430 U.S. 817   guarantees inmates be provided with tools to attack their
sentences, directly or collaterally ...  Neither is it lawful for you to
impair my right to access the courts by denying materials and/or responding
in an untimely mannor. I informed you via several cop-out forms that I have
an 2255 appeal deadline of 8/29/2006 and that material requested is not in
the Camp library.  How you provide access is up to you, you can copy the
case law requested or you can provide the books, or you can bring me to the
books. By law you have to make them available without impairment and on a
timely basis.  The law also reaffirms that you are not allowed to damage me
or my efforts in this regards.  Furthermore, CFR 28 §543.11 states, "The
Warden 'shall' make materials in the inmates law library available ...
including evenings and weekends." The word "shall" when refering to the law
is a mandatory requirement.   In Bounds vs Smith it was affirmed that
prisoners "must" be permitted court access that is "adequate, effective, and
meanful". The U.S. Supreme court also affirmed in Bounds v Smith 430 U.S.
817, 829, 97 S.CT 1491 that prison officials must "assist inmates in the
preparation and filing of meaningful legal papers   by providing prisoners
with adequate law libraries or adequate assistance from persons ..."    It
goes without saying that your refusal to provide me the required case laws
requested is inadequate and insufficient in many ways.  Please provide back
to me a copy of the cop-outs whereby I requested access to case laws to
finish my 2255 appeal.  The official BP-s148.055 Inmate Request to Staff
Form, commonly called a Cop-Out is a carbon form so the inmate can retain a
copy for future reference. The photo copy of the form does not allow me to
retain a copy, therefore I need you to send back my request form so that I
can assess the impacts that your decision will have on my case.  I believe
you are suppose to respond back to me in all cases and I would like to have
your refusal to assist in writing please. I would also like you to come into
compliance with the same governing bodies and laws that imprisoned me at
Seagoville. I hope you understand that denying me of my constitutional
rights to free and open access is a serious matter.  You certainly are
damaging my opportunity to appeal and since the law only allows me one
appeal opportunity this is a very serious concern of mine. I have one chance
and one chance only of making my case, via case law, in written petition to
the court.  A appeal that is not adequately prepared and is poorly written
will not prevail, because this opportunity in law can only prevail by
investigating and citing previous case law, and any other effort will result
in a denial by the Courts.  You must assist and provide free and open access
to any and all material avaialble in the "inmates" law library.  It is not
your law library to deny, it is the inmates library according to law and you
are required to provide me full access.


Robert Mihailovich                          Date

From : Robert Mihailovich
Inmate 33446-177
August 29, 2006

### BP-9 ATTACHMENT

(Please see attachment dated 8/10/06) The issues continue therefore Petitioner requests: To have an effective, actively supervised, and **"enforced"** policy and practice that guarantees inmates at the Seagoville Camp timely and adequate access to law reference materials, helps, and aids in accordance with federal law. To be provided with carbon paper so that inmates can retain a copy of law assistance requests for their own tracking since most request for case law and assistance isn't respond to or provided back to requestor. To have properly trained staff in the position of assistance, since that is a mandate of the courts (see attachment). Individuals rendering aid, including supervisors, are to be properly trained and thorough in their willingness and ability to provide aid, their responsibility goes much further then just providing or not providing access to case law and/or making photo copies or not making photo copies. To provide a list of legal aid forms, motions, etc. that are available from or to the compound and that should be made available, but is not, to the Camp, since we at the camp are blind to all materials and aids available at the compound. For the Warden to initiate an organizational meeting that will repair and implement a strong communication channel back to inmates requesting Law Resources and Legal Aid. For the Warden to become involved in assuring the all Campers be provided their lawful right to free, meaningful, timely, and unrestricted access to the courts through legal resources and legal aid so inmates at the camp can defend their constitutional freedoms. For a trained and well versed representative from the compound's law library staff to visit or be available to communicate, explain, answer questions, and provide assistance to the camp on a weekly basis and to educate campers in processes, procedures, and what is available, how to obtain aid, how to access the courts, and information in accordance with the law. Petitioner hereby affirms that he has been damaged and continues to be damaged by a denial of timely, meaningful, and open access to law material, legal aid, and access to the courts in the defense of my constitutional rights and freedoms. Therefore, Petitioner reserves the right and option to pursue his constitutional rights and to hold institutions and individuals responsible who refuse to cooperate with the pursue of said rights, including court actions and money damages.

Exhibit

M-10

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: **Mihailovich, Robert L.**      **33446-177**      **Camp**      **Seagoville, TX 75159**
　　　LAST NAME, FIRST, MIDDLE INITIAL　　　REG. NO.　　　UNIT　　　INSTITUTION

**Part A - REASON FOR APPEAL**

I respectfully appeal your decision not to consider me for Community Custody and/or Home Confinement. I have outline a legal argument and my personal circumstances to demonstrate that such placement would be in accordance with the law and in the publics overall best interest. I disagree with the Warden's interpretation and finding, and with the Region's support of such same interpretation and findings. I request a reconsideration of the decision and ask via this appeal that you place me into Community Custody and/or preferably Home Confinement.

SENT: Registered/Certified Mail Return Receipt 7000 1670 0004 8741 3569

Respectfully Submitted,

_10/11/06_
DATE

_Robert M. Mihailovich_
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

# RECEIVED

### OCT 1 7 2006

**Administrative Remedy Section
Federal Bureau of Prisons**

_____
DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
　　　LAST NAME, FIRST, MIDDLE INITIAL　　　REG. NO.　　　UNIT　　　INSTITUTION

SUBJECT: _____

_____
DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

**Administrative Remedy No. 425024-A1**
**Part B - Response**

You request to be placed in a Community Corrections Center (CCC) placement or preferably Home Confinement for the remainder of your sentence.

Our review reveals the Warden and the Regional Director accurately addressed the issues raised. The issue pertaining to Residential Reentry Center placement is within the authority of the Warden and the Regional Director, as set forth in Program Statement 7310.04, <u>Community Corrections Center (CCC) Utilization and Transfer Procedure</u>. Recommending a Residential Reentry Center placement and the length involves the review of several factors including an inmate's current offense, institutional adjustment, individual needs, public safety, and existing resources.

In accordance with 28 CFR § 570.21, the Bureau of Prisons will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months. Records indicate your projected release date is June 27, 2007. Your Unit Team will determine an appropriate recommendation based on your prerelease date and your transitional needs. We concur with the responses provided. Accordingly, your appeal is denied.

December 12, 2006
_____
Date

Harrell Watts, Administrator
National Inmate Appeals

RECEIVED
WARDEN'S OFFICE
OCT 10 2006
FCI SEAGOVILLE

ROBERT L MIHAILOVICH, 33446-177
SEAGOVILLE FCI    UNT: CAMP    QTR: S02-027L
2113 NORTH HWY 175
SEAGOVILLE,  TX 75159

MIHAILOVICH, Robert          Reg. No. 33446-177    RECEIPTED: 09-14-06

CASE NO. 425024-R1          PART B-RESPONSE


You are appealing the Warden's response to your request to be
immediately placed in a Residential Reentry Center (RRC).

We have thoroughly reviewed your appeal and find the Warden
adequately addressed your concerns.  A review of your records
indicates you were sentenced in the Northern District of Texas on
August 29, 2005, to a 21-month sentence for Mail Fraud and Aiding
and Abetting.  You are currently scheduled to release from the
Bureau of Prisons on June 27, 2007, via Good Conduct Time and
have a pre-release preparation date of May 4, 2007.  Your pre-
release preparation date is the earliest date you are permitted
to transfer to a Residential Reentry Center (RRC).

As the Warden indicated, your Unit Team is preparing your
referral for RRC placement and will submit it to the Community
Corrections Office in the near future.  Your acceptance date will
be established by the Community Corrections Office and may not be
earlier than May 4, 2007, as indicated above.

Based on the above information, your request for relief is
denied.

In the event you are dissatisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal must
be received in that office within 30 days from the date of this
response.


_____10/04/06_____                    _____
Date                                  G. Maldonado, Jr.
                                      Regional Director


                **SENSITIVE - LIMITED OFFICIAL USE**

MIHAILOVICH, Robert          Reg. No. 33446-177     RECEIPTED: 09-14-06

CASE NO. 425024-R1          PART B-RESPONSE

You are appealing the Warden's response to your request to be
immediately placed in a Residential Reentry Center (RRC).

We have thoroughly reviewed your appeal and find the Warden
adequately addressed your concerns.  A review of your records
indicates you were sentenced in the Northern District of Texas on
August 29, 2005, to a 21-month sentence for Mail Fraud and Aiding
and Abetting.  You are currently scheduled to release from the
Bureau of Prisons on June 27, 2007, via Good Conduct Time and
have a pre-release preparation date of May 4, 2007.  Your pre-
release preparation date is the earliest date you are permitted
to transfer to a Residential Reentry Center (RRC).

As the Warden indicated, your Unit Team is preparing your
referral for RRC placement and will submit it to the Community
Corrections Office in the near future.  Your acceptance date will
be established by the Community Corrections Office and may not be
earlier than May 4, 2007, as indicated above.

Based on the above information, your request for relief is
denied.

In the event you are dissatisfied with this response, you may
appeal to the Bureau of Prisons, Administrative Remedy Section,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal must
be received in that office within 30 days from the date of this
response.


_____10/04/06_____                    _____
Date                                     G. Maldonado, Jr.
                                         Regional Director


**SENSITIVE - LIMITED OFFICIAL USE**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Mihailovich, Robert L.          33546-177          Camp          Seagoville TX 7___
         LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL**

I say solemly and in sincerity that the BOP has abandoned it's lawful obligation under title 18 Section 3621 to consider me for home confinement or into a Community Custody Center (CCC). Furthermore, in Section 3624 has law been the express will and intent of Congress respecting 18 U.S.C. 3621(c) is that sentence 'execution', an exclusive BOP responsibility, should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society. Before, the 12/13/2002 OLC Memorandum, I would have been considered and placed into home confinement or a CCC in accordance with the application of law and the intent of Congress. For nearly nine (9) months in court, with the recommendation of the prosecutor, released me without bail, on my own recognizance, and under supervision, both before and after sentencing, because I was a non threat to society and fell into the guidelines of 18 U.S.C. 3621(c). The BOP is deliberately making me in 'indifference' to it's lawful obligation, in 'indifference' to the intent of Congress, in 'indifference' to recent court rulings, and in 'indifference' to the interest of society. I request to be released, under the custody of the BOP or some type of supervisory release, into home confinement or a CCC. I reserve the right to pursue my lawful rights in the courts and to seek money damages, if the BOP continues it's 'indifference' to the law, the intent of Congress, and your lawful obligation to me concerning this consideration. Thank you very much for your prompt consideration of this matter. (sent certified/return receipt 7006 3220 0005 4256 1795)

___9/14/__          _____
         DATE          SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____          _____
         DATE          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE          CASE NUMBER: 425024-__

**Part C - RECEIPT**

          CASE NUMBER: _____

Return to: _____
         LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION
SUBJECT: _____

_____          _____
         DATE          SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN          BP-230(13)
         JUNE 2002



U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Mihailovich, Robert L. ____ 33446-177 ____ Camp ____ Seagoville TX 75159
    LAST NAME, FIRST, MIDDLE INITIAL _____ REG. NO. _____ UNIT _____ INSTITUTION

**Part A - REASON FOR APPEAL**

I say soberly and in sincerity that the BOP has abandoned it's lawful obligation under title 18 Section 3621(b) to consider me for home confinement or into a Community Custody Center (CCC). Furthermore, in Section 239 of Pub. Law 98-473 the express will and intent of Congress supporting 18 U.S.C. 3621(b) is that sentencing "execution", an exclusive BOP responsibility, "should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society". Before, the 12/13/2002 OLC Memorandum, I would have been considered and placed into home confinement or a CCC in accordance with the application of law and the intent of Congress. For nearly nine (9) months the court, with the recommendation of the prosecutor, released me without bail, on my own recognizance, and without supervision, both before and after sentencing, because I was a non threat to society and fell into the guidelines of 18 U.S.C. 3621(b). The BOP is deliberately holding me in "indifference" to it's lawful obligation, in "indifference" to the intent of Congress, in "indifference" to recent court rulings, and in "indifference" to the interest of society. I request to be released, under the custody of the BOP or other types of supervisory release, into home confinement or a CCC. I reserve the right to pursue my lawful rights in the courts and to seek money damages, if the BOP continues it's "indifference" to the law, the intent of Congress, and your lawful obligation to me concerning this consideration. Thank you very much for your timely consideration of this matter. (sent certified/return receipt 7099 3220 0009 4256 1795)

____9/13/06____        _Robert L. Mihailovich_
    DATE                    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____
    DATE

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

**Part C - RECEIPT**

REGIONAL DIRECTOR

CASE NUMBER: __425024-R1__

CASE NUMBER: _____

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL _____ REG. NO. _____ UNIT _____ INSTITUTION

SUBJECT: _____

_____        _____
    DATE                    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

RECEIVED    SEP 1 4 2006

BP-230(13)
JUNE 2002
USP LVN

PRINTED ON RECYCLED PAPER

**MIHAILOVICH, Robert**                                    **FCI Seagoville, Texas**
**Register No.: 33446-177**
**Remedy No.: 425024-F1**

This is in response to your Request for Administrative Remedy receipted August 25, 2006, in which
you are requesting to be allowed to serve the remainder of your sentence in a Residential Reentry
Center (RRC) or on home confinement.

On August 29, 2005, you received a 21-month sentence for Mail Fraud and Aiding and Abetting in
U.S. District Court in Dallas, Texas. The Court ordered you committed to the custody of the Bureau
of Prisons to serve your sentence. The Bureau of Prisons does not have the authority to place an
offender who has been sentenced to a term of imprisonment into immediate community confinement.
A memorandum dated December 13, 2002, from the U.S. Department of Justice, Office of Legal
Counsel, states that Title 18, sections 3621 and 3622, of the U.S. Code, state that the Bureau of
Prisons does not have the general authority to transfer offenders to a non-prison site for more than
the last 10% of their sentence, not to exceed six months. In your case, your 10% date is May 4,
2007. Your Unit Team is currently preparing your RRC referral for placement of 30 - 55 days. The
amount of time you will receive within that range is determined by the Community Corrections
Office, based on bedspace availability at the RRC.

Based on the above information, your request for immediate placement in an RRC or on home
confinement status is denied.

If you are not satisfied with this response, you may appeal to the South Central Regional Director,
4211 Cedar Springs Road, Suite 300, Dallas, Texas 75219, via BP-DIR-10, within 20 calendar days
of the date of this response.

_____                          _____
Dan Joslin, Warden                                              Date 9/7/06

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Mihailovich, Robert L. | 33446-177 | Camp | Seagoville, TX |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**    Please see original cop-out for additional detail. Again, Section 3621 endows the BOP with considerable discretion to designate prisoners anywhere the BOP decides is appropriate, considering only five factors listed in §3621. Concerning 18 U.S.C. § 3621(b)(1) it is well known that Seagoville's inmate population well exceeds it's design capacity; concerning (b)(2) I am a non violent offender; concerning (b)(3) I am over 50 Yrs old with no prior record; concerning (b)(4) the court themselves spoke of the non necessary of monitoring me for alcohol or drug use.  The courts considered me a non flight risk and released me for seven months without posting any bond and no supervisor conditions both before and after sentencing. I am an out custody inmate , housed in a camp without walls, fenses or policy offenses.  Transfering me to a CCC or home confinement represents no risk to Gov't or the public. My release is not only within the guidelines of 18 §3621 but is in the Gov't, BOP, and societies best interest and would fulfil both the intent and spirit of the law drafted by the U.S. Congress and endorsed by the President of the United States.  Therefore, I respectfully appeal the decision not to release me into a CCC or Home confinement.  Thank you for you consideration and timely response.

| August 10, 2006 | *Robert M Mihailovich* |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

| | |
|---|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**THIRD COPY: RETURN TO INMATE**                    CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| _____ | _____ |
|---|---|
| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |

BP-229(13)

RESPONSE TO INMATE REQUEST TO STAFF

MIHAILOVICH, Robert
Reg. No. 33446-177
Unit - Camp

This is in response to your Inmate Request to Staff dated August 8, 2006, in which you are requesting an immediate placement in a Community Corrections Center or home confinement. You indicate you have medical problems which cannot be addressed at our facility and business responsibilities which you cannot meet due to your incarceration.

A review of policy reveals that the Bureau of Prisons does not have the statutory authority to place in community confinement an offender who has been sentenced to a term of imprisonment. On December 13, 2002, the U.S. Department of Justice, Office of Legal Counsel, provided the BOP with a memorandum which stated that our practice of transferring an offender to a non-prison site for a period, not to exceed six months, of the last 10% of there sentence, is unlawful. Therefore, you request for an immediate CCC placement is denied. However, you will be referred for placement range of 30 to 55 days. If your medical needs cannot be met at our facility, then Health Services can initiate a transfer to a medical facility.

_____                    08-08-2006
D. Crowe, Case Manager                              Date

BP-A148.070
SEP 98

**INMATE REQUEST TO STAFF MEMBER**

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member)<br>Mr. Crowe, Durant, and Douglas | DATE:<br>August 8, 2006 |
|---|---|
| FROM:<br>Robert Mihailovich | REGISTER NO. :<br>33446-177 |
| WORK ASSIGNMENT:<br>Education | UNIT:<br>Camp |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Because of the Dec 13, 2002 DOJ Memorandum the BOP stopped considering inmates for Community Custody or Home Confinement Placement as a place of incarceration or custody. Many courts have universally struck down this erroneous interpretation of the law and they have reaffirmed that the BOP both can and should be considering inmates to CCC or home confinement as a designation of sentencing. I have medical issues that can not or is not well taken care of in my current confinement. I suddenly went blind in one eye with a 50% probability of gone blind in the 2nd eye according to university doctors. This condition requires timely monitoring and testing that Seagoville has demonstrated that they can not manage. The courts have not imposed a sentence of blindness on me and neither should the BOP. Also, I have business concerns that are becoming insolvent in my "inability" to interact with society under the rules at this facility. Investors stand to suffer the loss of their IRA(s) and other investments unless I have the ability to interact, interceed, and socialize concerns and issues timely. It is in the interest of others and society as a whole that "historical" BOP procedures and placement considerations be reinforced concerning individual inmates for "constructive" instead of "distructive" custody. The BOP should not impose a sentencing more severe then is absolutely necessary on individuals, which is my case would include potential blindness, insolvency to businesses and others, and the burden of civil litigations well into the future, especially since congress has authorized a remedy for these circumstances. (see attachment)

I respectfully request the application of law that requires the least confinement possible which is in my case would be home confinement or a CCC as a place of BOP custody. Please diligently consider my request.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member: | Date: |
|---|---|

Record Copy - File; Copy - Inmate

Replaces BP-148 of OCT 86

Request: To be considered for immediate transfer to a CCC with a preference for Home Confinement.

Every Circuit, in which litigation filed challenging the DOJ December 13, 2002 Memorandum as having any legal standing, has ruled that all assumptions and interpretations are erroneous and invalidated it as a defense to deny either initial placement or transference of an inmate into a Community Correction Center or Home Confinement to serve their sentence in part or in whole.

In Iacaboni v USA 251 F.Supp.2d 1015 (page 1018) the court stated, "the suggestion that the old approach was unlawful is simply false." On page 1025 of the same case the court stated, "In short, what the BOP could do from 1965 to 1987 - in terms of designation - under the old statue, it can now do under the new law. Nothing has changed. Community confinement constitutes one form of imprisonment and a community confinement facilty is a penal or correction facilty. Even without this history, the plain language of §3621 obviously covers a community confinement facility, and no whisper of anything to the contrary can be found anywhere, in anything Congress has said. Congress intended by this language to authorize the BOP, when it receives an offender to serve a term of imprisonment, to consider a community confinement designation if appropriate - period."

Since, the court has given affirmation to the intent of Congress that the BOP is obligated to consider me for a CCC including home confinement, I respectfully asked if you applied the guidelines recommended by congress and if you have specifically considered me to serve my sentence of confinement in a CCC.

Also, as the Supreme Court recognized in Reno v Koray 515 U.S. 50, 63, 115 S.CT 2021, 132 L.Ed.2d 46, "the critical litmus concerning the definition of imprisonment is weather offenders always remain subject to control of the Bureau." The Supreme court reaffirmed that offenders in community confinement, including home confinement, are subject to BOP control.

Chief Justice Rehnquist noted, "that BOP control is the touchstone of imprisonment and the BOP exercises complete control over all offenders placed in community corrections. They are imprisoned."

Moreover, on page 206 of Monchan v Winn 276 F.Supp.2d 196 also reaffirms that "prison can mean community confinement, or even home detention."

Several courts and circuits have defined imprisonment as being identified under the custody of the BOP. In Golding v Winn 383 F.3d 17 (2004) the circuit court stated that. "Under the Sentencing Reform Act, it is not the place of imprisonment that determines weather offender is imprisoned, but fact and nature of offender's sentence, and identify of custodian, i.e. Bureau of Prisons (BOP) 18 U.S.C.A. § 3621(a)."

Furthermore, in the original OLC Memorandum, that erroneously created this havoc, according to Goldings v Winn, "assume[d] arguendo that a community correction center, halfway house, or other forms of community confinement may constitute a penal or correctional facility under provision 18 U.S.C. § 3621(b) and conceded that in an earlier opinion the OLC had, declined to draw a distinction between residential community facility and a secured facility with respect to BOP authority."

A significant mountain of court rulings are mounting against the BOP of continuance policies under the OLC Memorandum which is resulting in deliberate indifference concerning the true interpretation and intent of the law.

I conclude that the BOP had, and continues to have, the obligation under U.S. law, to consider me for community confinement both at the time of my placement and currently, and I respectfully asked you to remedy this error by immediately placing me in home or community confinement for the remainder of my sentence.

Robert Mihailovich 33446-177

Request: To be considered for immediate transfer to a CCC with a preference for Home Confinement.

Every Circuit, in which litigation filed challenging the DOJ December 13, 2002 Memorandum as having any legal standing, has ruled that all assumptions and interpretations are erroneous and invalidated it as a defense to deny either initial placement or transference of an inmate into a Community Correction Center or Home Confinement to serve their sentence in part or in whole.

In Iacaboni v USA 251 F.Supp.2d 1015 (page 1018) the court stated, "the suggestion that the old approach was unlawful is simply false." On page 1025 of the same case the court stated, "In short, what the BOP could do from 1965 to 1987 - in terms of designation - under the old statue, it can now do under the new law. Nothing has changed. Community confinement constitutes one form of imprisonment and a community confinement facitly is a penal or correction facilty. Even without this history, the plain language of §3621 obviously covers a community confinement facility, and no whisper of anything to the contrary can be found anywhere, in anything Congress has said. Congress intended by this language to authorize the BOP, when it receives an offender to serve a term of imprisonment, to consider a community confinement designation if appropriate - period."

Since, the court has given affirmation to the intent of Congress that the BOP is obligated to consider me for a CCC including home confinement, I respectfully asked if you applied the guidelines recommended by congress and if you have specifically considered me to serve my sentence of confinement in a CCC.

Also, as the Supreme Court recognized in Reno v Koray 515 U.S. 50, 63, 115 S.CT 2021, 132 L.Ed.2d 46, "the critical litmus concerning the definition of imprisonment is weather offenders always remain subject to control of the Bureau." The Supreme court reaffirmed that offenders in community confinement, including home confinement, are subject to BOP control.

Chief Justice Rehnquist noted, "that BOP control is the touchstone of imprisonment and the BOP exercises complete control over all offenders placed in community corrections. They are imprisoned."

Moreover, on page 206 of Monchan v Winn 276 F.Supp.2d 196 also reaffirms that "prison can mean community confinement, or even home detention."

Several courts and circuits have defined imprisonment as being identified under the custody of the BOP. In Golding v Winn 383 F.3d 17 (2004) the circuit court stated that. "Under the Sentencing Reform Act, it is not the place of imprisonment that determines weather offender is imprisoned, but fact and nature of offender's sentence, and identify of custodian, i.e. Bureau of Prisons (BOP) 18 U.S.C.A. § 3621(a)."

Furthermore, in the origianl OLC Memorandum, that erroneously created this havoc, according to Goldings v Winn, ." assume[d] arguendo that a comunity correction center, halfway house, or other forms of community confinement may constitute a penal or correctional facility under provision 18 U.S.C. § 3621(b) and conceded that in an earlier opinion the OLC had, declined to draw a distinction between residential community facility and a secured facility with respect to BOP authority."

A significant mountain of court rulings are mounting against the BOP of continuance policies under the OLC Memorandum which is resulting in deliberate indifference concerning the true interpretation and intent of the law.

I conclude that the BOP had, and continues to have, the obligation under U.S. law, to consider me for community confinement both at the time of my placement and currently, and I respectfully asked you to remedy this error by immediately placing me in home or community confinement for the remainder of my sentence.

Robert Mihailovich 33446-177

Exhibit

M-11 thru M-15

CONTINUATION PAGE; SENSITIVE BP-9:

**History:** On 8/8/06, I received a formal response to a informal resolution attempt (BP-8). A formal response letter was type written, dated and singed by Mr. Crowe, my case manager. The following day, I submitted a BP-9 along with 4 copies each of my original BP-8 and Mr. Crowe's dated and signed response. A couple of days later my BP-9 was returned by Ms. Blakely, incorrectly saying, I never attempted an informal resolution. I resubmitted the BP-9, without change, to Mr. McShan the same day. I received a formal "rejection notice" dated 8/14/06 from Ms. Blakely stating, "you did not attempt an informal resolution", which was untrue for the second time. I revisited Mr. McShan and resubmitted again without change and received another "rejection notice" from Ms. Blakely dated 8/15/06 stating the same cause. I again revisited Mr. McShan who told me to ignore the last notice. After the mandatory response date of 20 days elapsed, I received a notice that my BP-9 was received and processed on 8/25/06 a full 15 days after correctly submittal. On 8/29/06, I submitted my only other BP-9 and as of today, 9/15/06, I have not received any acknowledgement that my BP-9 has been received, accepted, or rejected; although it is now 17 days into the 20 mandatory response date. If I had not been insistent in nurturing my first BP-9 through the Seagoville FCI, my filing receipt would have reflected that I missed my PLRA filing deadline and my access to the remedy process and the court would have been procedurally impaired or barred. To preserve my rights concerning my first BP-9, I submitted a BP-10 to "regions" on 9/7/06, 28 days after submittal of my original BP-9, although my BP-9 acknowledgement was not received by me at that time. I followed up with a separate request for a BP-10 receipt (see attachment) but as of 9/15/06 there has been no acknowledgment of my BP-10 or the request for a receipt. My concern over the due process failure(s) of my BP-9(s) found me dropping a communication to Ms Blakely on 9/7/06 (see attachment) and a written request for a status to my camp team (see attachment). As of 9/14/06, there has been no acknowledgement of my second BP-9 or either of my requests for acknowledgment (see attachments).

**My Concerns:** To preserve my rights under the Prison Litigation Reform Act (PLRA), an inmate must correctly follow the Administrative Remedy Program. Therefore the courts have ruled that it is mandatory and a matter of law that the B.O.P. follows the Administrative Remedy Program as instituted and outlined. If I do not follow the grievance process then my claim will be procedurally barred and I will suffer a forfeiture of claim, therefore if my grievance is the object of mismanagement by the B.O.P. staff the effect is the same as if I mismanaged the process myself. There is either a general collapse in the grievance process at the Seagoville Camp or individuals in the administrative process are so negligent that they are preventing my access to lawful rights through the Prison Litigation Reform Act by effectively procedurally barring me by their mismanagement of the Administrative Remedy Program. In either case this due process failure by the BOP will procedurally bar me of my rights and needs to be corrected and the B.O.P. needs to come into compliance with the law. It is alarming to have a 20 day filing limitation and then discovering it is taking the BOP over 20 days to acknowledge receipt of my BP-9(s), which subjects me to potential abuse and provides the B.O.P. with an opportunity of refusing to acknowledge my submittals within the mandatory deadlines. This presents a real risk to the inmate and provides a means and method of preventing an inmate from addressing his grievance and denies him his right to timely and open access to the court in violation of the law of the United States. My BP-9(s) are not of a petty nature, are not a personal attack on staff or conditions, and both center on issues of a timely nature that are important to this inmate. I have never asked for any privileges nor do I expect any, but I do expect the B.O.P. and it's staff to respect my constitutional right to access the court and that they effectively administer to their lawful obligations to me in accordance with the law.

**Settlement:** I request that the B.O.P. take notice of it's legal obligation and it's legal failures relating to the Administrative Remedy Program and that you correct and abide by all it's legal requirements. That you provide oversight and implement retraining to instruct employees in their legal obligations and duties to inmates, and to act to protect said rights and obligations in the future. Since access to the PLRA and the grievance process constitutes a legal right belonging to the inmate and is a legal obligation and duty of the B.O.P., and is not a mere inmate privilege nor a mere policy infraction if violated, it is requested that an investigation be initiated and offenders are disciplined for willful neglect, indifference to inmates constitutional rights, and for known and/or unknown violations of the law.

Furthermore, I have been damaged and I continue to be damaged by the due process failure and mismanagement of the Administrative Remedy Program, so administered to by the Seagoville FCI; Therefore, I reserve the right to litigate these concerns and violations and to seek money damages for past, current, and future violations of my rights to due process under the law.

Robert Mihailovich

**U.S. DEPARTMENT OF JUSTICE**        **FEDERAL BUREAU OF PRISONS**

INMATE REQUEST TO STAFF CDFRM

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| Blakely Admin Remedy Coordinator | 9/7/06 |
| FROM: | REGISTER NO.: |
| Robert Mihailovich | 33446-177 |
| WORK ASSIGNMENT: | UNIT: |
| | Camp |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Status Please:  On 8/29/06 I submitted a BP-9 concerning access to legal materal.

I have not received back a receipt or acknowledgement that it has been processed.

The previous BP-9 submitted to Mr. McShan on 8/10/06 was not processed and a

receipt returned to me until 8/28/06 which was two days before the mandatory

response deadline according to law and policy. Both state that these are to be

processed immediately and no later then the following day. There is a breakdown

somewhere.  Can I get a receipt back or an acknowledgement concerning the BP-9

submitted for processing and response dated 8/29/06 please.  Another concern

is that very few respond to cop-outs, can you please respond and return my cop -

out please.     * placed in institutional mail 9/7/06 CC: My file.

(Do not write below this line) *Robt Mihalah*

DISPOSITION:

*#28708*

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                          **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| Team (Crowe, McShan, Durant) | 9/7/07 |
| FROM: Robert Mihailovich | REGISTER NO.: 33446-177 |
| WORK ASSIGNMENT: | UNIT: Camp |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Can I please get a status on the filing of my BP-9 concerning access to legal materials submitted on 8/29/06. I am working on my appeal and other time sensitive issues and I am trying to comply with the law and BOP policy in accessing this information. Concerning the reason for this request, my last BP-9, submitted on 8/10/06, was not ticketed until 8/25/07, a full 15 days into the 20 day mandatory response deadline required by law & BOP policy. Law and policy provides that such submissions are required to be processed immediately and to take no longer then the following day. It now has been 9 days since the submission of this time sensitive BP-9 without an acknowledgment or a receipt back. The denial of access to law reference materials and case law is effecting my access the Court, properly complete my appeal, and hopefully obtain my freedom. Can you please help correct this failing and expedite the processing of my BP-9. Thank you for your help.

Hand delivered and presented at Team meeting.    CC: My file    _Robert Mihailovich_

---

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)                This form replaces BP-148.070 dated Oct 86

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| Mr Crowe | 9/20/06 |
| FROM: Robert Mihailovich | REGISTER NO.: 33446-177 |
| WORK ASSIGNMENT: | UNIT: CAMP |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

On 8/29/06, I submitted a BP-9 concerning access
to legal materials. It is well past the 20 day
response deadline and I have not received a
receipt, an acknowledgement, or a response.

Can I get a status on this?

Thank You

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Ms Blakely | DATE: 9/9/07 |
|---|---|
| FROM: Robert Mihailovich | REGISTER NO.: 33446-177 |
| WORK ASSIGNMENT: | UNIT: CAMP |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary.  Your failure to be specific may result in no action being taken.  If necessary, you will be interviewed in order to successfully respond to your request.)

Can I talk to you please.

Thanks

Robert Mihailovich

2nd Request.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate

Exhibit

M-16

AFFIDAVIT OF ROBERT MIHAILOVICH, FED. I.D. 33446-177
P.O. BOX 9000, SEAGOVILLE, TX. 75159-9000

I, ROBERT LEE MIHAILOVICH, being of sound mind, over the age of Twenty One (21) years of age, and having personal knowledge to attest to such, do so Attest, Affirm, and State under Penalty of Perjury that the following is true and correct, and that knowing the difference between truth and untruth do state the following facts, THAT:

Every BP-9 ever submitted by me has been impeded, obstructed, or denied in violation of B.O.P. published policy and/or in violation of The Code of Federal Regulations. Furthermore, any attempt to achieve a verbal or written status concerning the "out of process" or "no receipt" condition of said filed BP-9(s) have all went unacknowledged at every level.

The first BP-9 submitted by this inmate was rejected several times because Mr. McShan acknowledged that he failed to abide by local policy in which he was required to submit an informal resolution. On September 21, 2006, I learned from Ms. Blakely that Mr. McShan continued the effective practice of denying the processing of my BP-9(s) by not submitting, in accordance with local policy, the required informal resolution form. Ms. Blakely, informed me that Mr. McShan was and is of himself the sole point of contact to accomplish all informal resolutions. I learned in that meeting that Mr. McShan, exclusively, controlled the initial access to the entire Remedy process and any open access to Regions, National, and the Court in the grievance process. Ms. Blakely confirmed in our meeting that I had met all the requirements and that I properly submitted my BP-9(s) for processing in accordance with policy. Nevertheless, the Seagoville FCI never at any time complied with either local, national, or the CFR by bring my three BP-9(s) into timely compliance.

On September 25, 2006, I was specifically approached by Mr. McShan who, in anger put his face in my face, and said to me in a confrontational and aggressive manor, in the presence of other inmates, stated to me, "I am warning you for the last time Mihailovich that you better not ever submit another BP-9 to me. And I mean for the remainder of your tenure as long as I (meaning himself) am at the this camp. If you know what is good for you you better not ever and go tell your writ writing friends. And oh yea, thanks to you, I was taking tomorrow off and now I have to come into work".Shortly afterwards, William Kennedy, an inmate who observed Mr. McShan's conduct towards me stated, "I have been down for over ten years and I have never seen a staff member go off on an inmate like McShan went off on you."

I have been effectively denied, via threats and by direct order, access to the Remedy process and access to the Court in violation of my Constitution Rights by Mr. McShan and others who will allow such conduct to prevail.

Since that time Mr. McShan has denied me legal calls, has refused to begin the processing of my furlough request, and attempts to get a status on a properly submitted medical BP-9 dated September 27, 2006 has went unanswered and unacknowledged with no return receipt from the Remedy Coordinator although it is now nearly three weeks old.

_Robert Mihailovich_          Date: _10/17/06_
Robert Mihailovich