UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN BEAIRD | § | |
|     Plaintiff | § | |
| | § | |
| vs. | § | No.   06-2268 JDB |
| | § | |
| HARLEY G. LAPPIN (Individually), and | § | |
| ALBERTO GONZALES (Individually). | § | |
|     Defendants | § | |

**RECEIVED**

AUG  1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

-----------------------------------------------------------------

MOTION FOR RECONSIDERATION PURSUANT TO FRCP R. 59(e) of

THIS COURT'S JULY 19, 2007

MEMORANDUM and OPINION, AND ORDER

-----------------------------------------------------------------

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW JOHN BEAIRD, Plaintiff, in the above-styled and numbered cause of action and files this Motion for Reconsideration of this Court's July 19, 2007, Memorandum and Opinion, and Order dated same date, this filing being timely filed by Plaintiff (see certificate of mailing and receipt, infra). Plaintiff submits the following:

I.

PLAINTIFF DOES NOT ALLEGE LIABILITY OF DEFENDANTS LAPPIN & GONZALES

UNDER "RESPONDEAT SUPERIOR" BUT, RATHER

THESE DEFENDANTS' ACTUAL CONDUCT AT ISSUE

Under § 1983 (and the comparative federal jurisdiction statute against a federal official in their individual capacity, 28 U.S.C. § 1391(b)), "supervisory officials" as Mssrs. Lappin and Gonzales are, as the Plaintiff knows, not liable for the actions of subordinates on a "theory of 'vicarious liability' " (Respondeat Superior). HOWEVER, a supervisor may be held liable if there exists either: (1) his personal involvement, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the resulting constitutional deprivations or violations of federal rights. See Thompkins v. Belt, 828 F2d 298, 303 (5th Cir. 1987). Plaintiff has alleged in the Claims that Mssrs. Lappin and Gonzales were personally invloved in policy decisions and other alleged conduct to sufficiently assert liability to each of them in such regards. "These allegations state a claim under Hughs v. Rowe, 449 U.S. 5 (1980)". Williams v. White, 897 F2d 942, 944 (8th Cir. 1990). "There are sufficient factual allegations [in Petitioner's Complaint] to allow the inference that the policies [as alleged as by Petitioner] carried out by [Mssrs. Lappin and Gonzales] subjected the [Plaintiff] to unconstitutional treatment". Ibid.

Additionally, Plaintiff can allege a causal connection between the "failure to act", "failure to train", "failure to supervise", or other affirmative action (or affirmative inaction) of Mssrs. Lappin and Gonzales in relation to subordinate officials and then also then being a causal link between that conduct and the violation of the Plaintiff's rights occurring. This may be used to establish liability of Mssrs. Lappin and Gonzales under such liability theory.

"A high official's 'personal involvement' can take on any of the following five forms: (1) direct participation in the alleged violations; (2) failure to remedy the violation after being informed of it; (3) creation or tolerance of a policy or custom under which the violation occurred; (4) gross negligence in supervising subordinates who committed the violation; or (5) failure to act on information indicating that the violation was occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2nd Cir. 1995)." Davis v. County of Nassau, 355 F. Supp. 2d 668, 676 (E.D.N.Y. 2005). Plaintiff's Complaint alleges each and every one of these forms, ante. This is hardly Respondeat Superior liability. Eg. Roberts v. City of Shreveport, 397 F3d 295 (5th Cir. 2006)("Failure to train & supervise represented the 'moving force' behind the constitutional violation"); Holland Ex Rel. Overdorff v. Harrington, 268 F3d 1179, 1187 (10th Cir. 2001)("For supervisory liability in a 1983 action, plaintiffs must demonstrate an affirmative link between the supervisor's conduct and the constitutional deprivation ... A plaintiff may show that an affirmative link exists between the deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise"). Plaintiff has adequately alleged in the Complaint that Mssrs. Lappin and Gonzales participated, exercised control or direction, and, inter alia, failed to act which composes the needed requisite allegations of conduct sufficient to defeat a FRCP R. 12(b)(6) motion in this action.

"For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. FRCP R. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. FRCP R. 12(b)(6); Scheuer, 416 U.S. at 236. The plaintiff need not plead the elements of

a prima-facie case in the complaint. <u>Swierkiewicz</u>, 534 U.S. at 511-14; <u>Sparrow v. United Air Lines, Inc.</u>, 216 F3d 1111, 1114 (D.C. Cir. 2000)." <u>Freeman v. Fallin</u>, 254 F. Supp. 2d 52, 58 (D.D.C. 2003)(Urbina, J.).

In deciding such a 12(b)(6) motion, this Court must accept all of the Complaint's well-pled factual <u>allegations</u> as <u>true</u> and draw all reasonable inferences in the non-movant's (Plaintiff's) favor. See <u>Scheuer</u>, 416 at 236. Contrary to this doctrine, the Court in Plaintiff's instant case has not done that, or these things, supra, but rather, has made a <u>decision on the merits</u> of the case on weighing and deciding of facts in this Court's Memorandum and Order at slip op pg. 2 stating:   "[t]his unsubstantiated claim, which is wholly unrelated to the events forming the basis of the complaint, rests on the sort of 'fanciful factual allegations' ...". Notwithstanding the fact that the Plaintiff has submitted <u>substantial evidence</u> into the record in Plaintiffs' Reply to Defendants' Motion for Summary Judgment ... regarding the "stolen documents" issue of Count 7, and moreover Plaintiff <u>has met Plaintiff's burden</u> of showing a material factual issue in dispute on such claim, this court incorrectly takes the place of the jury in such decision on the merits of such issue(s).  Such would not survive denovo appellate review and incorrectly imposes a burden on the Plaintiff to "prove their case" through evidence (i.e. the court references on the same page "[t]his unsubstantiated claim"), which is <u>not</u> the standard when analyzing a FRCP R. 12(b)(6) motion. As submitted ante, "a court <u>must</u> accept as true all of the facts as alleged in the complaint." <u>Horton v. Cockrell</u>, 70 F3d 397 (5th Cir. 1995). <u>This</u>, this court has not done. A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). All reasonable inferences therefrom are to be viewed in the light most favorable to the Plaintiff.

The Plaintiff has more than sufficiently alleged conduct conforming to the above by Defendants Lappin & Gonzales which has caused Plaintiff's "clearly established constitutional and federal rights" to have been violated as a result. This, inter alia, being more than sufficient to defeat a FRCP R. 12(b)(6) motion, thereby requiring this court's Memorandum and Order to be REVERSED and VACATED and that the Defendant's Motion be therefrom DENIED.

II.

ORDER TO TRANSFER VENUE MUST BE VACATED AS

JURISDICTION IS NO LONGER AVAILABLE TO AUTHORIZE SUCH TRANSFER

The Plaintiff, in Plaintiffs' Sur-Reply Brief to this court, acknowledged at that time, in the interest of judicial economy, that the Plaintiff's FTCA Administrative Remedies have not yet been completed in full.  FRCP R. 15(a) allows a party to amend a Complaint "once as a matter of" right at any time before a responsive pleading is served.  Neither a Motion to dismiss or summary judgment motion are considered "responsive pleadings".  The Plaintiff has not been served with any responsive pleading at this time.  The court has not dismissed the action as a whole in this case.  "A plaintiff's right to amend continues after the complaint is dismissed so long as the action itself has not yet been dismissed ...".  Allen v. Veterans Administration, 749 F2d 1386 (9th Cir. 1984).  Plaintiff is entitled to, and has so done at this time, Filed (see Inmate Mail-box Rule) a "First Amended Complaint" with this court, such Amended Complaint excludes the United States and the Federal Bureau of Prisons as Defendants and removes Mr. Mihailovich as one of the plaintiffs.  FRCP R. 15(c) allows the filing date of an amended complaint to relate back to the filing date of the original complaint in this situation.  Consequently, the only named defendants in the Plaintiff's First Amended Complaint are Mssrs. Lappin and

Gonzales in their "individual capacities" pursuant to a Bivens jurisdiction, 28 U.S.C. § 1391(b). Accordingly, it would be improper to effect a transfer of venue to any other U.S. District Court jurisdiction than this Washington, D.C. District Court. "[T]he Court must decide under 28 U.S.C. § 1404(a) whether [Plaintiff] could have brought this suit in the transferee forum". Southern Utah Wilderness Alliance v. Norton, 313 F. Supp. 2d 82, 86 (D.D.C. 2004)(Bates, J.). Because the Plaintiff could not have brought this Bivens action in any other U.S. District Court jurisdiction other than the one where it now lies, District of Columbia U.S. District Court, as Plaintiff has pled in both Plaintiffs' Reply Brief, and Sur-Reply Brief, to the Defendants' Motions, whereby Plaintiff hereby incorporates each such Reply Brief by reference, herein, then accordingly the Memorandum and Order to transfer must be REVERSED and VACATED.


III.

DISMISSAL OF COUNT 7 AS FRIVOLOUS IS IN ERROR;

ESPECIALLY IN VIEW OF EVIDENCE SUBMITTED IN THIS CASE

The Plaintiff has submitted evidence in Plaintiffs' Reply Brief which OVERWHELMINGLY evidenced the allegations made by Plaintiff regarding Count 7 and the "stolen documents" (stolen pleadings & complaint), such having been originally received ("filed") by the U.S. District Court, District of Columbia, on February 27, 2006. Such documents later became missing, and then shortly thereafter, without this court having sent them out to anyone, those same documents wound up in the Headquarters Office of the FBOP, Dept. of Justice. Moreover, this was even admitted in writing, as already submitted into evidence in this case, by numerous officials with the FBOP. The Plaintiff later requested of Defendants Lappin and Gonzales an investigation which was not done and ignored with such previous conduct then being attempted to be covered up by these same

defendants.   Therefore, what we have is 1) a plaintiff files a lawsuit; 2) that lawsuit "mysteriously" disappears from inside the court's clerk's office sometime after February 27, 2006 when it was received; 3) the lawsuit contains evidence by way of FBOP time-stamps of being dated within the National Headquarters Offices in Washington, D.C. of the FBOP on March 16, 2006; 4) the lawsuit "shows up" mysteriously being given to the Plaintiff in Dallas, Texas, on March 22, 2006, a month and a half later, and over 1000 miles away from where it was suppose to be at that very time -- safely inside the U.S. District Clerk's Offices within District of Columbia; 5) the Plaintiff obtains written admissions that such documents were in the headquarters between February 27, 2006 to March 22, 2006;   6) Plaintiff requested Mssrs. Lappin & Gonzales to conduct an investigation and criminal investigation, of which all such conduct was then covered up by these Defendants ... and this court wants to adjudicate the Count 7 Claim as a "frivolous claim"??!!?   This is not only unjust, but purely "outrageous" in view of the above and the facts already in evidence. Where in American law or the United States Constitution does Due Process still have the meaning it once had when our brave Founding Fathers established this Country?  Is it now, in the District of Columbia Court, a normal, every-day occurrence for the lawsuits that Plaintiffs file to go amiss from the courthouse and to then be later (illegally) found in the possession of the hands of the very defendants of such suit filed by a plaintiff, without such ever having been served or sent out of the courthouse in the first place????   Should not a Plaintiff have a "reasonable expectation" that this type of conduct should not happen, violates the Plaintiff's due process, inter alia, rights, and probably somewhere along the line also involves criminal conduct which should also not be covered up?  The Plaintiff CLEARLY HAD, AND HAS, A LEGITIMATE BASIS TO HAVE RAISED Count #7 in Plaintiffs' Complaint.  Plaintiff had a sufficient basis of fact to infer that

the Defendants held liability to such illegal actions and violative conduct, either in personal actions or in the nature of supervisory liability as discussed, supra.    Such does not lack an arguable basis in fact or in law. Meitzke v. Williams, 490 U.S. 319, 325 (1989).    Moreover, the Plaintiff has already raised genuine issues of material dispute which would cause Defendants' Motion for Summary Judgment to Fail.    Further, it is questionable at best whether this court can dismiss this pursuant to FRCP R. 12(b)(6) in a Motion to Dismiss when this court has received documents and evidence submitted in the form of a Summary Judgment Motion, and this court should have also only adjudicated such pursuant to Summary Judgment Motion standards.    Plaintiff also objects to such under any other procedural review standard other than the correct Summary Judgment standards as material outside the pleadings has been considered and submitted on this issue.

Similar to Sparrow v. United Air Lines, Inc., 216 F3d 1111, 1115 (D.C. Cir. 2000), where the R. 12(b)(6) dismissal was reversed by the D.C. Circuit, the Circuit Court held that the plaintiff "was not required to set forth the elements of a prima facie case at the initial pleading stage".    "A plaintiff need not allege all the facts necessary to prove its claim".    Ibid quoting Atchinson v. District of Columbia, 73 F3d 418, 421 (D.C. Cir. 1996)("a complaint ... need not allege all that a plaintiff must eventually prove ..."); Sinclair v. Kleindienst, 711 F2d 291, 293 (D.C. Cir. 1983)("The Federal Rules of Civil Procedure do not require a claimant to set out the precise facts on which the claim is based ... 'notice pleading' is sufficient").    "A pro se litigant must be given leave to amend their complaint, and some notice of its deficiencies."    Noll v. Carlson, 809 F2d 1446, 1448 (9th Cir. 1987).    This was not done in Plaintiff's instant case.    When making a determination under 28 U.S.C. § 1915(d), the courts must liberally construe the complaint of a pro se indigent.    See Boag v. MacDougall,

454 U.S. 364, 365 (1982); Naslm v. Warden, Md. House of Corr., 64 F3d 951, 961 (4th Cir. 1995).   Neither was any notice of any deficiency given to Plaintiff, nor is Plaintiff's Claim of Count 7 frivolous.   Appellate review would dictate such conclusions, and in the interest of judicial economy, this court should amend its Memorandum and Order pursuant to this FRCP R. 59(e) Motion for Reconsideration based on these clarifications of the matters at issue in the interest of judicial economy.    Accordingly, this Court's Memorandum Order adjudicating such must be vacated and reversed and the claim re-examined pursuant to the Summary Judgment standards and then, in view of the material factual issues in dispute, the Defendants' Motion subsequently Denied.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, for the Good and Meritorious reasons as stated, infra, and in the interest of judicial economy, the Plaintiff Prays That this Court VACATE IN FULL its Memorandum Opinion and Order as issued on July 19, 2007, and then subsequently RE-EVALUATE the issue of the "stolen documents" and Count 7 pursuant to the Correct FRCP R. 56 Summary Judgment Standards, and then pursuant to there being genuine issues in factual dispute as Plaintiff has already argued in his Replies, subsequently DENY Defendant's Motion for Summary Judgment on such issue; and

Plaintiff Further Prays That this Court VACATE all other adjudications of dismissal in the Court's Memorandum Opinion and Order and then subsequently DENY all other requests of dismissal by Defendants; and

Plaintiff Further Prays That this Court VACATE its TRANSFER OF VENUE ORDER as Moot, and as being an improper transfer of venue for Defendants Lappin and Gonzales in the remaining action pursuant to the Plaintiff's First Amended Complaint; and that this Court provide any and all other relief it may provide.

Respectfully Submitted,

JOHN BEAIRD, Pro Se

## CERTIFICATE OF MAILING AND RECEIPT

I JOHN BEAIRD certify, attest, and state under penalty of perjury that I received a copy of this Court's July 19, 2007, Memorandum and Opinion, and Order on July 24, 2007, and that this Motion was "Filed", on JULY 27, 2007, by depositing same into the institutional mail system, first-class postage pre-paid, addressed to the clerk of the court.

-------------------------------
JOHN BEAIRD

## CERTIFICATE OF SERVICE

I JOHN BEAIRD state that there is not an inmate copy machine in order to make copies to send to the opposing party and I request the Court to electronically serve the other party in this action as available pursuant to electronic filing rules.

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

JOHN BEAIRD §
§
        Plaintiff §
§
§
    vs. §    No.  06-2268-JDB
§
§
HARLEY G. LAPPIN (Individually), §
ALBERTO GONZALES (Individually). §
§
        Defendants §

RECEIVED

AUG  1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

-----------------------------------------------------------------------

## PLAINTIFF'S FIRST AMENDED COMPLAINT

-----------------------------------------------------------------------

### PLAINTIFF'S FIRST AMENDED PLEADINGS

-------------------------------------------------------

TO THE HONORABLE JUDGE OF SAID COURT:


    COMES NOW, JOHN BEAIRD, Plaintiff, herein after referred to as "Plaintiff"
or "Plaintiffs", in the above-styled and numbered cause of action, and Files this
FIRST AMENDED COMPLAINT.  Plaintiff requests that this, and all filings by Pro-
se Plaintiff be construed liberally, and to the less-stringent standards than an
attorney pursuant to the dictates of Haines v. Kerner, 404 U.S. 519, 520 (1972).
Plaintiff Files this First Amended Pleading on this 27th of July, 2007, pursuant
to FRCP R. 15(a) which allows a party to amend a Complaint "once as a matter" of
right at any time  before a responsive pleading is served.  Neither a Motion to
Dismiss or Summary Judgment Motion are considered "responsive pleadings".  The
Plaintiff has not been served with any responsive pleading at this time.  The

court has not dismissed the action as a whole in this case. "A plaintiff's right to amend continues after the complaint is dismissed so long as the action itself has not yet been dismissed ... " Allen v. Veterans Administration, 749 F2d 1386 (9th Cir. 1984). Plaintiff is entitled to, and has so done herewith, Filed (see "Inmate Mailbox Rule") this FIRST AMENDED COMPLAINT with this Court. FRCP R. 15(c) allows the filing date of an amended complaint to relate back to the filing date of the original complaint in this situation. Plaintiff submits the following:

I.

Plaintiff claims that the Defendant's past, present, and ongoing conduct (as claimed in the Claim section, infra), has violated the Plaintiff's Constitutional and Federal rights, duties owed to Plaintiff, and entitlements (liberty interests) of Plaintiff, all such being done with, on information and belief, "Deliberate Indifference" by the Defendants to the resulting, or potentially resulting offense of Plaintiff's Constitutional and Federal rights and to the resulting damages that such conduct would and did cause. Such conduct of the Defendants all being done "under color of law". Such conduct also having resulted, inter alia, from "Official" Common Custom, Practices, and Policies (see Talib v. Gilley, 138 F3d 211, 212 (5th Cir. 1988)("validity of prisons' policies is not dependent upon whether they are written of verbal ... A policy is a policy --the question is simply whether the record supports a finding that that policy exists"). Such conduct also being with "deliberate indifference" to the resulting violations of "Clearly Held Rights" of the Plaintiff. Such conduct of Defendants causing damages, injuries, physical injuries, pain and suffering that are all proximate cause of said conduct. When the Plaintiff refers, infra, to "damages", said term is defined to include, but is not exclusively limited to,

2

pain and suffering, physical injuries, deprivations, inter alia. Plaintiff is entitled to recover, and also specifically seeks, compensatory damages, punitive damages, consequential damages, continuing damages, disretionary ddamages, nominal damages (where invoked), special damages, costs of court, attorneys' fees, pre and post judgment interest, costs of appeal if any by any party, and costs of collection or enforcement of any judgment(s). Plaintiff requests and seeks all of these as allowed.

## II.

### PARTIES

The Plaintiff is a resident of Texas and currently an incarcerated federal inmate located in a Camp facility at Satellite Camp POB 9000 Seagoville, Texas 75159-9000.

The Defendants are:

HARLEY G. LAPPIN (Individually). HARLEY G. LAPPIN is also the director of the Federal Bureau of Prisons; such party in this litigation is sued in his individual capacity only.

ALBERTO GONZALES (Individually). Alberto Gonzales is currently the Attorney General of the United States; such party is sued in this suit in his individual capacity only.

## III.

### VENUE

Venue is proper in ONLY the District of Columbia U.S. District Court. This

3

action is brought pursuant to a <u>Bivens</u> action, 28 U.S.C. § 1391(b), against each Defendant in their individual capacity.  All of the conduct of the Defendants occurred within this district.  The Defendant's "conduct" being the conduct as claimed in the Claims section, infra.

IV.

PERSONAL JURISDICTION UPON DEFENDANTS

Specific jurisdiction exists on each Defendant by ONLY this District of Columbia U.S. District Court in this suit as each Defendant committed said conduct as claimed solely within this U.S. District Court's jurisdiction.

V.

SERVICE OF PROCESS OF DEFENDANTS

HARLEY G. LAPPIN (Individually):  Harley G. Lappin is currently the Director of the FBOP and may be served with process in his Individual Capacity pursuant to FRCP R. 4(i)(1)&(2).  FBOP Central Office, where Mr. Lappin offices, is located at 654 Home Owner's Loan Corp. Building, 320 First Street N.W., Washington, D.C. 20534.  Alos process to be served on the U.S. Attorney in satisfaction of Rule 4(i)(1)&(2) ante, and Process to also be served on the U.S. Attorney, Washington D.C. District, Civil Process Clerk, Judiciary Center Building 555 4th Street N.W. Washington, D.C.  20001.

ALBERTO GONZALES (Individually); Alberto Gonzales is currently the Attorney General of the United States.  Such party is sued here in their individual capacity.  Such party may be served with process in his Individual Capacity pursuant to FRCP R. 4(i)(1)&(2).  This party offices at the Office of the Attorney General of the United States, U.S. Dept. of Justice, Constitution and

4

Tenth Street N.W. Washington, D.C. .  Also process to be served upon the U.S. Attorney, at the same address ante for the Civil Process Clerk, in satisfaction of Rule 4(i)(1)&(2) ante; and process to also be served on the U.S. Attorney General in satisfaction of same Rule.  Service on Alberto Gonzales, individual capacity, must be personally served upon Mr. Gonzales.

## VI.

### JURISDICTION

This Pleading contains, pursuant to FRCP R. 8 (see also  Atchinson v. District of Columbia, 73 F3d 418, 421 (D.C. Cir. 1996)("a complaint ... need not allege all that a plaintiff must eventually prove..."); Sinclair v. Kleindienst, 711 F2d 291, 293 (D.C. Cir. 1983)("The Federal Rules of Civil Procedure do not require a claimant to set out the precise facts on which the claim is based ... 'notice pleading' is sufficient") ), Plaintiff's short statement of claims showing the pleader is entitled to all relief sought.  Plaintiff invokes jurisdiction pursuant to 28 U.S.C. § 1391(b), a Bivens action, against the Defendants (LAPPIN and GONZALES).  A Bivens (see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) ) claim lies against the Federal official in his INDIVIDUAL CAPACITY.  The Plaintiff invokes such jurisdiction in all claims in this suit.

5

VII.

CLAIMS

Plaintiff, hereby, incorporates into each of the following claims (Counts) all of the paragraphs, infra, and also all of the "Facts" Section, infra, "Verified" facts, and incorporates by reference, herein, All of the Appendixes which were a part of the Original Complaint filed in this case number, 06-2268-JDB, and makes all such a part of these pleadings and this Complaint.

When Plaintiff refers to "policy", or "custom", or "practice", Plaintiff defines such as being an "Official" policy, custom, or practice of which the Defendants had personal involvement in, supervised such, knew about, acquiesed to, permitted, allowed, propogated, reviewed, had actual or constructive knowledge of, failed to act to prevent, took affirmative action by way of either no action or purposeful ignorance, or otherwise knew and allowed such custom, practice, and policy to continue.

When Plaintiff refers to "rights" the Plaintiff defines such as being only rights that are "clearly held", "clearly established" rights or entitlements. When the Plaintiff refers to "Damages" this means "Physical Injuries", "Pain and Suffering", "Duress", "Constitutional Injury", and other forms of damages. When the Plaintiff refers to "HEALTH NEEDS" (such being distinguished from "medical treatment" or "health care" needs) such is defined as the needs which are basic human needs of physical health, mental health, emotional health, the necessities of having a living environment that is free from Environmental Tobacco Smoke ("ETS"), of having an environment that is free from any other types of environmental toxin such as Asbestos, Black Mold, Mold, Diseases, and such is further defined as the needs of Clean air, water, and of having an environment

6

free of the risk of any spread of an infectious disease, the needs of safety and being in a safe and healthy environment to both physical and mental health, the needs of adequate living space, the needs of an adequate quantity of quiet-time and an adequate degree of quiet, the needs for adequate recreation space, the needs of adequate and proper (pursuant to applicable professional and social standards) ventilation, the needs of an adequate temperate environment to societal and professional standards, the needs of having an adequate quantity of properly cooked food, not spoiled or out of date, free of insect or rodent contamination effects and nutritiaonally balanced and adequate to professional standards, the needs of proper sanitation and hygine, the needs of adequate (to professional standards) plumbing, toilet & shower facilities per individual, the needs of being free of any other factors which may contribute to, accelerate, cause, exacerbate, or affect in a negative way the physical, emotional, or mental health of an individual or the Plaintiff, and needs of having a "MEDICAL CARE SYSTEM" which is not inadequate in any way and/or is not in violation of the Eighth Amendment of the Constitution in any manner, and the needs of having properly trained and adequate quantities of staff according to professional standard operating requirements at all times in order to assure that each of the above needs are maintained continuously without interruption and without the risk of interruption to any individual.

When the Plaintiff refers to "inadequate" "MEDICAL CARE SYSTEM" or one being "systemically deficient" the Plaintiff defines such as a medical care system set up for delivery of medical care to an individual, which is in violation of the Eighth Amendment and/or contains much or all of the following:

INADEQUATE  (to societal standards of human decency and societal norms): sick call, triage, emergency care, urgent care, chronic care, preventive care, nurses, doctors, specialists, speciality screenings, follow-up care, examinations and

7

tests, medical equipment, medications, speciality diets, terminal care, health education, dental care, dental treatment, dental preventive care, grievance procedures, unreasonable delays or disruptions in care or medication, RN availability, medical doctor availability, special care availability, availability of medical supplies and equipment, training, supervision, staffing, quality control, quality control facilities, protocols or failure to follow protocols in emergency care or in any of the aforesaid items above. See Plata v. Davis, 329 F3d 1101 (9th Cir. 2003)(Defining similar inadequate "medical care system" which was in violation of the Eighth Amendment in relation to a Certified Class which was then potentially, or could be possibly, exposed or subject to, care from such inadequate "medical care system"). Such void of adequate "system" being itself a damage of which is an actual "deprivation".

When Plaintiff refers to a "Duty" Plaintiff refers to the duty, or duties, imposed pursuant to the Constitution, Federal Law and Statutes (such as, but not limited to, 18 U.S.C. §§ 3621, 3621(b), 3624(c), 4042, 29 U.S.C. § 504 & 794, 42 U.S.C. § 12101 et. seq., Freedom of Information Act, Religious Freedom Restoration Act, Religious Use of Land Act of Institutionalized Persons, duties imposed by all applicable Fire Codes, Regulations & Laws, duties imposed pursuant to the Code of Regulations such as 28 C.F.R. §§ .5, .95, 40.7, 540.18, 540.19, 542.12, inter alia, and duties imposed by courts of law or established by res judicata (see Estelle v. Gamble, 429 U.S. 97, 103), inter alia, and duties imposed pursuant to common-law or societal standards, as well as a duty to the "exercise of ordinary diligence to keep prisoners same and free from harm", as well as a duty "not to be negligent or deliberately indifferent in the exercise of the Defendants' responsibilities", and the duty not to act unreasonably in a duty owed, as well as the duty to train, act, and supervise.

8

COUNT 1:

The defendants, on information and belief, initiated, caused to be initiated, approved, caused to be approved, had actual or constructive knowledge of,implemented, caused to be implemented, caused to be allowed, failed to act to prevent or halt, and/or were otherwise involved, and, thus, caused to be executed a policy, custom, and practice of massively overcrowding the FBOP facilities nationwide, and at Seagoville FCI, Seagoville, TX, far beyond the safe and Constitutional levels and designed capacities of each such facility (cumulatively and individually), on information and belief, with deliberate indifference, to the risk that such conduct would, or may, as it has, offend the Plaintiff's rights, constitutional rights (1st, 4th, 5th, 8th, and 14th), statutory and federal rights, entitlements, and/or duties owed to the Plaintiff.  such conduct being with actual or constructive knowledge that the Plaintiff did, or may, suffer damages from such conduct, and that the Plaintiff would, or may be deprived of a proper and constitutional level of "HEALTH NEEDS", Constitutional rights (supra), statutory rights, entitlements, and duties owed to Plaintiff, as Plaintiff has been, or that Plaintiff would be exposed and subject to an "INADEQUATE HEALTH CARE SYSTEM", as Plaintiff has been, and that Plaintiff would be subject to the "Effects of Overcrowding" & "Effects of Massive Overcrowding", infra, as Plaintiff has been, and that such conduct is, and would be, "a cause in fact of the deprivations of rights inflicted", Spiker v. City of Texas, 130 F3d 162, 167 (5th Cir. 1997), or a concurrent cause of such deprivations of rights, duties owed, or entitlements, of which such conduct has been, upon the Plaintiff. These Defendants also being the "policy makers" and such conduct being the "moving force", see Piotrowski v. City of Houston, 237 F3d 567 (5th Cir.), cert. denied, 534 U.S. 820 (2001), of the violations, deprivations, and damages

9

inflicted upon the Plaintiff.

This conduct being between February 25, 2004, and the present time, and being also ongoing. The Plaintiff has suffered "damages" from this conduct of the Defendants, and continues to suffer damages.


COUNT 2:

The Defendants, on information and belief, initiated, caused to be initiated, approved, caused to be approved,had actual or constructive knowledge of, implemented, caused to be implemented, allowed, caused to be allowed, failed to act to prevent or halt, and/or were otherwise involved, and thus, caused to be executed a policy, custom, and practice of failing to apply the specific individual determinations to designate Plaintiff, inter alia, to a location pursuant to 18 U.S.C. § 3621(b) for the time period between February 25, 2004, and the present, further such Defendants willfully failed to comply, or to act to cause compliance, or to properly train to cause such compliance, or to properly supervise to cause such compliance with such statute (18 U.S.C. § 3621) and orders of the court (see Woodall v. HARLEY G. LAPPIN & FBOP, 432 F3d 235 (3rd. Cir. 2005), Goldings v. Winn, 383 F3d 17 (1st Cir. 2004), Wedelstedt v. Wiley, 477 F3d 1160 (10th Cir. 2007), Fults v. Sanders, 442 F3d 1088 (8th Cir. 2006), Levine v. Apker, 455 F3d 71 (2nd Cir. 2006), Mihailovich v. Berkebile, No. 3:06-CV-1603-N (D.C. N. Dist. Tex. 03/28/2007) ) during such same time period. Such conduct caused Plaintiff to be subject to inadequate or otherwise violative facilities which were also massively overcrowded and resulted also in Plaintiff being subject to inadequate "Health Needs" and "Inadequate Health Care System". The Defendants knew they had individualized discretion upon Plaintiff, should have utilized or caused to be utilized such individualized discretion instead of avoidance of such, to place Plaintiff accordingly, especially with other

10

confinement options available.   All such conduct, on information and belief, being done with deliberate indifference to, and with actual or constructive knowledge to, the resulting, and probably resulting, Constituionally and statutorially offensive conditions that would result from such custom, practice, and policy (conduct) and the damages or potential for damages to the Plaintiff. Such conduct being between February 25, 2004, and the present time, and being also ongoing.   The Plaintiff has suffered, and continues to suffer, "damages" from this conduct of the Defendants.

COUNT 3:

FAILURE TO SUPERVISE, FAILURE TO TRAIN, and FAILURE TO ACT.   Plaintiff incorporates Counts 1 & 2 into this Count, such that such conduct as referenced, respectively, during such same period constitutes Failure to Supervise.  This is not "Respondeat Superior" liability.   A "supervisory official", as the Defendants, may be held personally liable on the grounds that they were personally involved in any of the conduct as referenced in Counts 1 & 2, approved such custom, practices, and policies as so referenced in Counts 1 & 2 either by affirmative action or affirmative inaction or acquiencence to such customs, practices, and policies.  "A high official's 'personal involvement' can take on any of the following five forms:   (1) direct participation in the alleged violations [or conduct];   (2) failure to remedy the violation(s) after being informed of it;   (3) creation or tolerance of a policy or custom under which the violation occurred;   (4) gross negligence in supervising subordinates who committed the violation; or   (5) failure to act on information indicating that the violation was occurring.   Colon v. Coughlin, 58 F3d 865, 873 (2nd Cir. 1995)."  Davis v. County of Nassau, 355 F. Supp. 2d 668, 676 (E.D.N.Y. 2005). Plaintiff alleges that the Defendants' conduct encompasses, on information and

11

belief, all of the above. See also <u>Roberts v. City of Shreveport</u>, 397 F3d 295 (5th Cir. 2006)("Failure to train & supervise represented the 'moving force' behind the constitutional violation"). Defendants' Failure to Train and Failure to Supervise subordinates in each conduct referenced, supra, represented a "moving force" in the offensive conduct of violating the Plaintiff's rights, entitlements, and duties owed to Plaintiff, and to the resulting damages inflicted by same upon the Plaintiff. All such being between February 25, 2004, and the present, and being also continuous and ongoing, and, on information and belief, being done with "deliberate indifference" to the potential or actual resulting resulting violative conduct and damages or potential for damages upon Plaintiff, inter alia. Additionally, the Defendants conduct in this Count also encompasses the Failure to Train and Failure to Supervise subordinates in the Law and application of the Law necessary to avoid any of Plaintiff's "rights", duties owed to Plaintiff, or entitlements owed to Plaintiff, to be, or have been, offended, of which such rights have been as alleged in Counts 1 & 2, supra. Defendants further failed to train & supervise subordinates in the law relevant to the Religious Use of Land Act of Institutionalized Persons and the Religious Freedom Restoration Act, thereby causing Plaintiff's religious rights (freedom of worship) (1st Amendment Rights) and Due Process rights (5th Amendment), as well as Equal Application rights to have been offended by such conduct, such causing Plaintiff damages.

COUNT 4:

The Defendants, on information and belief, with deliberate indifference to the rights and potential resulting damages of and to Plaintiff, conspired with, aided and abetted others, covered up, failed to investigate, failed to supervise, to deny Plaintiff access to the courts in violation of the Constitution and

12

federal law.    Further, the Defendants then attempted to, and currently do, conceal the full unlawful conduct and information and documents regarding this count and thereby further operate by their conduct to deny Plaintiff meaningful access to the court.    See <u>Crowder v. Sinyard</u>, 884 F2d 804, 812 (5th Cir. 1989)("[I]f state officials wrongfully and intentionally conceal information crucial to a person's ability to obtain redress through the courts, and do so for the purpose of frustrating that right, and that concealment and the delay engendered by it substantially reduce the likelihood of one's obtaining relief to which one is otherwise entitled, they have committed a Constitutional violation");  see also <u>Harbury v. Deutch</u>,  244 F3d 956,  959-60 (D.C. Cir. 2001)(Same).  "[T]he Constitution guarantees [Plaintiff] the right of meaningful access to the courts, the denial of which is established<sup>when</sup>a party engages in pre-filing actions which effectively cover-up evidence and actually render any state court remedies ineffective."  <u>Harbury</u>, supra at 959 quoting <u>Delew v. Wagner</u>, 143 F3d 1219, 1222 (9th Cir. 1998).  As in this case with Plaintiff, "if a party engages in actions that effectively cover up evidence ... they have violated [Plaintiff's] right of access to the courts."  <u>Harbury</u>, supra at 959 quoting <u>Swekel v. City of River Rouge</u>, 119 f3d 1259, 1262 (6th Cir. 1997); see also <u>Vasquez v. Hernandez</u>, 60 F3d 325, 328 (7th Cir. 1995)("[E]fforts by state actors to impede an individual's access to the courts ... may provide the basis for a constitutional claim under 42 U.S.C. § 1983");  <u>Harbury</u>, supra (same).

The Defendants' conduct at issue in this Count is in reference to and specifically relates to the illegal and unlawful removing, obtaining, and possession of Original filed documents (Original Complaint filed received, and "filed", by the Clerk of the Court, District of Columbia U.S. District Court of Plaintiff in previous action), such documents being original time-stamped Original set of Plaintiff's previously filed Original Complaint in another

litigation. The documents became missing from within the U.S. District Court, District of Columbia, between the period of February 27, 2006, and March 22, 2006. Such "missing" and "stolen" documents "mysteriously" came under the possession of the FBOP Central Office in Washington, D.C. from inside the Clerk's Offices in the U.S. Courthouse. These documents were not returned to the courthouse, but rather, on March 22, 2006, these documents were given to the Plaintiff in this case. Such documents evidenced the original red time-stamp of the District of Columbia Court and were given to the Plaintiff (approximately 400 pages) unwrapped, dis-shoveled, and with only a "single rubber band" around said documents on March 22, 2006 by a Seagoville employee of the FBOP. Upon receipt of such documents, the Plaintiff examined such to discover that the Documents had been altered and had inserted additional unauthorized, and falsified, pages to such court-filed documents. These falsified documents added to such purported to have been executed on a date in 2005 but, rather, bore unmistakable physical evidence, an official BOP Central Office Time-Stamp, inter alia, showing an imprinted time-stamped date of "March 16, 2006" which was the very day that the entire file should have been locked inside the U.S. District Court Clerk's offices. These documents had not been mailed or otherwise sent out from said courthouse by any party of the court or clerk's office, nor were these documents obtained through any U.S. Mails. The employees of the FBOP subsequently admitted in writing (numerous employees evidencing a chain of custody directly to the Washington, D.C. Headquarters Office) to have been obtained and unlawfully possessed by said parties. Such actions violate 18 U.S.C. § 2071 (Unlawful Removal, Concealment, and Possession of documents deposited with a U.S. District Court Clerk's Office) as well as violates 18 U.S.C. §§ 241 & 242 (Conspiracy to Violate Civil Rights). In view of such criminal law violations having occurring, and in view of the serious violation of

14

the Plaintiff's Due Process rights and Constitutional rights by such conduct, the Plaintiff placed the Defendants on notice of said conduct and also requested an Official Investigation and Criminal Investigation be conducted into such actions. The Plaintiff further requested to receive information necessary from the Defendants to be able to prosecute a civil claim on such actions. Defendants subsequently then also committed the conduct referenced in this Count, supra, which caused Plaintiff to be denied access to the court on such actions of the parties. On information and belief, the Defendants also had actual or constructive knowledge of said acts contemporaniously at the time of such acts having occurred.

COUNT 5:

DENIAL ACCESS TO THE COURTS: The Defendants, on information and belief, caused to occur, allowed, approved, caused to be approved, failed to act to prevent, had actual or constructive knowledge of, or otherwise allowed a common custom, practice, and policy of denying access to the courts by way of 1) Denying "available" access to the Administrative Remedy Process; and 2) by Interference with Legal and Special Mail of individuals in violation of the 4th and 5th Amendments, and  3) by causing the unavailability of needed documents and information that was properly requested pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a et. seq., all being necessary documents and information needed to obtain meaningful access to the courts, all being with reference to also the Plaintiff between the period February 25, 2004, and the present, and all being with, on information and belief, with deliberate indifference to the rights of Plaintiff, and all such causing the Plaintiff damages. All such being ongoing and continuous.

Although having requested documents and information pursuant to the FOI and

Privacy Acts, the Plaintiff has been denied, due to Defendants' conduct supra, meaningful access to the courts by the prevention of Plaintiff from receiving such previously requested information and documents; such being, on information and belief, all due to the Defendants' conduct as referenced, supra, to said common custom, practices, and policies.

16

VIII.

LIABILITY OF DEFENDANTS & DAMAGES REQUESTED

PLAINTIFF, HEREBY, INVOKES THE "DOCTRINE OF RES ISPA LOQUITOR" ON ALL CLAIMS AGAINST EACH DEFENDANT IN THIS SUIT. "The outer limits of liability in any given case are determined ultimately by pinpointing the persons in the decision-making chain whose deliberate indifference PERMITTED the constitutional abuses to CONTINUE UNCHECKED. The final determination 'generally is one of FACT, NOT LAW' (Avery_v._County_of_Burke, 660 F2d 111, 114 (4th Cir. 1981) ), but [] statutes fixing the administrator's legal duties provide a useful guide in determining who had the responsibility and capability to end the offensive practices.' Though their conduct may be a breach of constitutional duties, they are not liable unless an affirmative causal link exists between their INACTION and the harm suffered." Slaken_v._Porter, 737 f2d 368, 373 (4th Cir. 1984); Rizzo_v._Goode, 46 L. Ed. 2d 461 ; Simms_v._Adams, 537 F2d 829, 831 (5th Cir. 1976). "The proof of causation may be direct or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions." Slaken, Id at 376 quoting Wellington_v._Daniels, 717 F2d 932, 936 (4th Cir. 1993). "SUPERVISORY LIABILITY IN THE CIVIL RIGHTS CONTEXT MAY EXTEND TO THE HIGHEST LEVELS OF GOVERNMENT." Slaken, supra Id at 373 quoting Scheuer_v._Rhodes, 416 U.S. 232 (1974).

"[T]hough [D]efendant[s] may argue that even if their conduct was actionable under [42 U.S.C.] § 1983, [D]efendant[s] [are] entitled to qualified immunity from money damages." Slaken, supra Id at 376. The Court in Slaken then explained: "We disagree. In Harlow_v._Fitzgerald, 457 U.S. 800, 818 (1982), the Supreme Court carefully defined the contours of the qualified immunity or good

17

faith defense' stating '[G]overnment officls performing discretionary functions generally shielded from liability for civil damages [only] in-so-far as their conduct DOES NOT VIOLATE clearly established statutory or constitutional rights of which a reasonable person would have known.' See also Butz_v._Economou, 438 U.S. 478 (1978); Wood_v._Strickland, 420 U.S. 308 (1975); Scheuer_v._Rhodes, 416 U.S. 232 (1974).  Harlow reaffirmed the principle that a public official CANNOT ESCAPE § 1983 LIABILITY by relying solely on his subjective good faith or LACK OF ACTUAL KNOWLEDGE about the extent of his constitutional or statutory duties.  His subjective state of mind is but one part of the formula, for he is presumed to know what the law requires and may be forced to pay money damages when his actions cross the well-marked boundries.  Harlow, 457 U.S. at 815.  See also Mceleven_et._al._v._Hutto, 757 F2d 954 (4th Cir. 1984)" Slaken_v._Porter, supra at 376.

The Defendants are liable to the claims of the Plaintiff as alleged, here-in.  Further, although having also been put on notice by repeated Administrative Remedy Requests, Certified Mailings, inter alia, the Defendants chose affirmatively to ignore with deliberate indifference both their statutory and consititutional duties to the Plaintiff.  See 18 U.S.C. § 4042; 28 C.F.R. Ch.1 Subpart Q § 0.95(a)-(d), § 0.5; inter alia.  Defendants have direct, and concurrent liability in this suit.  Defendants are liable to Plaintiff for Damages.

Therefore, Plaintiff request the following damages:

1.  Damages:  Actual Damages, Compensatory Damages, Consequential Damages, Special Damages, and Discretionary Damages, and Continuing Damages in the amount of:

$5,000,000.00 ;

18

2.    PUNITIVE DAMAGES in the amount of:

$20,000,000.00 ;


3.    ALL COSTS OF COURT, ATTORNEYS FEES, COSTS OF ANY APPEALS, COSTS OF COLLECTION OF ANY JUDGMENT(s) OR ENFORCEMENT OF SUCH JUDGMENT(s);


4.    NOMINAL DAMAGES (only whereby other damages are not permitted);


5.    ALL PRE and POST JUDGMENT INTEREST ON THE JUDGMENT(s);


6.    JOINT AND SEVERAL LIABILITY OF EACH DEFENDANT ON ALL OF THE ABOVE.



IX.

DEMAND FOR JURY TRIAL

"The burden of proving justification for interfering with fundamental constitutional rights is on prison officials -- and thus, must be proved in court." Cruz v. Beto, 405 U.S. 319 (1971). Plaintiff, herewith, exercises the right granted to Plaintiff under the U.S. Constitution's Seventh Amendment, and also under any and all other applicable authorities, and .... DEMANDS A TRIAL BY JURY of ALL CLAIMS, ALL ISSUES, and DETERMINATION OF FACTS, DAMAGES, AND LIABILITIES of EACH DEFENDANT.

19

X.

INCORPORATION BY REFERENCE

Plaintiff, hereby, incorporates into this FIRST AMENDED COMPLAINT, the Original Complaint's Appendixes as already filed in this litigation; such Appendixes in full being incorporated by reference herewith in full. To incorporate by reference the amended pleading must specifically identify the incorporated parts of the superseded pleading. King v. Dogan, 31 F3d 344, 346 (5th Cir. 1994). Such being so done here.

XI.

PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Prays That, upon JURY TRIAL thereof, that this Honorable Court GRANT All of the Relief and Requests for Damages made by Plaintiff, infra, and Plaintiff Further Prays That the Honorable Jury Find in favor of Plaintiff on All Counts and Claims, infra against the Defendants in this suit, award Plaintiff the relief and all damages and awards requested by Plaintiff, infra.

Plaintiff Further Prays That this Honorable Court GRANT Plaintiff any and all other relief to which may be available.

Respectfully Submitted,

JOHN BEAIRD

20

VERIFICATION

    I, JOHN BEAIRD, attest, state, verify, and affirm under penalty of perjury that the facts contained herein are true and correct.  Executed on this 27th Day of July, 2007.

JOHN BEAIRD

CERTIFICATE OF MAILING

    I, JOHN BEAIRD, certify, attest, and state under penalty of perjury that this Filing (see "Inmate Mail-box Rule) is considered "FILED" on this 27th Day of July, 2007, by my depositing of such document, as I have, into the institutional mail system, first class postage pre-paid, addressed to the clerk of the court, U.S. District Court, District of Columbia, on this date, JULY 27, 2007.

JOHN BEAIRD

CERTIFICATE OF SERVICE

    I, JOHN BEAIRD, state that the FBOP does not provide a copy machine for inmates, and I request that the Clerk of the Court to serve a copy of this FIRST AMENDED COMPLAINT upon the parties of this action.

JOHN BEAIRD

21